IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF

PENNSYLVANIA

| | |
|---|---|
| Michael Miller,<br><br>　　　Plaintiff,<br><br>v.<br><br><br>County of Lancaster,<br><br>Tammy Bender,<br><br>Jacqueline Pfursich,<br><br>Joshua Parsons,<br><br>Ray D'Agostino,<br><br>Christa Miller,<br><br><br>　　　Defendants. | Civil Action No: |

# COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY

# RELIEF

# CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   PARTIES ...................................................................................... 1

III.  JURISDICTION AND VENUE ....................................................... 2

IV.   FACTUAL ALLEGATIONS ........................................................... 3

IV. DAMAGES CLAIMS .................................................................... 10

V.    CLAIMS ...................................................................................... 12

    COUNT I: VIOLATION OF THE FIRST AMENDMENT ............................... 12

    (PRIOR RESTRAINT) ................................................................... 12

    COUNT II: 42 U.S.C. § 1983 – FIRST AMENDMENT VIOLATION

    (RETALIATION) ........................................................................... 15

    COUNT III: CONSPIRACY TO DEPRIVE ...... **Error! Bookmark not defined.**

    CONSTITUTIONAL RIGHTS .......................... **Error! Bookmark not defined.**

    COUNT IV: DENIAL OF DUE PROCESS ....... **Error! Bookmark not defined.**

    (PROCEDURAL DUE PROCESS VIOLATION) ........... **Error! Bookmark not defined.**

    COUNT V: VIOLATION OF EQUAL PROTECTION ... **Error! Bookmark not defined.**

(MEMBER OF A CLASS) AND DUE PROCESS........... **Error! Bookmark not defined.**

COUNT VI: MONELL LIABILITY CLAIM (42 U.S.C. § 1983 – Policy, Custom, and Failure to Train)...............................................................28

COUNT VII: 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS VIOLATION (HANDLING OF ABSENTEE BALLOTS).....**Error! Bookmark not defined.**

COUNT VIII: 42 U.S.C. § 1983 – NEGLIGENCE IN ELECTION ADMINISTRATION .............................................................35

COUNT IX: 42 U.S.C. § 1983 EQUAL PROTECTION VIOLATION - DISPARATE ACCESS TO ELECTION RECORDS ........................................37

COUNT XI: NEGLIGENCE IN ELECTION ADMINISTRATION AND HANDLING...................................................... **Error! Bookmark not defined.**

VI.     PRAYER FOR RELIEF ...............................................................49

VII.    VERIFICATION AND SIGNATURE..........................................................51

VIII.    NOTICE OF CONSTITUTIONAL CHALLENGE UNDER RULE 5.1..52

# I.   <u>INTRODUCTION</u>

*"Either the document falls under one of the specific exemptions, or it is a document that must be released. The statutory aspect regarding exemptions under the Right to Know Law is not discretionary." – Pennsylvania Supreme Court, 2013[1]*

This is a case about accountability and the abuse of power. Michael Miller, plaintiff, citizen and election candidate, has been repeatedly stonewalled, misled, and targeted for daring to seek transparency in the administration of local elections. Defendants, in their official and individual capacities, have acted with disregard for Miller's constitutional rights, weaponizing procedural rules and obscure policies to frustrate his efforts. Miller did not just lose access to public records—he suffered emotional distress, reputational harm, and financial burdens that impacted his ability to serve as an advocate and representative for his community. The Court's involvement is not only warranted but necessary to reaffirm that governmental power must be exercised lawfully, transparently, and in a manner that respects the dignity and rights of every citizen.

# II.   <u>PARTIES</u>

1. **Plaintiff Michael Miller ("Miller")** is a citizen of Pennsylvania the United States, He resides in Lancaster County, Pennsylvania.

2. **Defendant County of Lancaster, hereafter "County,"** a municipal entity of the Commonwealth of Pennsylvania, responsible for the administration and enforcement of

---

[1] *Bowling v. Office of Open Records, 75 A.3d 453, 474 (Pa. 2013).*

election laws and public record policies.

3. **Defendant Tammy Bender ("Bender")** is an official employed by County, sued in her individual and official capacities.

4. **Defendant Jacqueline Pfursich ("Pfursich")** is the Solicitor of County, sued in her individual and official capacities.

5. **Defendant Joshua Parsons ("Parsons")**, **Ray D'Agostino ("D'Agostino")** are County Commissioners and member of County's Board of Elections, sued in their individual and official capacities.

6. **Defendant Christa Miller ("C. Miller")** is the Director of Elections and Voter Registration for County, sued in her individual and official capacities.

---

## III.   <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over Miller's federal claims under Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1331 because the claims arise under the Constitution and laws of the United States.

2. This Court has supplemental jurisdiction over Plaintiff's state constitutional claims under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts and are so related to Plaintiff's federal claims that they form part of the same case or controversy.

3. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, authorizes this Court to issue declaratory and injunctive relief.

4. Venue is proper under 28 U.S.C. § 1391(b) because Defendants are located in this District, and the events giving rise to this action occurred in Lancaster County,

Pennsylvania.

---

# IV.   <u>FACTUAL ALLEGATIONS</u>

**A. Miller's Candidacy and Election Events**

1. Miller resides in Lancaster County, Pennsylvania.

2. Miller was a candidate for Pennsylvania State Senate, District 36, in the May 17, 2022, primary election.

3. Defendants, in their official capacities, reported that they received 22,000 voted mail-in ballots, countywide, for the May 2022 primary election. **Exhibit 1 – Legal basis confirming that mail-in ballots are public records.**

4. Defendants, in their official capacities, reported that approximately 14,000 voted mail-in ballots could not be scanned and counted due to printing errors (assertedly by the vendor). **Exhibit 22 – HAVA Violations Report.**

5. Some voters in Miller's voting district received ballots that, in error, did not include Miller's race.

6. On election day, Defendants Pfursich, Parsons, D'Agostino, C. Miller, in their official capacities, directed County employes to mark an estimated 14,000 ballots to replace the alleged error ballots. **Exhibit 31: HAVA Violations May 17, 2022 Election**

7. On election day, these Defendants, in their official capacities, assertedly acquired 14,000 replacement ballots (for 240 different precincts) and directed them to be filled out by County employees.

8. On or after election day, Defendant C. Miller, in her official capacity, or her employs

scanned the replacement ballots into Hart Intercivic, Inc.'s election software for counting and reporting of the election results.

9.  On May 18, 2022, Defendant C. Miller, in her official capacity, ordered 4,100 absentee ballots from Brenneman Printing, which were later marked and cast by County employes.

10. On May 31, 2022, Miller filed petitions from approximately 120 voters in 40 precincts into the Lancaster County Court of Common Pleas, demanding a hand count of the original voted ballots in Miller's race on stated grounds they had information that the reported count was in error. The president judge denied the request.

11. On October 27, 2022, Miller filed a Complaint against Defendants Parsons, D'Agostino, and C. Miller, in their official capacity, alleging violations of the Help America Vote Act in the May 17, 2022 election.

12. At a January 9, 2023, pursuant this complaint, a poll watcher testified that during the remarking of ballots she observed voted absentee ballots that were, in error, missing Miller's election from the ballot.

13. The undisputed facts established at this hearing (available in certified transcript) show that Defendants violated Title III of the Help America Vote Act in the May 17, 2022 election.

14. On January 23, 2023, Al Schmidt, in his official capacity, who was not present at the January 9th hearing, issued an Order dismissing Miller's complaint. **Exhibit 27: Schmidt Order Dismissa**l

**B. Miller's Right-to-Know Requests**

15. On June 7, 2022, Miller submitted a request under the Pennsylvania Right-to-Know Law.

**Exhibit 2 – County's initial delay in response to RTKL requests.**

16. Miller requested copies of mail-in ballots and ballot envelopes.

17. On June 15, 2022, Defendant Bender, acting in her official capacity, invoked a 30-day extension.

18. On July 15, 2022, Defendant Bender, acting in her official capacity, denied Miller's request to release records.

19. Defendant Bender, acting individually and officially, cited that the requested records were exempt from release pursuant to Section 305(a)(3) of the RTKL and the Pennsylvania Election Code. **Exhibit 3: County Denies Release (July 15th)**

20. On July 27, 2022, Miller appealed the denial to the Pennsylvania Office of Open Records.

21. On October 5, 2022, the OOR issued a Final Determination granting Miller access to the records. **Exhibit 5 – OOR Final Determination**

---

**C. Defendants' Imposition of Restrictions**

22. On October 5, 2022, Defendants Bender and Pfursich, in their official capacities, imposed conditions on Miller's access. **Exhibit 6 – Restrictions on Release of Records**

23. The conditions subjected Miller to merely being able to look at the granted records.

24. The conditions subjected Miller to inspecting alone, with no photo or video equipment, and under supervision of a sheriff deputy at Defendants' assistance.

25. The conditions prohibited Miller from obtaining copies of the granted records.

26. Defendants, in their official capacity, release these records to others similarly situated,

including themselves as individuals and to persons at Hart Intercivic.

27. On October 12, 2022, Defendants Parsons, D'Agostino, Trescot, and Pfursich in their official capacities, ratified the conditions. **Exhibit 21 – Transcript from the October 12th Board Meeting.**

28. On October 12, 2022, Defendants, acting officially as the Board, and Pfursich declared the restrictions to be County's policy and custom since the general election in November, 2020. **Exhibit 21 – Transcript from the October 12th Board Meeting.**

---

**D. Miller's Attempts to Enforce Access Rights**

29. On October 14, Miller wrote an email to several of the Defendants in their official capacity and explained his rights to obtain the ballots.  **Exhibit 24 – Letter to County Addressing Ballot Handling Concerns.**

30. On October 14, Pfursich in her official capacity responded by email that County would not relent from its policy. **Exhibit 4: County Denies Release Again (Follow-up Denial)**

31.

32. On October 21, 2022, Miller contacted Bender in her official capacity and the OOR.

33. Miller requested intervention to clarify his rights under the Final Determination.

34. On October 21, 2022, Miller contacted Bender and the appeal officer Isenberg in their official capacity.

35. On October 21st at 5:28pm, Miller e-mailed Bender and the OOR appeal officer in their official capacity advising Isenberg of County's response and requesting intervention.

36. On October 24th, Kyle Applegate, OOR's chief counsel, officially sent Miller an email.

37. Applegate officially carbon-copied his email to Bender, Isenberg, and 'DC,

6

OpenRecords' ([RA-OpenRecords@pa.gov](mailto:RA-OpenRecords@pa.gov)) in their official capacities.

38. Applegate's official email explained "Our office's jurisdiction in the matter has ended with the issuance of the Final Determination, and we are unable to undertake any sort of enforcement action" and further directing Miller to seek adjudication in court.

39. On December 29, 2022, pursuant to Section 1302 of the RTKL, 210 Pa. R.A.P. 3761(b), and OOR's guidelines, Miller filed suit in the Lancaster County Court of Common Pleas.

**Exhibit 8: Miller's Petition in Court of Common Pleas**

40. The Court of Common Pleas treated Miller's petition as a mandamus action pursuant to 210 Pa. R.A.P. 3761(b).

41. On May 12, 2023, the judge dismissed Miller's mandamus action without a hearing, holding that County had 25 P.S. § 2648 to create its 'regulations'. **Exhibit 9: Court Dismisses Miller's Petition**

42. On August 7, 2023, after Miller appealed, this judge acknowledged on record that 25 P.S. § 2648 the law does not grant Defendants' authority to not release the records to Miller.

43. Miller's appeal has been pending in the Commonwealth Court of Pennsylvania since June, 2023.

44. On January 4, 2024, Miller filed a petition for declaratory and injunctive relief in the United States Middle District Court of Pennsylvania.

45. On September 30, 2024, after not disposing 12(b)(1) and 12(b) motions for 10 months, the judge declined to admit jurisdiction on a discretionary basis.

---

**E. Defendants' Pattern of Obstruction**

46. Defendants Parsons, D'Agostino, Pfursich, and Bender, in both individual and official

capacities, continue to enforce restrictions on Miller. **Exhibit 4: County Denies Release Again (Follow-up Denial)**

47. Defendants Parsons, D'Agostino, Pfursich, and Bender, in their official capacities, selectively imposed these restrictions on other citizens seeking election records.

48. In November 2022, Bender, acting in her official capacity, admitted to Miller that County never legally adopted 'regulations' pursuant to 25 P.S. § 2648.

49. Defendants, in their individual and official capacities, imposed restrictions on content-specific election records, not all public records nor all public election records.

50. On July 31, 2024, the Commonwealth Court held that 25 P.S. § 2648 does not authorize officials, such as Defendants, to restrain the release of voted absentee ballots. (*Previte v. ERIE COUNTY BOARD OF ELECTIONS*, No. 814 CD 2023 (Pa. Commw. Ct. July 31, 2024).)

51. On May 8, 2024, Defendants Parsons, D'Agostino, and Pfursich, individually and officially acted, through counsel in behalf of County, to file motion for sanctions against Miller for $30,000 because he would not withdraw his lawsuit by May 7, 2024.

---

**F. Harm to Miller**

52. Miller was deprived of the records he was statutorily granted.

53. Defendants' individual and official actions cause Miller emotional stress, anxiety, despair, and restlessness.

54. Defendants' actions, both individually and officially, caused Miller to lose business opportunities. **Exhibit 29: LNP Article - Retaliation Narrative**

**55.** Defendants' actions, both individually and officially, harmed Miller's reputation. **Exhibit**

**28: LNP Article - Misrepresentation of Records Request**

56. Defendants' individual and official actions have caused Miller to spend thousands of hours on litigation related to the records request.

57. Defendants individual and official actions have caused Miller to spend thousands of dollars on frivolous litigation.

58. Defendants official and individual actions cause Miller to have to litigate his rights under coercion, intimidation, threat, and duress.

59. Defendants' individual and official actions have caused Miller to divert time from his family and business.

## IV. DAMAGES CLAIMS

Miller invested much time and money campaigning, believing in the integrity of the election process. The subsequent mishandling of ballots by Defendants and failure to ensure that all votes were accurately counted not only disenfranchised voters but also wasted Miller's significant financial investment and deprived him of a fair opportunity to compete. Defendants' failure to conduct a lawful election process disenfranchised a substantial number of voters, depriving them of their right to participate and Miller of his right to a fair election outcome. This disenfranchisement skewed the results, making Miller's candidacy a victim of systemic failures.

Despite repeated requests for transparency and accountability, Defendants denied Miller access to critical records, obstructed efforts to review ballot handling, and ultimately concealed procedural deficiencies. These actions not only violated Miller's due process rights but also inflicted ongoing reputational harm by portraying him as unresponsive or unwilling to follow through. Each denial served to further perpetuate a false narrative, tarnishing his reputation and undermining his credibility as a candidate and a community advocate.

Miller experienced significant emotional distress as a result of the public mischaracterization of his efforts to seek transparency. The portrayal of Miller multiple times in the local newspapers as an 'ex-hopeful who failed to follow up' caused irreparable harm to his reputation and undermined his standing within the community. This harm was a direct result of Defendants' refusal to engage in a transparent election process. The continued obstruction and lack of accountability amplified Plaintiff's emotional distress, leaving him isolated and stigmatized.

Defendants' conduct not only harmed Plaintiff but also eroded public confidence in the election process. The mishandling of ballots and subsequent denial of transparency have cast

10

doubt on the legitimacy of the election, impacting the broader democratic process and future voter participation. Defendant's actions, in denying Miller access to the requested records, not only deprived him of his rights but also inflicted severe emotional and psychological harm.

Miller, who ran for public office out of a sense of civic duty and a commitment to uphold constitutional principles, was deeply troubled by the errors, disenfranchisement, and irregularities in the May 17, 2022 election and sought to investigate the truth of these irregularities. However, Defendant's pretextual refusal to release primary evidence to validate reported election results served as a direct attempt to prevent Miller from uncovering the truth and exercising his right to political speech, press, and public advocacy.

This censorship has imposed an insurmountable burden on Miller, who, as a pro se litigant, husband, and father of three children, found himself fighting against darkness and secrecy while striving to uphold his rights. Defendants' actions have resulted in emotional distress, loss of trust in government institutions, and irreparable harm to his personal and professional life. Miller has lost interest in activities he once enjoyed, has suffered damage to his reputation and relationships, and has experienced significant financial and psychological strain.

The ongoing obstruction has shattered Miller's faith in the integrity of the electoral process and his confidence in the future of his country. He has spent thousands of hours alone, fighting against what he believes to be lies, pretext, and corruption, causing him to question whether he has the freedom to access information that should be his by right, or whether there is a 'two-tier' justice system and he is merely subject to arbitrary government control. This struggle has caused lasting harm, depriving him of peace of mind and the ability to engage fully in his role as a father, husband, and citizen.

As a direct result of these systemic failures and the defendants' deliberate obstruction,

Plaintiff seeks compensatory damages for the emotional distress, mental anguish, reputational harm, and deprivation of constitutional rights caused by Defendants' actions, as well as punitive damages for Defendants' willful and reckless disregard of his statutory and constitutional rights. Miller also seeks declaratory and injunctive relief to ensure that similar harms do not recur and that future candidates and voters are protected from such violations of election integrity and transparency.

## V.   CLAIMS

## COUNT I: VIOLATION OF THE FIRST AMENDMENT (PRIOR RESTRAINT)

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:**

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons

12

(in his individual and official capacities), Ray D'Agostino (in his individual and official capacities), Christa Miller (in her individual and official capacities) imposed arbitrary delays and restrictions on Plaintiff's access to public records.

## 1. Legal Basis for the Claim

- Defendants Bender (in her individual and official capacities) and Pfursich (in her individual and official capacities) used 25 P.S. § 2648 to deprive Plaintiff of records to which he has right, infringing upon his First Amendment rights.

## 2. Actions Taken by Defendants

- Defendants D'Agostino (in his individual and official capacities) and Parsons (in his individual and official capacities) ratified these actions, suppressing Plaintiff's speech.

## 3. Constitutional Violations

- These actions also violate Article I, Section 7 of the Pennsylvania Constitution.

## 4. Lack of Justification

- Defendants' justifications were had no compelling government interest.

## 5. Custom and Liability

- County's custom of using pretextual excuses to obstruct release of content-specific public records violates Plaintiff's rights under both the First Amendment and Article I, Section 7 of the Pennsylvania Constitution. **Exhibit 21 – Transcript from the October 12th Board Meeting.**

- This established custom of obstruction demonstrates liability under *Monell v. Department of Social Services*.

## 6. Harm to Plaintiff

- Plaintiff suffered harm as a direct result of these actions, including emotional distress,

reputational harm, and significant barriers to advocacy, as outlined in the **Damages Claim** section.

**Relief Sought:**

**Plaintiff seeks protection and remedy under:**

1. **§ 1983**:

   o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

   o **Punitive Damages**: Against defendants in their individual capacity for their reckless and malicious disregard of Plaintiff's rights.

   o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

   o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988**:

   o Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper**:

   o Including equitable or additional relief available under the Pennsylvania Constitution.

14

## COUNT II: 42 U.S.C. § 1983 – FIRST AMENDMENT VIOLATION (RETALIATION)

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:**

Plaintiff's right to petition and his exercise to obtain public records was protected activity.

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), and Ray D'Agostino (in his individual and official capacities) retaliated against Plaintiff for engaging in protected activity by interfering with his exercise by imposing restrictions and coercion. These restrictions deter exercise.

1. **Legal Basis for the Claim**

   o Defendants Bender (in her individual and official capacities) and Pfursich (in her individual and official capacities) coordinated efforts to impose unnecessary fees and delays on Plaintiff's RTKL requests to suppress his advocacy.

2. **Actions Taken by Defendants**

- o Defendants D'Agostino (in his individual and official capacities) and Parsons (in his individual and official capacities) ratified these retaliatory policies, further violating Plaintiff's rights.

3. **Constitutional Violations**

- o These actions violate Article I, Section 7 of the Pennsylvania Constitution.

4. **Custom and Liability**

- o The County's established custom of retaliatory obstruction demonstrates liability under *Monell v. Department of Social Services*. **Exhibit 21 – Transcript from the October 12th**

5. **Harm to Plaintiff**

- o The retaliatory measures directly harmed Plaintiff, causing him irreparable injuries as described in the Damages Claims section.

**Relief Sought:**

**Plaintiff seeks protection and remedy under:**

1. **§ 1983**:

- o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

- o **Punitive Damages**: Against defendants in their individual capacity for their reckless and malicious disregard of Plaintiff's rights.

- o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

- o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988**:

   o   Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper**:

   o   Including equitable or additional relief available under the **Pennsylvania Constitution**.

---

## COUNT III: CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

**Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.**

**Claim:**

Defendants County of Lancaster (in its **official capacity**), Tammy Bender (in her **individual and official capacities**), Jacqueline Pfursich (in her **individual and official capacities**), Joshua Parsons (in his **individual and official capacities**), Ray D'Agostino (in his **individual and official capacities**), and Christa Miller (in her **individual and official capacities**) entered into a

17

conspiracy to deprive Plaintiff of his constitutional rights by implementing obstructive policies against access to public records.

**1. Coordination of Obstructive Policies:**

Each Defendant, acting in both their **individual and official capacities**, participated in developing and enforcing a coordinated scheme to deprive Plaintiff of his rights under the First Amendment and Pennsylvania law:

- **Jacqueline Pfursich** (in her **individual and official capacities**) initiated the obstruction by misrepresenting the legal basis for restricting access to records. In her **individual capacity**, Pfursich directed staff to implement unwritten policies specifically targeting Plaintiff.

- **Tammy Bender** (in her **individual and official capacities**) enforced these restrictions by fabricating procedural barriers and issuing unlawful delays in her official role. In her **individual capacity**, Bender communicated privately with other Defendants to ensure that no records were released until additional conditions were imposed.

- **Joshua Parsons and Ray D'Agostino** (in their **individual and official capacities**) ratified these unwritten restrictions through Board actions. Individually, they engaged in retaliatory behavior, including misrepresenting Plaintiff's actions publicly to undermine his credibility.

- **Christa Miller** (in her **individual and official capacities**) enforced these policies on-site and personally directed staff to delay responses to Plaintiff's records requests, despite knowing that these delays were unlawful.

**2. Specific Conspiracy Actions:**

Defendants acted in concert to implement a series of actions intended to obstruct Plaintiff's

18

access to public records and his right to petition for redress. The conspiracy involved:

- **Email Coordination**: **Pfursich**, in her **individual capacity**, used Bender's official emails to formalize the obstructive conditions. **Bender**, in her **individual capacity**, shared these emails selectively to create confusion.

- **Development of Restrictive Policies**: **Pfursich**, **Bender**, **Parsons**, and **D'Agostino** (in their **individual capacities**) created unwritten rules and procedures that specifically targeted Plaintiff's RTKL requests. These policies included increased costs, delays, and arbitrary refusals.

- **Frivolous Delays and Costs**: In their **individual capacities**, Defendants added conditions requiring Plaintiff to pay unnecessary fees and imposed constraints that were not applied to other requestors.

- **Ratification as 'Regulations'**: Defendants Parsons and D'Agostino (in their **individual capacities**) falsely characterized these obstructive practices as lawful regulations, thereby misleading the public and denying Plaintiff's ability to challenge these restrictions in a meaningful forum.

**3. Harm to Plaintiff:**

These coordinated actions caused Plaintiff irreparable harm by denying him access to critical information and impeding his right of petition and public advocacy. As a result, Plaintiff suffered:

- **Reputational Harm**: Defendants' public misrepresentations damaged Plaintiff's reputation as a public advocate.

- **Emotional Distress**: Plaintiff experienced emotional distress due to repeated delays and obstructions, which were compounded by Defendants' collective actions.

- **Inability to Advocate**: The lack of access to records prevented Plaintiff from effectively advocating for transparency and voter rights.

**4. Legal Basis for the Claim:**

These actions violated Plaintiff's rights under both the First Amendment and Article I, Section 7 of the Pennsylvania Constitution, depriving him of his right to petition and to access public records.

**5. Custom and Liability:**

The established custom of obstruction, ratified by Defendants in their **official capacities**, demonstrates liability under *Monell v. Department of Social Services*. The personal involvement of Defendants in their **individual capacities** shows a reckless and malicious disregard for Plaintiff's rights, making them personally liable for punitive damages.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983:**

   o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

   o **Punitive Damages**: Against defendants in their **individual capacities** for their reckless and malicious disregard of Plaintiff's rights.

   o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

   o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988:**

    o   Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper:**

    o   Including equitable or additional relief available under the Pennsylvania

        Constitution.

---

# COUNT IV: DENIAL OF DUE PROCESS (PROCEDURAL DUE PROCESS VIOLATION)

---

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:**

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), Ray D'Agostino (in his individual and official capacities), and Christa Miller (in her individual and official capacities) deprived Plaintiff of due

21

process by creating arbitrary restrictions that denied Plaintiff public records granted under the RTKL and affirmed by the OOR determination.

In their official capacities, Defendants acted under color of state law to enforce County policies that violated Plaintiff's procedural due process rights. Individually, each Defendant exceeded their authority to further obstruct Plaintiff's rights, acting with reckless disregard for constitutional protections.

**1. Legal Basis for the Claim:**

- Defendants imposed these restrictions without notice or a hearing, providing no opportunity for Plaintiff to challenge their decisions, thereby depriving Plaintiff of a protected property interest without adequate procedural safeguards.

- **Tammy Bender**, in her official capacity as the County's Open Records Officer, invoked pretextual reasons to deny access and procedural safeguards. In her individual capacity, she deliberately obstructed the process, knowing that Plaintiff's requests were legitimate.

- **Jacqueline Pfursich**, as County Solicitor in her official capacity, created arbitrary restrictions, bypassing standard procedures. In her individual capacity, she perpetuated these restraints outside of her professional duty, demonstrating malicious intent.

- **Joshua Parsons and Ray D'Agostino**, in their official capacities as Board of Commissioners, ratified these restrictions, making them official policy. In their individual capacities, they acted beyond their roles by retaliating against Plaintiff for engaging in protected activities.

- **Christa Miller**, in her official capacity, enforced these policies without procedural safeguards. In her individual capacity, she colluded with other Defendants to fabricate barriers to access.

**2. Actions Taken by Defendants:**

- Each Defendant contributed uniquely based on their positions and capacities:

  - o **Bender** delayed access by fabricating concerns in both capacities.

  - o **Pfursich** shifted justifications, using her dual roles to shield the County from accountability.

  - o **Parsons and D'Agostino**, using their authority, endorsed these practices to further retaliate against Plaintiff.

  - o **Christa Miller**'s individual actions further compounded the violations by undermining lawful directives in her official capacity.

**3. Custom and Liability Under *Monell*:**

- The County's established custom, ratified by Parsons, D'Agostino, and Pfursich, reflects a systemic failure to provide due process. This custom was further enforced by Bender's and C. Miller's procedural barriers, showing a consistent practice of obstructing access to public records.

- Their **i**ndividual roles and official capacities combined to create a unified strategy of obstruction, making the County liable under *Monell v. Department of Social Services*.

**4. Harm to Plaintiff:**

- As a direct result of Defendants' actions, Plaintiff suffered harm, including emotional distress, reputational damage, and significant barriers to Plaintiff's advocacy, as outlined in the Damages Claim section.

**Summary of Capacities and Actions:** The actions of each Defendant in their official capacities reflect the County's established customs, while their individual actions show a pattern of reckless disregard for Plaintiff's rights, thereby subjecting each to both individual and official capacity

liability.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983:**
   - o   **Compensatory Damages**: For emotional distress, reputational harm, and other actual damages suffered as a result of Defendants' conduct.
   - o   **Punitive Damages**: Against defendants in their individual capacity for their reckless and malicious disregard of Plaintiff's rights.
   - o   **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.
   - o   **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988:**
   - o   Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper:**
   - o   Including equitable or additional relief available under the Pennsylvania Constitution.

---

## <u>COUNT V: VIOLATION OF EQUAL PROTECTION (MEMBER OF A CLASS) AND DUE PROCESS</u>

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

24

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**1. Legal Basis for the Claim:**

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), and Ray D'Agostino (in his individual and official capacities) violated Plaintiff's rights under the Fourteenth Amendment's Equal Protection and Due Process Clauses, 42 U.S.C. § 1983, and Article I, Sections 7, 11, and 26 of the Pennsylvania Constitution by using Chapter 13 of the Right-to-Know Law (RTKL) to impose unequal treatment on Plaintiff as a member of a disfavored class. Plaintiff was denied judicial review under Section 1301, which is available to privileged requestors, and was instead relegated to a burdensome process under Section 1302 without a legitimate governmental basis.

**2. Discriminatory Actions by Defendants:**

Defendants coerced Miller into having to litigate under a violative scheme under a scheme in the RTKL that creates two distinct classes of requestors under the RTKL:

- **Privileged Class:** Defendants granted direct Commonwealth Court review under Section 1301 to County employees, contractors, and other favored individuals.

- **General Class:** Plaintiff and other public requestors were relegated to the less favorable mandamus process under Section 1302, subjecting them to a higher burden and

restricting access to meaningful judicial review.

These arbitrary classifications were designed to obstruct Plaintiff's access to records and judicial remedies.

**3. No Legitimate Governmental Basis:**

The differential treatment of Plaintiff had no legitimate purpose and contradicted Pennsylvania's procedural framework under 210 Pa. Code Rule 3761, which provides for uniform appellate procedures for RTKL appeals. Defendants used this classification scheme to discriminate against Plaintiff as a member of a general class of requestors, undermining his rights under both federal and state law.

**4. Constitutional Violations:**

- **Equal Protection Violation (Member of a Class):** Plaintiff's classification as a general class requestor deprived him of equal protection under the Fourteenth Amendment and Article I, Section 26 of the Pennsylvania Constitution, while other requestors were given privileged status.

- **Due Process Violation:** Defendants' arbitrary enforcement of Sections 1301 and 1302 denied Plaintiff procedural protections and the right to a fair hearing, violating his due process rights under the Fourteenth Amendment and Article I, Sections 7 and 11 of the Pennsylvania Constitution.

**5. Monell Liability Against County of Lancaster:**

The Defendant County of Lancaster (in its official capacity) is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the unequal classification scheme resulted from the County's established policies and customs. The County's deliberate indifference to the constitutional rights of the general class of requestors—

including Plaintiff—allowed for the systemic violation of equal protection and due process rights.

**6. Harm to Plaintiff:**

As a direct result of Defendants' enforcement of this classification scheme:

- Plaintiff was denied access to equal judicial review rights.

- Plaintiff suffered emotional distress and reputational harm, undermining his role as a public advocate.

- Plaintiff incurred significant financial losses due to the costs of pursuing a mandamus action, which was a higher burden compared to the remedies afforded to privileged requestors.

**7. Relief Sought Under the Pennsylvania Constitution:**

1. **Declaratory Relief Under Article I, Sections 7, 11, and 26:** A declaration that Chapter 13 of the RTKL, as enforced by Defendants, violates Plaintiff's rights under the Fourteenth Amendment and the Pennsylvania Constitution due to its arbitrary classifications.

2. **Injunctive Relief Under Article I, Sections 11 and 26:** An injunction prohibiting Defendants from enforcing Chapter 13 until the classifications are amended to ensure equal access to judicial review.

3. **Compensatory Damages Under Article I, Sections 7, 11, and 26:** Damages for emotional distress, reputational harm, and financial losses caused by the unconstitutional enforcement of Chapter 13.

4. **Punitive Damages Against Individual Defendants:** Punitive damages against Tammy Bender, Jacqueline Pfursich, Joshua Parsons, and Ray D'Agostino in their individual

27

capacities for their reckless disregard of Plaintiff's rights under Article I, Section 26.

5. **Attorney's Fees and Costs:** An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

6. **Any Other Relief:** Any other relief deemed just and proper to remedy the constitutional violations suffered by Plaintiff.

---

## COUNT VI: MONELL LIABILITY CLAIM (42 U.S.C. § 1983 – Policy, Custom, and Failure to Train)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Existence of Unconstitutional Policies, Customs, and Practices**

County of Lancaster, through its policymakers, adopted and maintained multiple unconstitutional policies, customs, and practices that systematically deprived Plaintiff of his rights under the First and Fourteenth Amendments, as well as under federal statutory law, including the Help America Vote Act (HAVA). These unconstitutional practices included:

1. **Selective Enforcement of Access Restrictions:**

County imposed arbitrary and vague restrictions on access to election records, justifying these restrictions using 25 P.S. § 2648 without any legitimate governmental interest. This policy was applied inconsistently and used as a pretext to limit Plaintiff's speech, access, and ability to engage in public advocacy, thereby violating Plaintiff's rights under the

28

First Amendment (as detailed in Count I).

2. **Adoption of Deficient RTKL Standards:**

County adopted deficient standards under the Pennsylvania Right-to-Know Law (RTKL), creating a pattern of arbitrary enforcement and procedural denials. These standards were applied to impose disparate treatment between Plaintiff and other requestors, depriving Plaintiff of his procedural due process and equal protection rights under the Fourteenth Amendment (as detailed in Counts IV and V).

3. **Failure to Train and Supervise:**

County, acting through its policymakers, failed to train and supervise its employees adequately regarding proper public records management, RTKL compliance, and the requirements of HAVA. This lack of training and supervision led to a consistent pattern of unlawful denials, arbitrary enforcement, and failure to uphold transparency standards in the administration of elections and public records access.

**Defendant Actions as the Moving Force Behind the Violations**

The policies and customs described above were the moving force behind the constitutional and statutory violations suffered by Plaintiff because:

1. **Direct Involvement of Key Officials:**

Defendants Bender, Pfursich, Parsons, D'Agostino, and C. Miller were directly involved in crafting and implementing these unconstitutional practices. Their decisions to impose restrictive conditions on Plaintiff's access to records, coupled with their selective enforcement of RTKL provisions, were critical in depriving Plaintiff of his rights (referencing the Due Process claims in Count IV).

2. **Ratification of Unlawful Practices:**

Defendants ratified these unlawful practices through their actions and inactions, failing to remedy known deficiencies and allowing these policies to be perpetuated even after multiple OOR determinations favorable to Plaintiff. This deliberate indifference to Plaintiff's rights, despite clear judicial and administrative findings, establishes Monell liability.

3. **Pattern of Discrimination and Procedural Denials:**

The repeated use of arbitrary conditions and fabricated justifications in Plaintiff's RTKL requests and election-related inquiries created a pattern of selective enforcement and retaliation (tied to Count II – Retaliation). These practices targeted Plaintiff individually and reflected an ongoing custom of obstructing access for citizens seeking transparency.

**Relief Sought**

WHEREFORE, Plaintiff Miller respectfully requests that this Court grant the following relief:

1. **Declaratory Relief:**

A declaration that Defendant County of Lancaster's policies, customs, and practices, including selective enforcement of 25 P.S. § 2648, adoption of deficient RTKL standards, and failure to comply with HAVA, violated Plaintiff's rights under the First and Fourteenth Amendments.

2. **Injunctive Relief:**

An injunction prohibiting Defendant County of Lancaster from continuing to enforce the challenged policies and requiring Defendants to implement training, supervision, and procedural safeguards to ensure compliance with constitutional and statutory standards.

3. **Compensatory Damages:**

An award of compensatory damages for emotional distress, reputational harm, and financial losses suffered as a direct result of Defendants' unconstitutional actions and policies.

4. **Punitive Damages:**

An award of punitive damages against the individual Defendants in their individual capacities for their reckless disregard of Plaintiff's constitutional rights, to deter future misconduct and prevent systemic abuse.

5. **Attorney's Fees and Costs:**

An award of reasonable attorney's fees and costs as authorized by 42 U.S.C. § 1988 and any other applicable provisions, to ensure that Plaintiff is made whole for his efforts to vindicate his constitutional rights.

6. **Any Other Relief:**

Any such other and further relief as this Court deems just and proper to fully remedy the constitutional and statutory violations suffered by Plaintiff.

**Jury Demand**

Miller demands a trial by jury on all claims so triable.

---

## COUNT VII: 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS VIOLATION (HANDLING OF ABSENTEE BALLOTS)

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

31

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:**

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), and Ray D'Agostino (in his individual and official capacities) had a duty to ensure that absentee ballots were released to Miller in accordance with the Right-to-Know Law (RTKL) and the procedural safeguards required under the First and Fourteenth Amendments.

In their **official capacities**, Defendants acted under color of state law to enforce County policies that violated Plaintiff's due process rights. Individually, each Defendant used their position to create additional obstacles, exceeding their official authority and showing reckless disregard for Plaintiff's rights.

**1. Legal Basis for the Claim:**

Defendants breached this duty by failing to provide adequate notice and an opportunity for a hearing regarding the handling of absentee ballots.

**2. Breach of Duty and Specific Actions:**

Defendants Bender (in her individual and official capacities), Pfursich (in her individual and official capacities), Parsons (in his individual and official capacities), and D'Agostino (in his individual and official capacities) imposed arbitrary restrictions and failed to implement proper

32

procedures for the access and review of absentee ballot information, depriving Plaintiff of a protected interest without due process.

- **Bender**, in her **individual capacity**, delayed responses and issued denials without consulting the OOR's rulings, intentionally obstructing Plaintiff's access.

- **Pfursich**, in her **individual capacity**, advised County officials to adopt overly restrictive interpretations of the RTKL, which were not grounded in legal precedent, thereby violating Plaintiff's procedural rights.

- **Parsons and D'Agostino**, in their **individual capacities**, endorsed and directed the enforcement of these unjustified restrictions, despite being aware of the OOR's rulings that established Plaintiff's rights.

**3. Custom and Liability:**

The customs and practices of the County, as enforced by Defendants Bender (in her individual and official capacities), Pfursich (in her individual and official capacities), Parsons (in his individual and official capacities), and D'Agostino (in his individual and official capacities), constituted the moving force behind the violations suffered by Plaintiff.

- In their **official capacities**, Defendants acted to implement County policies that discriminated against Plaintiff.

- In their **individual capacities**, they acted with reckless disregard by altering procedures and ignoring established rights, compounding the procedural violations.

**4. Constitutional Violations:**

This failure to provide notice and a meaningful hearing demonstrated deliberate indifference to Plaintiff's rights and violated procedural due process as guaranteed by the Fourteenth Amendment and Article I, Section 11 of the Pennsylvania Constitution.

33

**5. Harm to Plaintiff:**

As a direct result of these actions, Plaintiff suffered emotional distress, reputational harm, and significant barriers to participation in the electoral process, as outlined in the Damages Claim section.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983:**

   o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

   o **Punitive Damages**: Against defendants in their individual capacities for their reckless and malicious disregard of Plaintiff's rights.

   o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

   o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988:**

   o Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper:**

   o Including equitable or additional relief available under the Pennsylvania Constitution.

34

## COUNT VIII: 42 U.S.C. § 1983 – NEGLIGENCE IN ELECTION ADMINISTRATION

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:**

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), Ray D'Agostino (in his individual and official capacities), and Christa Miller (in her individual and official capacities) owed a legal duty under 25 P.S. § 2642 to properly administer election processes, including ensuring the integrity of absentee ballots and overseeing compliance with applicable laws and regulations.

**1. Legal Basis for the Claim**

- Under 25 P.S. § 2642, county boards of elections are required to maintain proper standards for the administration of elections, manage absentee ballots, and ensure transparency in election processes.

- Defendants violated this duty by failing to ensure that proper procedures were in place for managing absentee ballots and overseeing the integrity of election materials.

**2. Breach of Duty and Specific Actions**

- Defendants Bender (in her individual and official capacities), Pfursich (in her individual and official capacities), Parsons (in his individual and official capacities), D'Agostino (in his individual and official capacities), and Miller (in her individual and official capacities) neglected to follow established protocols for ballot handling, leading to significant deficiencies in the preparation, verification, and processing of absentee ballots.

**3. Custom and Liability**

- This breach of duty undermined the integrity of the electoral process and demonstrated a disregard for the rights of citizens, constituting negligence in election administration.

- The established pattern of negligence in recent elections in Lancaster County leads to Monell liability against the County for failing to train and supervise its employees properly.

**4. Constitutional Violations**

- Defendants' actions violated Plaintiff's rights under the Fourteenth Amendment and Article I, Sections 7 and 11 of the Pennsylvania Constitution.

**5. Harm to Plaintiff**

- As a direct result of these actions, Plaintiff, as a citizen and as a candidate, suffered emotional distress, reputational harm, and significant harm in the electoral process, as outlined in the Damages Claim section.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983**:

- **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

- **Punitive Damages**: Against defendants in their individual capacities for their reckless and malicious disregard of Plaintiff's rights.

- **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

- **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988**:

- Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper**:

- Including equitable or additional relief available under the Pennsylvania Constitution.

---

## COUNT IX: 42 U.S.C. § 1983 EQUAL PROTECTION VIOLATION - DISPARATE ACCESS TO ELECTION RECORDS

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:** Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), and Ray D'Agostino (in his individual and official capacities) violated Plaintiff's right to equal protection under the law by creating a discriminatory scheme that provided privileged access to public election records for certain individuals and entities, while imposing arbitrary and heightened barriers on Plaintiff's access, without any legitimate governmental interest.

**1. Legal Basis for the Claim**

- Defendants engaged in a pattern of preferential treatment, granting access to election records to certain individuals and entities while denying Plaintiff equal access. This resulted in unequal treatment of similarly situated individuals, in violation of the Fourteenth Amendment's Equal Protection Clause.

**2. Breach of Duty and Specific Actions**

- Defendants Bender (in her individual and official capacities), Pfursich (in her individual and official capacities), Parsons (in his individual and official capacities), and D'Agostino (in his individual and official capacities) denied Plaintiff access to public election records, including absentee ballot images, that were made available to other classes of individuals — namely County employees and individuals associated with Hart Intercivic, the election software vendor.

- **Plaintiff's Class vs. Privileged Class**: The Court should take judicial notice that individuals associated with the County and Hart Intercivic have privileges that include

38

the ability to custody, inspect, copy, and count ballots and report election results. These privileges exceed those available to Plaintiff, who, as a candidate and a citizen, should have at least equal access under the Pennsylvania Election Code and Right-to-Know Law.

- **Lack of Legislative Basis**: There is no express intent in the Pennsylvania Election Code to justify this disparate treatment, nor any compelling governmental interest served by denying Plaintiff the same level of access afforded to the privileged class. This differential treatment constitutes arbitrary discrimination and violates the Equal Protection Clause.

### 3. No Legitimate Justification

- The arbitrary distinctions between Plaintiff's access and the access granted to County employees and Hart Intercivic officials have no basis in law and serve no legitimate governmental interest. These distinctions undermine the public's interest in transparency and equal oversight of election processes.

### 4. Custom and Liability

- The established custom and practice of granting preferential access to privileged individuals, while denying similar access to Plaintiff and others seeking transparency, was a policy or custom endorsed by County. This practice created a system of unequal access to public records and resulted in the deprivation of Plaintiff's equal protection rights.

- **Monell Liability**: County of Lancaster's failure to enforce equal access standards and properly train its employees on the lawful handling of public records requests led to a systematic deprivation of Plaintiff's rights under the Equal Protection Clause,

establishing liability under *Monell v. Department of Social Services*, 436 U.S. 658

(1978).

**5. Constitutional Violations and Harm**

- As a direct result of Defendants' discriminatory practices, Plaintiff was denied access to critical public records necessary for his advocacy and campaign. The unequal treatment hindered Plaintiff's ability to engage in public discourse, access election records, and exercise his right to oversee the election process.

- Plaintiff suffered emotional distress, reputational harm, and significant barriers to participation in the electoral process as a direct consequence of this violation.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983**:

   o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

   o **Punitive Damages**: Against Defendants in their individual capacities for their reckless and malicious disregard of Plaintiff's rights.

   o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

   o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988**:

   o Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper**:

    o   Including equitable or additional relief available under the Pennsylvania Constitution.

## COUNT X: 42 U.S.C. § 1983 VIOLATION OF THE HELP AMERICA VOTE ACT (HAVA) – (FAILURE TO CONDUCT A LAWFUL ELECTION PROCESS AND ENSURE VOTER ACCESSIBILITY)

**Defendants:**

- County of Lancaster (Official Capacity)
- Tammy Bender (Individual and Official Capacities)
- Jacqueline Pfursich (Individual and Official Capacities)
- Joshua Parsons (Individual and Official Capacities)
- Ray D'Agostino (Individual and Official Capacities)
- Christa Miller (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**Claim:**

Defendants County of Lancaster (in its **official capacity**), Tammy Bender (in her **individual and official capacities**), Jacqueline Pfursich (in her **individual and official capacities**), Joshua Parsons (in his **individual and official capacities**), Ray D'Agostino (in his **individual and official capacities**), and Christa Miller (in her **individual and official capacities**) violated

41

Plaintiff's rights under the Help America Vote Act (HAVA) by failing to conduct a lawful election process and ensure accessibility for all voters.

In their **official capacities**, Defendants were responsible for implementing County election procedures in accordance with HAVA standards. Individually, each Defendant acted outside the scope of their official duties to impose additional restrictions and engage in conduct that undermined the integrity of the election process.

**1. Breach of HAVA Requirements:**

- On the morning of the May 17, 2022, municipal primary, Defendants Bender, Pfursich, and Miller, in their **individual and official capacities**, discovered that approximately 14,000 out of 22,000 absentee ballots sent to voters were misprinted and could not be scanned for counting by the Hart InterCivic election management software.
  - In her **official capacity**, **Bender** was tasked with managing absentee ballots. In her **individual capacity**, she failed to provide adequate notice of this issue and instead advised staff to handle the issue internally without alerting impacted candidates.
  - **Pfursich**, in her **individual capacity**, instructed staff not to document these errors formally, undermining transparency.
  - **Christa Miller**, acting outside her official role, directed that these ballots be treated as undervotes despite knowing that this action would disenfranchise voters.

**2. Replacement of Misprinted Ballots:**

- Defendants Parsons and D'Agostino, in their **individual and official capacities**, directed County employees to complete new replacement ballots for these 14,000 error ballots on

and after May 17, 2022.

- o   In their **official capacities**, they formalized this approach without consulting impacted candidates. Individually, they chose not to disclose this issue to the public, perpetuating the deprivation of voting rights.

- During the replacement of ballots, County employees and poll watchers reported to Defendant Christa Miller, in her **individual capacity**, that they observed voted ballots missing Miller's State Senate race entirely.

- o   Miller, in her **individual capacity**, dismissed these concerns without investigation.

**3. Voting System Error:**

- This failure to manage the absentee ballot process properly and provide adequate remedies for the errors directly undermined the integrity of the electoral process and violated Plaintiff's rights under HAVA and the Fourteenth Amendment.

- o   **Bender**, in her **individual capacity**, failed to escalate these concerns through the appropriate channels.

- o   **Pfursich**, in her **individual capacity**, advised County personnel to downplay the issue, violating HAVA standards.

**4. HAVA and Election Law Requirements:**

- Under 52 U.S.C. § 21081, HAVA mandates that voting systems must ensure the ability for voters to verify their selections privately and independently before their ballots are cast and counted.

- Additionally, 25 P.S. § 2642 requires county boards of elections to provide proper procedures and standards for the administration of elections.

- Defendants County of Lancaster, Bender, and Pfursich, in their **individual and official capacities**, breached these duties by failing to implement adequate procedures to manage absentee ballots and ensure compliance with HAVA requirements.

**5. Impact on Candidate Rights:**

- Defendants' failure to uphold the standards set forth by HAVA and the Article II Take Care Clause further highlights their negligence in fulfilling their responsibilities.

- This established pattern of negligence within the County's election administration demonstrates a blatant disregard for their legal obligations and the rights of candidates like Plaintiff to run fair campaigns.

**6. Monell Liability:**

- The established pattern of noncompliance and administrative failures leads to Monell liability against the County of Lancaster for failing to implement appropriate policies and training that would ensure compliance with HAVA and constitutional standards.

- Defendant County of Lancaster, acting through its official capacity and policymakers in official roles, failed to adopt a standardized policy for handling ballot errors, resulting in a repeated pattern of violations.

**7. Harm to Plaintiff:**

As a direct result of these actions, Plaintiff suffered emotional distress, reputational harm, and significant barriers to his participation in the electoral process, as outlined in the Damages Claim section.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983:**

44

- o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

- o **Punitive Damages**: Against defendants in their individual capacities for their reckless and malicious disregard of Plaintiff's rights.

- o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

- o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988:**

   - o Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper:**

   - o Including equitable or additional relief available under the Pennsylvania Constitution.

---

## COUNT XI: NEGLIGENCE IN ELECTION ADMINISTRATION AND HANDLING

**Defendants:**

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

45

- Christa Miller (Individual and Official Capacities)

Plaintiff restates and incorporates by reference all jurisdictional and factual allegations set forth in the preceding paragraphs as if fully stated herein.

**1. Duty of Care in Election Administration:**

Defendants County of Lancaster (in its official capacity), Tammy Bender (in her individual and official capacities), Jacqueline Pfursich (in her individual and official capacities), Joshua Parsons (in his individual and official capacities), Ray D'Agostino (in his individual and official capacities), and Christa Miller (in her individual and official capacities) had a duty to administer the election process in compliance with applicable laws and regulations, including the Help America Vote Act (HAVA), the Right-to-Know Law (RTKL), and the procedures outlined in 25 P.S. § 2642.

- **Individual Capacity Duty**: Each Defendant also had a personal duty not to act in ways that exceeded their official role by creating personal barriers or engaging in conduct that directly harmed Plaintiff's right to fair participation in the election.
- This duty is further reinforced by the Take Care Clause in Article II of the U.S. Constitution, which mandates that federal laws, including those governing elections, are faithfully executed to ensure an orderly and fair electoral process.

**2. Breach of Duty:**

Defendants breached this duty by failing to implement proper procedures for the handling of absentee ballots and ensuring that election materials were managed in accordance with established laws and standards. Specific failures include:

- **Ballot Errors**: On the morning of the May 17, 2022, municipal primary, Defendants discovered that approximately 14,000 out of 22,000 ballots sent to absentee voters were

misprinted and could not be scanned for counting by the Hart InterCivic election management software.

- Defendants, in their official capacities, failed to notify the impacted candidates, including Plaintiff, about this issue promptly.

- In their individual capacities, Defendants took actions outside their formal duties to conceal these issues. For example:

  - Bender, in her individual capacity, chose not to document these errors formally, advising staff to proceed without escalating the issue.

  - Pfursich, in her individual capacity, directly instructed County staff to proceed without updating absentee voters.

  - Parsons and D'Agostino, in their individual capacities, endorsed the concealment of errors, prioritizing expediency over accuracy.

**3. Impact on Candidate Rights:**

This failure to manage the absentee ballot process properly and provide adequate remedies for the errors directly undermined the integrity of the electoral process and violated Plaintiff's rights under HAVA, the Fourteenth Amendment, and Article I, Sections 7 and 11 of the Pennsylvania Constitution.

As a candidate, Plaintiff was denied fair access to the electoral process, resulting in the loss of potential votes that directly impacted his candidacy and standing in the election. The inability to ensure a lawful election process deprived Plaintiff of his constitutional right to participate effectively in the democratic process, causing reputational harm and emotional distress as he sought to represent his constituents.

**4. Monell Liability:**

The established customs and practices of negligence within the County's election administration demonstrate a pattern of noncompliance that leads to *Monell* liability against the County of Lancaster for failing to properly train and supervise its employees. This pattern shows a blatant disregard for their legal obligations and the rights of citizens, including the rights of candidates like Plaintiff to run fair campaigns.

**5. Harm to Plaintiff:**

As a direct result of the Defendants' negligence, Plaintiff suffered emotional distress, reputational harm, and significant barriers to participation in the electoral process, as detailed in the Damages Claim section.

**Relief Sought:**

Plaintiff seeks protection and remedy under:

1. **§ 1983:**

   o **Compensatory Damages**: For emotional distress, reputational harm, and any other actual damages suffered as a result of Defendants' conduct.

   o Punitive Damages: Against defendants in their individual capacities for their reckless and malicious disregard of Plaintiff's rights.

   o **Declaratory Relief**: A statement that Defendants' actions violated Plaintiff's constitutional rights.

   o **Injunctive Relief**: To prevent further violations of Plaintiff's rights and to ensure compliance with applicable constitutional standards.

2. **§ 1988:**

   o Recovery of reasonable attorney's fees and costs incurred in bringing this action.

3. **Any Other Relief Deemed Just and Proper:**

    o   Including equitable or additional relief available under the Pennsylvania Constitution.

# VI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff Miller respectfully requests that this Court grant the following relief:

1. **Declaratory Relief:**

   A declaration that Defendants' conduct, including but not limited to the lack of compliance with the RTKL, the unequal treatment under Chapter 13 of the Right-to-Know Law (RTKL), and the systemic failure to comply with the Help America Vote Act (HAVA), violated the Constitution, federal law, and Miller's rights.

2. **Injunctive Relief:**

   An injunction prohibiting Defendants from enforcing the challenged provisions, practices, and policies that deprive Miller and the public of their constitutional rights, and requiring Defendants to implement procedures that provide equal access to election records, transparent review of absentee ballots, and compliance with HAVA standards.

3. **Compensatory Damages:**

   An award of compensatory damages for emotional distress, reputational harm, financial losses, and any other harms suffered by Miller as a direct result of Defendants' violative acts.

4. **Punitive Damages:**

An award of punitive damages against defendants in their individual capacities for their reckless disregard of Miller's rights, to deter future misconduct and systemic abuse.

5. **Attorney's Fees and Costs:**

An award of reasonable attorney's fees and costs as authorized by 42 U.S.C. § 1988 and any other applicable provisions, to ensure that Plaintiff is made whole for his efforts to vindicate his rights.

6. **Other Relief:**

Any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Miller demands a trial by jury on all claims so triable.

## VII.   VERIFICATION AND SIGNATURE

I, Michael Miller, declare under penalty of perjury that the factual allegations set forth in the

foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Date: **October 4, 2024**

Signature: **/s/ Michael Miller**

**Michael Miller**

108 North Reading Road, F, Ste. 246

Ephrata, Pennsylvania 17522

717-388-0163

reaganfive@protonmail.com

## VIII.    <u>NOTICE OF CONSTITUTIONAL CHALLENGE UNDER RULE 5.1</u>

Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, Miller provides notice that the constitutionality of Chapter 13 of the Pennsylvania Right-to-Know Law are challenged in this complaint. Miller will serve a copy of this complaint on the Attorney General of Pennsylvania.