IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Miller,<br><br>     Plaintiff,<br><br>v.<br><br>County of Lancaster,<br>Tammy Bender,<br>Jacqueline Pfursich,<br>Joshua Parsons,<br>Ray D'Agostino,<br>Christa Miller,<br><br>     Defendants. | Civ. No: 5:24-cv-05338-JFL |

**FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE,**

**AND MONETARY RELIEF**

# TABLE OF CONTENTS

I.      INTRODUCTION......................................................................................1

II.     GENERAL COLOR OF LAW STATEMENT ...........................................1

III.    SUMMARY OF CLAIMS.........................................................................2

IV.     PARTIES...................................................................................................3

V.      JURISDICTION AND VENUE ................................................................4

VI.     PROCEDURAL HISTORY.......................................................................5

VII.    TOLLING ARGUMENT...........................................................................7

VIII.   NOTICE TO DEFENDANTS...................................................................9

IX.     FACTUAL ALLEGATIONS.....................................................................9

X.      EXHIBIT HANDLING.............................................................................18

XI.     GENERAL LIABILITY ...........................................................................18

XII.    CONSOLIDATED DAMAGES CLAIM ...................................................23

XIII.   CLAIMS FOR RELIEF ............................................................................27

        Count I: 42 U.S.C. § 1983 – Prior Restraint ....................................27

        Count II: 42 U.S.C. § 1983 – Retaliation...........................................32

        Count III: Right to Petition ..............................................................37

Count IV: 42 U.S.C. § 1983 – Procedural Due Process ...................................42

Count V: 42 U.S.C. § 1983 – Equal Protection Violation (Disparate Access to Election Records).............................................................................................46

Count XI: Monell Liability ..............................................................................71

Count XII: Abuse of Process ............................................................................74

XIV.    CONSOLIDATED RELIEF SECTION ....................................................78

XV.    EXHIBIT LIST ........................................................................................79

XVI.    VERIFICATION AND SIGNATURE ......................................................80

XVII.    NOTICE OF CONSTITUTIONAL CHALLENGE UNDER RULE 5.1..81

# I.    INTRODUCTION

Plaintiff, a candidate in an election marred by mismanagement, seeks justice for Defendants' illegal actions that compromised voting integrity. When 14,000 of 22,000 absentee ballots were misprinted, instead of issuing new ballots as required by federal law, Defendants filled out and cast replacement ballots themselves—outside of voter oversight.

After the election, Plaintiff legally requested copies of these ballots to verify the results and inform the public. Despite the Pennsylvania Office of Open Records granting this request on October 5, 2022, Defendants have denied access for over two and a half years, using newly created regulations to justify their refusal.

Defendants' continued obstruction has caused Plaintiff significant and irreparable harm. He seeks relief under 42 U.S.C. § 1983 for deprivations of his rights.

# II.    GENERAL COLOR OF LAW STATEMENT

All actions alleged herein were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of County of Lancaster. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

1

### III.    <u>SUMMARY OF CLAIMS</u>

| Count | Defendants | Key Issues |
|---|---|---|
| I: Prior Restraint | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Restricted access to election records, suppressing political advocacy |
| II: Retaliation | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Retaliation for exercising First Amendment rights (e.g., sanctions motion) |
| III: Right to Petition | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Obstructed Plaintiff's right to file HAVA complaints and petitions |
| IV: Procedural Due Process | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Denial of fair procedures and legal process |
| V: Equal Protection (Disparate Access to Election Records) | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Unequal access to public election records |
| VI: Equal Protection (Unequal Treatment Under RTKL) | County, Bender, Pfursich, Parsons, D'Agostino | Unequal treatment of RTKL requests and judicial review |
| VII: PA Constitution – Free Speech & Petition | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Suppressed free speech and petition rights under PA Constitution |
| VIII: PA Constitution – Free and Fair Election | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Violated Plaintiff's right to a free and fair election |
| IX: Conspiracy | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Conspired to deprive Plaintiff of constitutional rights |
| X: HAVA Violations | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Mishandled absentee ballots in violation of HAVA standards |
| XI: Monell Liability | County | County's policies and customs led to violations of constitutional rights |
| XII: Abuse of Process | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Misuse of legal process to delay, coerce, and obstruct Plaintiff's rights |

| IX: Conspiracy (42 U.S.C. § 1983) | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Conspired to deprive Plaintiff of constitutional rights |
|---|---|---|

## IV.   <u>PARTIES</u>

1. Plaintiff Michael Miller ("Plaintiff" or "Miller") is a citizen of Pennsylvania and the United States, residing in Lancaster County, Pennsylvania.

2. Defendant County of Lancaster ("County") is a municipal entity organized under the laws of the Commonwealth of Pennsylvania. County oversees elections, including the processing and handling of absentee and mail-in ballots, and is responsible for the actions of its employees, officers, and agents.

3. Defendant Tammy Bender ("Bender") is a person who, at all relevant times, served as County's Open Records Officer. Bender is sued in her individual and official capacities.

4. Defendant Jacqueline Pfursich ("Pfursich") is person who, at all relevant times, served as the Solicitor for County. Pfursich is sued in her individual and official capacities.

5. Defendant Joshua Parsons ("Parsons") is a person who, at all relevant times, served as County of Lancaster's Commissioner and member its Board of Elections. Parsons is sued in his individual and official capacities.

6. Defendant Ray D'Agostino ("D'Agostino") is a person who, at all relevant times, served as County of Lancaster's Commissioner and member its Board of Elections. D'Agostino is sued in his individual and official capacities.

3

7. Defendant Christa Miller ("C. Miller") is a person who, at all relevant times, served as the Chief Registrar and Director of Elections for County of Lancaster. C. Miller is sued in her individual and official capacities.

## V.    <u>JURISDICTION AND VENUE</u>

1. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) because Plaintiff's claims arise under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983.

2. The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

3. Plaintiff seeks relief under 42 U.S.C. §§ 1983 and 1988 for constitutional violations and under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, for Defendants' policies, customs, and practices.

4. Plaintiff also brings claims under Article I, Sections 7 and 11 of the Pennsylvania Constitution, which protect his rights to free expression and due process.

5. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Lancaster County, Pennsylvania, and all Defendants reside in this District.

# VI.    PROCEDURAL HISTORY

## A. State Court Actions Involving Election Challenges

1. On May 31, 2022, Plaintiff filed petitions in the Lancaster County Court of Common Pleas from approximately 120 voters in 40 precincts, demanding a hand count of the original voted ballots in his race.

2. The president judge denied the request and dismissed the petitions.

3. On October 27, 2022, Plaintiff filed a complaint against Defendants Parsons, D'Agostino, and C. Miller, alleging violations of the Help America Vote Act (HAVA) in the May 17, 2022, election.

4. During a January 9, 2023 hearing on the HAVA complaint, a poll watcher testified that she observed absentee ballots missing Plaintiff's race.

5. On January 23, 2023, acting Pa. Secretary of State, Al Schmidt, issued an order dismissing Plaintiff's HAVA complaint.

## B. Initial RTKL Request and OOR Determinations

6. On June 7, 2022, Plaintiff submitted a RTKL request to the County of Lancaster, seeking copies of mail-in ballots and ballot envelopes for the 2022 primary election.

7. On July 27, 2022, Plaintiff appealed the County's denial of the records request to the Pennsylvania Office of Open Records (OOR).

8. On October 5, 2022, the OOR issued a final determination substantially granting Plaintiff's access to the requested records.

9. On December 1, 2022, OOR appeal officer, Erin Burlew, issued a second final determination denying Plaintiff's request for access to digital copies of the records.

## C. State Court Actions Under the RTKL

10. On December 29, 2022, Plaintiff filed a petition in the Lancaster County Court of Common Pleas under Chapter 13 of the Pennsylvania RTKL and 210 Pa. R.A.P. 3761(b) to enforce the OOR's final determination issued on October 5, 2022.

11. Concurrently, Plaintiff filed a second petition in the Lancaster County Court of Common Pleas under Chapter 13 of the Pennsylvania RTKL and 210 Pa. R.A.P. 3761(b) appealing the OOR's December 1, 2022, final determination denying the requested records in digital form.

12. The Court of Common Pleas assigned the same judge to oversee both petitions.

13. On May 8, 2023, Plaintiff filed a motion demanding a hearing on his petitions.

14. On May 12, 2023, the judge denied Plaintiff's request for a hearing and dismissed both petitions on the same day.

**D. Commonwealth Court Appeals**

15. On June 5, 2023, Plaintiff filed a notice of appeal to the Commonwealth Court of Pennsylvania, seeking review of both dismissals.

16. On August 7, 2023, after Plaintiff had appealed, the Lancaster County Court of Common Pleas judge, David Ashworth, acknowledged on record that 25 P.S. § 2648 does not grant Defendants the authority to withhold the records from Plaintiff.

17. On July 31, 2024, the Commonwealth Court held that 25 P.S. § 2648 does not authorize officials, such as Defendants, to restrain the release of voted absentee ballots. *Previte v. ERIE COUNTY BOARD OF ELECTIONS*, No. 814 CD 2023 (Pa. Commw. Ct. July 31, 2024)

18. The Commonwealth Court has not scheduled a hearing or issued a ruling on Plaintiff's appeal as of the date of this filing.

*Plaintiff has never been granted a hearing on the merits of his claims by any court, despite multiple petitions and motions requesting such hearings.*

## E. Federal Declaratory Judgment Action

- On January 4, 2024, Plaintiff filed a petition for declaratory judgment and a constitutional challenge to Chapter 13 of the Pennsylvania Right-to-Know Law (RTKL) and 210 Pa. R.A.P. 3761(b) in the United States District Court for the Middle District of Pennsylvania.

- On February 1, 2024, Defendants filed a motion to dismiss under Rule 12(b)(1), challenging the court's jurisdiction.

- On May 8, 2024, Defendants Parsons, D'Agostino, and Pfursich, in their individual and official capacities, filed a motion for sanctions against Plaintiff, seeking $30,000 because he would not withdraw his lawsuit by May 7, 2024.

- The court did not dispose of the 12(b)(1) objection until September 30, 2024.

- On September 30, 2024, the Middle District Court dismissed Plaintiff's petition for discretionary decline of jurisdiction, and Plaintiff intends to file a notice of appeal to the Third Circuit Court of Appeals.

# VII.   <u>TOLLING ARGUMENT</u>

1. Plaintiff's Claims Are Preserved Due to Ongoing Litigation and Delays.

    Plaintiff's claims are timely due to the ongoing nature of Defendants' conduct and the procedural delays caused by protracted litigation history, as detailed in the Procedural History Section.

7

2. Federal Declaratory Judgment Action Delayed Plaintiff's Ability to Pursue § 1983

   Claims.

   Plaintiff filed a federal declaratory judgment action on January 4, 2024, to address the

   same issues that are the basis of this action. The Middle District Court failed to adjudicate

   the case for nearly ten months, delaying Plaintiff's ability to pursue alternative remedies,

   until the action was dismissed on September 30, 2024. This extended period prevented

   Plaintiff from asserting his constitutional claims under § 1983 within the original

   statutory period.

3. Pending State Court Appeal Necessitates Tolling.

   Plaintiff's appeal to the Commonwealth Court, filed on June 5, 2023, has remained

   unresolved, with no hearing or ruling issued as of the date of this filing. The ongoing

   nature of the appeal, along with the state court's reliance on a statute that has since been

   held not to apply (*Previte v. Erie County Board of Elections*, No. 814 CD 2023), supports

   the need for equitable tolling of the statute of limitations.

4. Equitable Tolling Is Appropriate Due to Defendants' Deliberate Conduct and Court

   Delays.

   Defendants' pretextual reliance on 25 P.S. § 2648 and their continued obstruction through

   arbitrary restrictions created a situation where Plaintiff was unable to seek adequate

   judicial relief. Despite filing multiple petitions and motions, Plaintiff was never granted a

   judicial hearing on the merits of his claims. In such circumstances, equitable tolling is

   appropriate because Defendants' conduct, combined with the protracted and overlapping

   court delays, effectively prevented Plaintiff from asserting his rights.

5. Related Federal Action Supports Tolling Based on Good Faith Pursuit of Relief.

Plaintiff's federal declaratory judgment action, along with the pending appeal to the Third Circuit, represents a good faith effort to resolve these matters. The ongoing litigation in both state and federal courts has tolled the limitations period, preserving Plaintiff's claims.

## VIII.    <u>NOTICE TO DEFENDANTS</u>

Plaintiff hereby gives notice to Defendants that failure to directly respond to the Factual Allegations Section in this Complaint, or failure to specifically deny such allegations, will result in Plaintiff moving for summary judgment under Federal Rule of Civil Procedure 56. Under Federal Rule of Civil Procedure 8(b)(6), any allegation not properly denied or responded to shall be deemed admitted.

## IX.    <u>FACTUAL ALLEGATIONS</u>

1. On May 17, 2022, Miller contested for Pennsylvania State Senate District 36 in an election held in Lancaster County, Pennsylvania.

2. Parsons, D'Agostino, and C. Miller, in their official capacities, reported that approximately 22,000 voted mail-in ballots were received countywide for the May 17, 2022, primary election.

3. On May 17th, Parsons, D'Agostino and C. Miller, acting in their official capacities, were responsible for causing to be printed 14,000 voted mail-in ballots that could not be counted by Hart Intercivic's election software.

4. On May 17, 2022, Parsons, D'Agostino and C. Miller, acting in their official and individual capacities, were responsible for sending voters ballots that in error did not include Plaintiff's race on the ballot.

5. On May 17, 2022, Parsons, D'Agostino, C. Miller, and Pfursich, in their official and individual capacities, directed County employees to replace approximately 14,000 absentee ballots to replace the marked ballots that could not be read by Hart Intercivic's software. (See **Exhibit 01**).

6. On May 17, 2022, observers of the replacement of ballots reported to Defendants Parsons, D'Agostino, and C. Miller that some original ballots were missing Plaintiff's race.

7. On May 17, 2022, Parsons, D'Agostino, and C. Miller did not permit voters who were sent an error ballot to complete a replacement ballot.

8. On May 18, 2022, C. Miller caused to be ordered 4,100 replacement ballots from Brenneman Printing to be marked, scanned, and counted by Hart Intercivic software. There were approximately this number of mail-in ballots counted in Plaintiff's election.

9. On May 18, 2022, Parsons, D'Agostino, and C. Miller failed to provide Plaintiff with notice about all the errors in the original ballots before completing the re-marking process.

10. 25 P.S. § 3150.17 states: "All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records."

11. On May 31, 2022, approximately 120 voters in 40 precincts filed petitions in the Lancaster County Court of Common Pleas demanding a hand count of Miller's election on grounds they had information that the reported count was in error. The Court denied the petitions and a hand count.

12. Plaintiff has a protected interest in acquiring public records he was granted and pursuant to 25 P.S. § 3150.17, which designates the records as public records (not County records).

13. On June 7, 2022, Plaintiff filed a request under the Right-to-Know Law (RTKL) to inspect and copy mail-in ballots and ballot envelopes used in the May 17, 2022, election (OOR Dkt. 2022-1749).

14. Bender is County's designated open records officer.

15. On June 15, 2022, Bender, acting in her official capacity as the Open Records Officer, invoked a 30-day extension to respond to Miller's request (OOR Dkt. 2022-1749).

16. On July 15, 2022, Bender, in her official and individual capacity, denied Miller's request, citing 25 P.S. § 2648 of the Election Code as the basis for exemption, asserting that the requested records were not subject to public access under the Election Code (OOR Dkt. 2022-1749).

17. On July 15, Pfursich, County's solicitor, acted in her individual capacity as County's open records officer in denying Plaintiff the records.

18. The text of 25 P.S. § 2648 does not state that county boards are authorized to establish 'regulations for the safekeeping of records.'

19. Pfursich is not County's designated records officer.

20. On July 19, 2022, Plaintiff filed a separate request for the Cast Vote Records (CVRs) for the May 17, 2022, election (OOR Dkt. 2022-1831).

21. Bender, in her official and individual capacity, denied this request at the direction of Pfursich.

22. On July 27, 2022, Plaintiff appealed County's denial of mail-in ballots to the Office of Open Records (OOR) (OOR Dkt. 2022-1749).

23. On August 8, 2022, C. Miller emailed Pfursich a letter from Jessica Mathis, Director of Bureau of Elections and Notaries at the Pennsylvania Department of State. Mathis' letter was addressed to "County Election Officials," advising them to not release mail-in ballots to requestors under the RTKL.

24. On August 17, 2022, Bender, in her official and individual capacity, submitted an email to the OOR's appeals officer, attaching a letter written by Pfursich in her individual capacity, opposing Miller's appeal and asserting that the requested ballots were not public records (OOR Dkt. 2022-1749).

25. On August 17, 2022, Pfursich, in her individual capacity, directed Bender to send Mathis' letter to the OOR appeal officer in attempt to influence her denial of the Plaintiff's request. (OOR Dkt. 2022-1749).

26. On August 26, 2022, the OOR appeal officer denied Plaintiff's request for cast vote records, asserting that C. Miller's argument was conclusive that these records were not public records under 25 P.S. 2648. (OOR Dkt. 2022-1831).

27. On August 28, 2022, Plaintiff appealed the denial of the Cast Vote Records to the OOR (Request: 2022-1831).

28. Pfursich, in her individual capacity, wrote letters to the OOR appeal officer using Bender's official email in Miller's appeal. (OOR Dkt. 2022-1831)

29. Pfursich, in her individual capacity, sent the OOR appeal officer documents she purported to be 'affidavits' by C. Miller, written in her individual capacity, attempting to influence the appeal officer to deny Plaintiff the records. (OOR Dkt. 2022-1831)

30. OOR denied the records on grounds that C. Miller's statements were competent evidence.

31. On October 5, 2022, the OOR issued a final determination ordering County and Bender, in her official capacity, to release the mail-in ballots and envelopes under specific conditions (OOR Dkt. 2022-1749). (See **Exhibit 09**)

32. Plaintiff secured a legally protected property interest in the requested records pursuant to the Right-to-Know Law (RTKL) through the OOR's final determination on October 5, 2022.

33. Plaintiff has a constitutionally protected liberty interest in accessing these records because their availability is essential for his political speech, public advocacy, and meaningful participation in public oversight of election processes.

34. On October 5, 2022, Bender and Pfursich, in their official and individual capacities, issued a letter to Miller imposing additional restrictions not mentioned in the OOR order, such as limiting inspection to supervised review by a sheriff's deputy and prohibiting photo or video recording, effectively preventing meaningful inspection and copying (OOR Dkt. 2022-1749).  (See **Exhibit 02**)

35. On October 12, 2022, Parsons, D'Agostino, and Pfursich, in their official capacity, held a board meeting. (See **Exhibit 03**)

36. At this meeting, Parsons, D'Agostino, and Pfursich declared the restrictions on Plaintiff to be County's policy, citing it was installed after the November 2020 general election. (OOR Dkt. 2022-1749).

37. On October 12, 2022, Parsons, D'Agostino, and Pfursich, in their official and individual capacities, declared that the Board had created regulations pursuant to 25 P.S. 2648.

38. 25 P.S. 2648 states: *"Section 2648 - Records and documents to be open to public inspection; proviso The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, except the contents of ballot boxes and voting machines and records of assisted voters, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employees having duties to perform thereto."*

39. 25 P.S. § 2648 was enacted over 100 years ago and does not mention absentee ballots, mail-in ballots, or any other modern ballot records that are not "contents of a ballot box." The statute must be strictly construed.

40. Because 25 P.S. § 2648 does not address absentee ballots or digital ballot images, it may not serve as the basis for Defendants' restrictions preventing Plaintiff from copying, photographing, and inspecting the records.

14

41. On October 5, 2022, Bender and Pfursich, in their individual and official capacities, issued a policy prohibiting Plaintiff from copying or photographing the granted records. These restrictions deprived Plaintiff of his right to obtain the granted records. (See **Exhibit 02**)

42. On October 14, 2022, Plaintiff emailed C. Miller and Pfursich, in their official capacities, asserting his right to obtain the records (OOR Dkt. 2022-1749).

43. On October 14, 2022, Pfursich, in her official and individual capacity, responded by email, stating that County would not alter its policy (OOR Dkt. 2022-1749).

44. On October 21, 2022, Plaintiff emailed Bender and the OOR's appeals officer, advising them of County's response and requesting OOR intervention to clarify his rights under the final determination (OOR Dkt. 2022-1749).

45. On October 24, 2022, Kyle Applegate, OOR's Chief Counsel, answered Plaintiff that the OOR's jurisdiction ended with the issuance of the final determination and advising Miller to seek enforcement through filing a mandamus action (OOR Dkt. 2022-1749).

46. On October 26, 2022, Miller filed a request for digital images of mail-in ballots from the May 17, 2022, election in County's custody (OOR Dkt. 2022-2536).

47. On November 2, 2022, Bender and Pfursich, in their official and individual capacities, denied the request for digital images, asserting that the records did not exist in the requested format pursuant to 65 P.S. § 67.705, without addressing whether the records could be provided in an alternative format (OOR Dkt. 2022-2536).

48. On November 17, 2022, Bender and Pfursich, in their official and individual capacities, submitted statements to the OOR appeals officer alleged to be copies of affidavits by C.

15

Miller. Plaintiff objected to these statements as unauthenticated, hearsay, and lacking foundation (OOR Dkt. 2022-2536). (See **Exhibit 04**)

49. On November 29, 2022, Bender and Pfursich, acting in both their individual and official capacities, submitted an additional purported affidavit from C. Miller, reiterating that the digital images of the 36,000 mail ballot images she caused to be placed into Hart Intercivic's election software in May 2022 were not retained by County. (OOR Dkt. 2022-2536).

50. On December 1, 2022, the OOR appeal officer issued a final determination denying Plaintiff's request for digital images, accepting Defendants' statements without examination. (OOR Dkt. 2022-2536).

51. On December 29, 2022, Plaintiff filed a 'Petition to Enforce a Final Determination' in the Lancaster County Court of Common Pleas to enforce the OOR's final determination granting the mail-in ballots. (OOR Dkt. 2022-1749).

52. On May 12, 2023, the Court of Common Pleas dismissed Plaintiff's petition, concluding that the County had authority from 25 P.S. § 2648 to create its regulations. (Request: 2022-1749).

53. On May 12, 2023, the Court of Common Pleas also dismissed Plaintiff's appeal for the digital images, concluding that the RTKL gives the OOR appeal officer wide discretion regarding evidentiary standards under the RTKL and no hearing is required. (OOR Dkt. 2022-2536).

54. Plaintiff appealed both these matters. As of June 8, 2023, Plaintiff's appeals remain pending in the Pennsylvania Commonwealth Court.

55. Defendants, acting in both their individual and official capacities, continue to deprive Plaintiff of records to which he is statutorily entitled.

56. As a result of Defendants' actions, taken in both their individual and official capacities, Plaintiff has suffered emotional stress, anxiety, despair, and sleeplessness.

57. Defendants' actions, taken in both their individual and official capacities, have caused Plaintiff to lose business opportunities.

58. Defendants' actions, taken in both their individual and official capacities, have caused harm to Plaintiff's reputation.

59. Defendants' actions, taken in both their individual and official capacities, have forced Plaintiff to spend thousands of hours on litigation.

60. Defendants' actions, taken in both their individual and official capacities, have cost Plaintiff thousands of dollars in litigation.

61. Defendants' actions, taken in both their individual and official capacities, have forced Plaintiff to litigate his rights under coercion, intimidation, threat, and duress.

62. Defendants' actions, taken in both their individual and official capacities, have caused Plaintiff to divert time from his family and business.

63. In August 2022, as a result of Defendants' actions, both individually and officially, an article titled 'Ex-Hopeful' unfairly targeted Plaintiff, reflecting retaliatory efforts against him for his advocacy and records requests. (See Exhibit 05).

64. On January 23, 2023, the Pennsylvania Department of State dismissed Plaintiff's HAVA complaint regarding election irregularities, refusing to address the re-marking process issues. (See Exhibit 06).

65. In *Previte v. Erie County Board of Elections*, the Pa. Commonwealth Court held that digital images of mail-in ballots are accessible through RTKL requests, contradicting Defendants' refusal to provide these records. (See Exhibit 07).

## X.    EXHIBIT HANDLING

References to documents will be noted throughout the claims as needed. The complaint will serve no more than 5-10 key exhibits, while other documents can be provided during the discovery process.

## XI.    GENERAL LIABILITY

1. **Monell Liability**

Defendant County of Lancaster is liable for constitutional violations under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, because the deprivation of Plaintiff's rights resulted from County's official policies, customs, or practices. Additionally, County of Lancaster acted outside its lawful authority under Title 53, Section 2962 of the Pennsylvania Consolidated Statutes by engaging in conduct, particularly in its handling of election-related procedures, which exceeded statutory limitations. The following policies and customs were the moving force behind the violations:

2. **Policy or Custom of Arbitrary Denial or Obstruction of Public Record Requests:**

County maintained a policy or custom of arbitrarily denying or obstructing public record

requests to suppress unfavorable information and prevent its dissemination.

3. **Custom of Retaliatory Conduct:**

Defendants engaged in a pattern of retaliatory conduct against individuals, including Plaintiff, who engaged in advocacy and public criticism of County officials.

**4. Use of Pretextual Legal Justifications:**

County utilized pretextual legal justifications to deny access to public records and obstruct the rights of requesters, including Plaintiff.

**5. Inadequate Training and Supervision:**

County failed to provide adequate training and supervision of officials responsible for administering public record policies, resulting in the consistent deprivation of the rights of record requesters, including Plaintiff.

6. **County's Liability Extends to Actions of Employees and Final Policymakers**

County's liability extends to actions taken by its employees and officials in their official capacities, as well as decisions made by final policymakers, such as County's commissioners and County's solicitor, who directly ratified or implemented the unlawful policies at issue. The County's policies were not only unconstitutional but also exceeded its legal authority, further justifying Monell liability.

**7. Supervisory Liability**

Defendants Joshua Parsons, Ray D'Agostino, and Jacqueline Pfursich are liable in their individual capacities as supervisors and final policymakers. Defendants, acting in their individual capacities, directly participated in or were deliberately indifferent to the unlawful conduct. Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Rizzo v. Goode*, 423 U.S. 362 (1976), these Defendants are liable for:

19

**8. Personal Direction or Approval of Unlawful Actions:**

Personally directing or approving the unlawful actions of subordinate officials.

9. **Establishing Policies Resulting in Constitutional Violations:**

Setting policies or directives that directly resulted in the deprivation of Plaintiff's rights.

**10. Failure to Intervene to Prevent Unconstitutional Conduct:**

Failing to intervene to prevent known unconstitutional conduct, despite having the authority to

do so.

**11. Supervisory Defendants' Liability as Final Policymakers**

As final policymakers, their decisions are attributable to County, and their active participation in

or approval of the unlawful policies establishes their supervisory liability under § 1983. These

ultra vires actions exceeded their lawful authority under Title 53, Section 2962.

**12.  Pennsylvania Constitution Liability**

Plaintiff also seeks relief under Article I, Section 7 of the Pennsylvania Constitution, which

guarantees the right to free speech and prohibits retaliation against individuals for engaging in

public advocacy or criticism of government conduct. Defendants' actions, including the

imposition of arbitrary restraints on Plaintiff's ability to inspect and copy public records, violated

these rights and warrant declaratory and injunctive relief under state law.

**13. Ongoing Pattern of Retaliatory Conduct**

Defendants' liability under the Pennsylvania Constitution is further supported by their ongoing

pattern of retaliatory conduct and suppression of Plaintiff's ability to disseminate public

information, constituting a continuing violation of Plaintiff's state constitutional rights.

**14. Application to All Counts**

The General Liability Section applies to all counts in which official capacity claims are asserted

against County or where supervisory defendants are implicated in the implementation of unlawful policies and practices. Each count references this section to establish the legal basis for County's and the supervisors' liability under § 1983 and state law.

## 15. Relief Under Federal and State Law

Plaintiff seeks relief through 42 U.S.C. §§ 1983 and 1988 for violations of his rights under the United States Constitution, specifically the First and Fourteenth Amendments, and the Pennsylvania Constitution. Defendants are also liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because their actions were taken pursuant to County's official policies, customs, and practices. Plaintiff's state law claims are brought under Article I, Sections 7 and 11 of the Pennsylvania Constitution, which protect his rights to free expression and due process.

## 16. Universal Reference for All Claims:

Unless otherwise specified, all claims herein are brought under 42 U.S.C. §§ 1983 and 1988, the Pennsylvania Constitution, and Monell for the violations described. Defendants are liable in their official and individual capacities as applicable.

## 17. Joint and Several Liability Statement:

All Defendants sued in their individual capacities are jointly and severally liable for the harms resulting from their concerted actions, as detailed in each claim. The ultra vires actions of Defendants in their individual capacities justify holding them jointly and severally liable for the full extent of Plaintiff's damages. Plaintiff seeks an order holding each Defendant individually accountable to the full extent of damages awarded.

## 18. Take Care Clause Violation and Ultra Vires Actions:

Defendants, as County officials administering a federal election, had a duty under the Take Care

Clause of Article II, Section 3 of the U.S. Constitution to ensure the faithful execution of federal laws, including the Help America Vote Act (HAVA). County of Lancaster, through its official policies and customs, failed to implement HAVA's voter protection standards—such as allowing voters to verify and correct their ballots—thereby violating this duty and contributing to the deprivation of Plaintiff's constitutional rights. Additionally, Defendants exceeded their lawful authority under Title 53, Section 2962 of the Pennsylvania Consolidated Statutes by engaging in election-related procedures beyond statutory limitations. These ultra vires actions, taken in both official and individual capacities, justify holding Defendants individually liable, while the County remains liable under Monell for its failure to supervise and prevent these unconstitutional practices.

### 18. Failure to Comply with Election Code Duties (25 Pa. Stat. § 2642)

Defendants, in their official capacities, were entrusted with specific duties under 25 Pa. Stat. § 2642 as the County Board of Elections, including ensuring that elections were conducted honestly, efficiently, and uniformly. Their failure to comply with these statutory duties, particularly the re-marking of absentee ballots without proper verification or correction mechanisms, violated both Pennsylvania election laws and federal laws under HAVA. Defendants also failed to comply with their duty to ensure election transparency, properly certify election results, and investigate irregularities as required under 25 Pa. Stat. § 2642(i) and (k). These failures contributed directly to the constitutional violations suffered by Plaintiff, including the deprivation of his First and Fourteenth Amendment rights. This conduct exceeded their lawful authority and supports liability under Monell and ultra vires theories, as Defendants abused the powers and duties imposed upon them by law to obstruct Plaintiff's rights.

## XII.    <u>CONSOLIDATED DAMAGES CLAIM</u>

Plaintiff incorporates this Consolidated Damages Claim section into each count of the complaint to comprehensively describe the ongoing harm experienced due to Defendants' actions and policies. The damages are categorized into six key areas and apply to all counts asserted against the Defendants, establishing a universal reference point that captures the full extent of the harm suffered.

1. **Emotional Distress and Anxiety**

   Plaintiff experienced severe emotional distress and anxiety resulting from Defendants' ongoing obstruction, retaliatory conduct, and false narratives that mischaracterized his legitimate advocacy efforts. Defendants' actions—including imposing unlawful restraints on Plaintiff's access to records and engaging in public statements that undermined his credibility—created a chilling effect that significantly impacted his mental health and emotional well-being.

   o   Public Mischaracterization:

   Defendants falsely portrayed Plaintiff's efforts as disruptive and unreasonable, creating a public perception that Plaintiff was acting out of personal malice rather than genuine concern for transparency and election integrity.

   o   Emotional Impact:

   Plaintiff endured persistent stress and anxiety, which affected his ability to engage in advocacy and pursue his professional and personal interests. This ongoing distress was compounded by negative media portrayals and Defendants' persistent denials.

23

2. **Reputational Harm**

Defendants' portrayal of Plaintiff's lawful efforts to obtain public records as vexatious or frivolous significantly damaged his reputation as a public advocate. The false narratives and misleading public statements, coupled with the intentional suppression of information, created a false perception that undermined Plaintiff's credibility and standing within the community.

- o Misleading Statements to the Media:

    Defendants misrepresented Plaintiff's motives and portrayed his advocacy as baseless, resulting in negative media coverage that harmed Plaintiff's public image.

- o Undermined Advocacy Role:

    Defendants' actions cast doubt on Plaintiff's motives, discrediting his role as an advocate for election transparency and accountability.

3. **Suppression of Advocacy Efforts**

Defendants' imposition of arbitrary restraints and denials directly suppressed Plaintiff's ability to gather and disseminate information to the public. These actions, which included obstructing access to election records and falsely representing the legal basis for such restrictions, had a chilling effect on Plaintiff's advocacy efforts.

- o Obstruction of Public Records Access:

    Defendants' selective application of legal standards and pretextual interpretations of state law obstructed Plaintiff's attempts to engage in public advocacy, thereby violating his First Amendment rights.

- o Impact on Political Speech:

By depriving Plaintiff of the ability to obtain and share information, Defendants significantly impaired his capacity to inform the public, thereby suppressing his right to engage in political speech and advocacy.

4. **Financial Losses**

Plaintiff incurred significant financial losses due to Defendants' obstruction and retaliatory conduct. These losses include the costs of defending his rights through multiple legal actions, as well as the diversion of time and resources from his personal and professional endeavors to address the restrictions imposed by Defendants.

- o Protracted Legal Battles:

  Defendants' conduct led to protracted litigation and ongoing administrative appeals, resulting in substantial legal expenses and the expenditure of thousands of hours defending his rights.

- o Loss of Business Opportunities:

  The significant financial and time investment in these legal battles resulted in lost business opportunities and a substantial disruption of Plaintiff's professional and personal life.

5. **Irreparable Injury Under *Elrod v. Burns***

As established in *Elrod v. Burns*, 427 U.S. 347 (1976), the loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury. Defendants' conduct, which suppressed Plaintiff's rights to free speech, petition, and public advocacy, resulted in harm that cannot be adequately remedied through monetary damages alone.

- o Irreparable Harm to First Amendment Rights:

  Defendants' suppression of Plaintiff's right to access and disseminate public

25

information resulted in an irreparable injury to his constitutional rights.

o   Lasting Impact on Advocacy Efforts:

The ongoing suppression of Plaintiff's ability to gather and share information

significantly impacted his role as a public advocate, creating a long-term chilling

effect that continues to undermine his ability to engage in public discourse.

6.  **Personal and Professional Impact**

Defendants' retaliatory and obstructive conduct caused Plaintiff to divert substantial time

and energy away from his family, business, and other professional interests. This

diversion of resources and time created substantial harm to Plaintiff's personal and

professional life, leading to strained relationships and loss of interest in activities he once

enjoyed.

o   Family and Personal Impact:

The ongoing legal battles and the need to defend his rights against arbitrary

government action created significant strain on Plaintiff's personal life,

undermining his ability to fully engage as a father and husband.

o   Professional and Business Harm:

Plaintiff's professional life was similarly disrupted, resulting in lost business

opportunities and a diminished capacity to engage in other professional endeavors

due to the overwhelming time investment required to pursue this litigation.

**7. Application to All Counts**

Each count of this complaint incorporates this Consolidated Damages Claim Section by

reference, as Defendants' conduct in each respective count resulted in emotional distress,

reputational harm, suppression of advocacy efforts, financial losses, and irreparable

injury as described above. This section serves as the central reference point for understanding the full scope of harm suffered by Plaintiff, ensuring clarity and comprehensiveness without redundant repetition of the damages narrative in each individual count.

# XIII.    CLAIMS FOR RELIEF

This section consolidates Plaintiff's individual causes of action, outlining each specific claim against the Defendants for violations of Plaintiff's constitutional and statutory rights. Each count references the facts and harm described in the preceding sections, as well as the legal bases for relief sought.

**COUNT I: 42 U.S.C. § 1983 – PRIOR RESTRAINT**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants unlawfully imposed a prior restraint on his First Amendment rights by restricting his access to election records, preventing him from inspecting and copying materials that were essential to his political advocacy. These restrictions were content-based and aimed at suppressing Plaintiff's speech and public oversight of election processes.

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Prior Restraint Claim**

- Restriction on Speech: There must be a government action or policy that restricts speech before it occurs.

- Content-Based: The restriction must be aimed at the content of the speech, rather than neutral or procedural.

- Lack of Judicial Review: The government must fail to provide timely judicial review to determine whether the restriction is permissible.

- Harm: Plaintiff must demonstrate harm from the restriction on speech.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 1-13, 15-16, 18, 21-25, 34-38, 41, 43-45, 50 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

- **County of Lancaster**

  o Official Capacity:

    ▪ The County imposed a prior restraint by enacting policies that prevented Plaintiff from obtaining public records to which he was statutorily entitled (see **Exhibit 09**), restricting Plaintiff's ability to engage in public oversight (see Paragraph 35).

    ▪ The restrictions were content-based, as they targeted information related to election errors and inconsistencies that Plaintiff sought to disseminate (see Paragraph 35).

- **Bender**

  o Official Capacity:

    ▪ Bender enforced the County's policy by preventing Plaintiff from photographing or copying election records, which constituted a prior restraint on Plaintiff's speech and public advocacy (see Paragraph 34).

  o Individual Capacity:

    ▪ In her individual capacity, Bender actively participated in imposing the prior restraint by denying Plaintiff the ability to disseminate critical election information (see Paragraph 34).

- **Pfursich**

  o Official Capacity:

- Pfursich directed and justified the restrictions on Plaintiff's access to records, claiming legal exemptions that did not apply, thereby imposing a content-based restraint (see Paragraph 34).

o Individual Capacity:

- Pfursich personally participated in the decision to deny Plaintiff access to records, enforcing the content-based restrictions aimed at preventing the dissemination of election-related information (see Paragraph 34).

## 4. Parsons, D'Agostino, and C. Miller

- Official Capacities:

  o These Defendants, in their official roles, ratified the restrictions that prevented Plaintiff from accessing election records, constituting a prior restraint on his ability to engage in public discourse (**see Paragraph 35**).

  o Their failure to provide Plaintiff with judicial review or recourse exacerbated the harm caused by the restriction (**see Paragraph 35**).

- Individual Capacities:

  o In their individual capacities, Parsons, D'Agostino, and C. Miller personally participated in the decision to enforce content-based restrictions that prevented Plaintiff from accessing and copying election records. These actions were aimed at suppressing Plaintiff's speech and political advocacy (see Paragraph 35).

  o By acting beyond the scope of their lawful authority, these Defendants played an active role in denying Plaintiff his First Amendment rights, directly

30

contributing to the unlawful prior restraint imposed on Plaintiff's access to information.

## G. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by imposing unlawful prior restraints on Plaintiff's speech and right to access public records. This unlawful conduct justifies suing Defendants in their individual capacities.

## H. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

## I. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## J. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**K. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

## COUNT II: 42 U.S.C. § 1983 – RETALIATION.

### A. Capacity References

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

### B. Summary of Count

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment rights,

including his right to free speech and his right to petition the government for redress.

Defendants' retaliatory conduct took the form of arbitrary denials of public records requests, dismissals of Plaintiff's petitions without addressing the merits, and the filing of baseless sanctions motions intended to suppress Plaintiff's advocacy.

## C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

## D. Elements of Retaliation Claim

- Protected Conduct: Plaintiff engaged in constitutionally protected speech or petitioning activity.

- Adverse Action by Government: Defendants took adverse actions against Plaintiff that would deter a person of ordinary firmness from continuing to engage in such protected activity.

- Causal Connection: The adverse action was motivated by Plaintiff's protected conduct.

## E. Restatement Clause

Paragraphs 4, 9, 11-13, 15-17, 20-25, 28-29, 34-37, 41-44, 45-50 of the Factual Allegations Section as if fully set forth herein.

## F. Unified Conduct and Elements by Defendant

- **County of Lancaster**

33

- The County engaged in a pattern of retaliatory conduct against Plaintiff by selectively denying access to public records essential to his advocacy, in violation of his rights (see Paragraph 34).

- The County also supported and participated in retaliatory actions by filing baseless sanctions motions aimed at financially burdening and intimidating Plaintiff for exercising his right to petition.

- The Defendants' actions, including the coordinated release of the 'Ex-Hopeful' article, were meant to harm Plaintiff's public reputation in retaliation for his efforts to seek transparency (See **Exhibit 05**).

- **Bender**
  - Official Capacity:
    - Bender retaliated against Plaintiff by enforcing the County's policies that denied him access to critical election records (see Paragraph 34).
  - Individual Capacity:
    - In her individual capacity, Bender actively participated in obstructing Plaintiff's efforts to obtain public records and supported the filing of a baseless sanctions motion as retaliation for Plaintiff's advocacy efforts (see Paragraph 34).

- **Pfursich**
  - Official Capacity:
    - Pfursich participated in the retaliatory conduct by upholding the arbitrary denials of records requests and misrepresenting the legal justifications for these denials (see Paragraph 34).

- o  Individual Capacity:

    - ▪  Pfursich's personal involvement in denying access to public records was motivated by a desire to suppress Plaintiff's political advocacy and was further compounded by her support of the sanctions motion (see Paragraph 34).

- **Parsons, D'Agostino, and C. Miller**

    - o  Official Capacities:

        - ▪  These Defendants ratified the County's retaliatory policies and supported the filing of the sanctions motion in an attempt to deter Plaintiff's advocacy (see Paragraph 35).

    - o  Individual Capacities:

        - ▪  Each acted beyond the scope of their lawful authority by engaging in retaliatory practices, including supporting the sanctions motion, demonstrating clear intent to suppress Plaintiff's advocacy efforts.

        - ▪  C. Miller misrepresented Plaintiff and his requests in a front page article of the local newspaper. (see **Exhibit 05**)

**G. Retaliatory Sanctions Motion**

On May 8, 2024, Defendants Parsons, D'Agostino, and Pfursich, in both their individual and official capacities, filed a retaliatory sanctions motion against Plaintiff seeking $30,000, alleging Plaintiff failed to withdraw his lawsuit by May 7, 2024. The motion for sanctions was filed to intimidate and financially burden Plaintiff in response to his lawful petitioning efforts.

**H. Ultra Vires Statement**

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by retaliating against Plaintiff for exercising his First Amendment rights, including filing the sanctions motion. This unlawful conduct justifies suing Defendants in their individual capacities.

**I. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**J. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**K. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**L. Relief Sought**

Plaintiff seeks:

36

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages (where applicable)

- Such other relief as the Court deems just and proper.

## COUNT III: RIGHT TO PETITION

### A. Capacity References

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

### B. Summary of Count

Plaintiff alleges that Defendants violated his First Amendment right to petition the government for redress by systematically denying his access to public records, dismissing his complaints and petitions on procedural grounds (such as 12(b)(6) and 12(b)(1)) without addressing their merits, and retaliating against his efforts to expose reported election results. For every right, there must be a remedy. *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60, 2 L. Ed. 2d 60 (1803). The court's failure to provide a remedy violates Plaintiff's right to petition for redress.

37

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to

redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue

is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to

this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Right to Petition Claim**

1. Exercise of the Right to Petition:

    Plaintiff engaged in constitutionally protected petitioning activity, including filing his

    HAVA complaint and RTKL requests.

2. Adverse Action by Government:

    Defendants took adverse actions in response to Plaintiff's petitions by dismissing them

    without redress, delaying rulings, denying records requests, and retaliating through

    sanctions motions. These actions would deter a person of ordinary firmness from

    continuing to engage in such activity.

3. Causal Connection:

    The adverse actions were motivated by Plaintiff's petitioning activity, demonstrating

    Defendants' intent to suppress Plaintiff's efforts for election transparency.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 11-13, 15, 16, 20-25, 27-

29, 34, 42-45, 46-50 of the Factual Allegations Section as if fully set forth herein

**F. Unified Conduct and Elements by Defendant**

- **County of Lancaster**
  - o Official Capacity:

    The County systematically obstructed Plaintiff's right to petition by denying his

    HAVA complaint, dismissing his petitions for public records access, and failing

    to address the merits of his claims (see Paragraphs 34-35). The County's refusal

    to respond to Plaintiff's petitions and its participation in retaliatory conduct

    directly obstructed his ability to seek redress.

- **Bender**
  - o Official Capacity:

    Bender denied Plaintiff's access to critical public records necessary for petitioning

    for election transparency (see Paragraph 34).

  - o Individual Capacity:

    In her individual capacity, Bender participated in obstructing Plaintiff's efforts to

    petition for access to election records, contributing to the systemic denial of his

    rights (see Paragraph 34).

- **Pfursich**
  - o Official Capacity:

    Pfursich advised and directed the denial of Plaintiff's petitions, further

    suppressing his right to seek redress (see Paragraph 34).

  - o Individual Capacity:

    Pfursich's personal involvement in the denial of Plaintiff's right to petition was

    aimed at suppressing his efforts for election transparency (see Paragraph 34).

- **Parsons, D'Agostino, and C. Miller**

- o   Official Capacities:

    These Defendants ratified the County's denials and dismissals of Plaintiff's

    petitions, suppressing his right to petition the government for redress (see

    Paragraph 35).

- o   Individual Capacities:

    Each acted beyond the scope of their lawful authority by engaging in practices

    that suppressed Plaintiff's right to petition for election transparency (see

    Paragraph 35).

## G. HAVA Violations

Plaintiff's efforts to seek redress through his HAVA complaint were met with systemic

obstruction. The County's mishandling of absentee ballots and its refusal to allow Plaintiff to

challenge these irregularities led to the denial of his HAVA petition. This denial without proper

recourse illustrates the County's broader effort to suppress Plaintiff's right to petition for

transparency in election processes.

## H. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful

authority by unlawfully obstructing Plaintiff's right to petition the government. This unlawful

conduct justifies suing Defendants in their individual capacities.

## I. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their

respective capacities as officers, employees, or agents of the County. Each Defendant's conduct

constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**J. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**K. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**L. Relief Sought**

Plaintiff seeks:

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages (where applicable)

- Such other relief as the Court deems just and proper.

## COUNT IV: 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS

### A. Capacity References

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

### B. Summary of Count

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to procedural due process by systematically denying him access to public records, obstructing his attempts to obtain transparency regarding election processes, and dismissing his petitions without providing any meaningful review. Defendants further violated Plaintiff's due process rights by engaging in protracted delays and failing to afford Plaintiff proper notice and an opportunity to be heard.

### C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

### D. Elements of Procedural Due Process Claim

42

- Deprivation of a Protected Interest: Plaintiff must demonstrate that he was deprived of a protected property or liberty interest.

- Lack of Adequate Procedures: The government failed to provide adequate procedural protections, such as notice and an opportunity to be heard, before depriving Plaintiff of that interest.

- Harm: Plaintiff must show that the lack of procedural safeguards resulted in harm.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 12, 14, 15, 19, 22, 26, 31, 34, 38, 40, 46-53 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

- **County of Lancaster**

  - The County deprived Plaintiff of his procedural due process rights by failing to provide him with timely access to public records and by obstructing his ability to challenge irregularities in election processes. The County denied Plaintiff's requests without providing adequate notice, justification, or an opportunity to be heard (see Paragraphs 34-35).

- **Bender**

  - Official Capacity:

    - Bender participated in the County's failure to provide Plaintiff with meaningful procedural safeguards by enforcing policies that obstructed access to critical election records (see Paragraph 34).

  - Individual Capacity:

- In her individual capacity, Bender was personally involved in the denial of Plaintiff's procedural rights, contributing to the deprivation of access and opportunity to challenge these denials (see Paragraph 34). (see **Exhibit 02**)

- **Pfursich**

    - Official Capacity:

        - Pfursich directed and supported the denial of Plaintiff's procedural due process rights by upholding arbitrary denials of access to public records and failing to provide adequate procedural protections (see Paragraph 34).

    - Individual Capacity:

        - Pfursich personally contributed to the deprivation of Plaintiff's procedural rights by obstructing access to public records and disregarding Plaintiff's right to a fair hearing (see Paragraph 34). (see **Exhibit 02**)

- **Parsons, D'Agostino, and C. Miller**

    - Official Capacities:

        - These Defendants ratified and endorsed the County's denial of Plaintiff's procedural due process rights by obstructing his efforts to obtain a fair hearing on his records requests and petitions (see Paragraph 35).

    - Individual Capacities:

        - Each acted beyond the scope of their lawful authority by contributing to the failure to provide Plaintiff with adequate procedural protections and ensuring the denial of his procedural rights (see Paragraph 35).

### G. HAVA and Procedural Denials

Plaintiff's HAVA complaint was dismissed without meaningful review, and his attempts to challenge election irregularities were systematically denied without proper procedural safeguards. Defendants failed to provide Plaintiff with adequate notice or the opportunity to be heard regarding these significant issues, resulting in the violation of Plaintiff's due process rights.

### H. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by denying Plaintiff's procedural due process rights without providing adequate procedural safeguards. This unlawful conduct justifies suing Defendants in their individual capacities.

### I. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

### J. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**K. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**L. Relief Sought**

Plaintiff seeks:

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages (where applicable)

- Such other relief as the Court deems just and proper.

**COUNT V: 42 U.S.C. § 1983 – EQUAL PROTECTION VIOLATION (DISPARATE ACCESS TO ELECTION RECORDS)**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster

- Bender

- Pfursich

- Parsons

- D'Agostino

- C. Miller

## B. Summary of Count

Plaintiff alleges that Defendants violated his Fourteenth Amendment equal protection rights by providing other requesters with access to election records while denying Plaintiff access, thereby treating him differently from other similarly situated individuals. This disparate access to election records was arbitrary, unjustified, and aimed at suppressing Plaintiff's political advocacy.

## C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

## D. Elements of Equal Protection Claim

1. Different Treatment: Plaintiff must show that they were treated differently than others similarly situated.

2. Intentional or Purposeful Discrimination: Plaintiff must show that the disparate treatment was the result of intentional or purposeful discrimination.

3. No Legitimate Justification: The government's disparate treatment of Plaintiff must lack a rational or legitimate justification.

## E. Restatement Clause

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 15, 16, 19, 21-22, 31, 34, 36, 39, 46-50 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

1. **County of Lancaster**

   ▪ County, through its officials, treated Plaintiff differently from other similarly situated individuals by selectively denying access to election records (see **Paragraph 35**).

   ▪ The disparate access to public records was aimed at suppressing Plaintiff's political advocacy, and the treatment lacked any legitimate or rational justification (see **Paragraph 35**).

2. **Bender**

   o Official Capacity**:**

   ▪ Bender participated in the denial of Plaintiff's access to election records, enforcing restrictions that were not applied equally to other requesters (see Paragraph 34).

   ▪ Bender's actions were designed to suppress Plaintiff's advocacy, resulting in a discriminatory and unequal application of the law (see Paragraph 34).

   o Individual Capacity:

   ▪ In her individual capacity, Bender engaged in discriminatory actions by selectively denying Plaintiff access to records, treating him differently from other requesters (see Paragraph 34).

3. **Pfursich**

   o Official Capacity**:**

- Pfursich advised and directed the denial of Plaintiff's access to election records, treating him differently from others who were similarly situated (see **Paragraph 34**).

- The denial of access was motivated by a desire to suppress Plaintiff's advocacy, and there was no legitimate basis for the unequal treatment (see **Paragraph 34**).

o Individual Capacity**:**

- Pfursich, in her individual capacity, actively participated in the disparate treatment of Plaintiff by advising others to deny his requests while providing access to other requesters (see **Paragraph 34**).

**Parsons, D'Agostino, and C. Miller**

o Official Capacities:

- These Defendants, in their official roles, ratified the disparate treatment of Plaintiff by endorsing and enforcing policies that selectively denied Plaintiff access to election records while allowing others to inspect them **(see Paragraph 35)**.

- Their actions were intended to suppress Plaintiff's political advocacy and lacked any legitimate justification for the unequal treatment (see **Paragraph 35**).

o Individual Capacities:

- In their individual capacities, Parsons, D'Agostino, and C. Miller personally participated in and approved the arbitrary enforcement of legal

standards to deny Plaintiff access to records. Each Defendant knowingly

contributed to the unequal treatment by taking actions aimed at depriving

Plaintiff of his rights, beyond their lawful authority (see Paragraph 35).

- Their direct involvement in this discriminatory treatment was intended to

  suppress Plaintiff's political advocacy and to prevent him from obtaining

  records that could reveal election irregularities.

## G. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's

*Monell* liability for official policies and supervisory defendants' liability for their direct

involvement in and ratification of the unlawful actions.

## H. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section**,** which

comprehensively describes the harm Plaintiff has experienced due to Defendants' actions,

including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury under *Elrod v. Burns*.

## I. Relief Sought

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Fees and Costs under 42 U.S.C. § 1988

6.  Such other relief as the Court deems just and proper.

## COUNT VI: EQUAL PROTECTION VIOLATION (DISPARATE ACCESS TO JUDICIAL REVIEW UNDER THE PENNSYLVANIA RIGHT-TO-KNOW LAW)

### A. Capacity References

This Count is asserted against:

- **County of Lancaster** (Official Capacity)

- **Tammy Bender** (in her Individual and Official Capacities)

- **Jacqueline Pfursich** (in her Individual and Official Capacities)

- **Joshua Parsons** (in his Individual and Official Capacities)

- **Ray D'Agostino** (in his Individual and Official Capacities)

### B. Introduction

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to equal protection by enforcing the Pennsylvania Right-to-Know Law (RTKL) in a manner that subjected Plaintiff to a more burdensome judicial review process under Section 1302, while others received direct review under Section 1301. This selective enforcement created two classes of requestors, lacked a legitimate governmental purpose, and was designed to obstruct Plaintiff's access to records.

### C. Restatement of Facts

Plaintiff incorporates by reference Paragraphs 16, 19, 21-24, 28, 31, 34, and 46-53 of the Factual Allegations Section as if fully set forth herein.

### D. Specific Conduct of Defendants

1.  **County of Lancaster**

51

- o **Official Capacity**: The County, through its officials, created and enforced a policy that required Plaintiff, unlike other requestors, to file a mandamus action under Section 1302, subjecting him to a more burdensome process of judicial review (see Paragraph 35).

2. **Tammy Bender**

    - o Official Capacity: Bender enforced the policy that subjected Plaintiff to mandamus actions while allowing other requestors direct access to judicial review (see Paragraph 34).

    - o Individual Capacity: Bender, in her individual capacity, participated in the selective enforcement and knowingly subjected Plaintiff to a more burdensome process of judicial review (see Paragraph 34).

3. **Jacqueline Pfursich**

    - o Official Capacity: Pfursich advised County officials to enforce the selective judicial review policy against Plaintiff, further obstructing his access to records (see Paragraph 34).

    - o Individual Capacity: In her individual capacity, Pfursich participated in advising and enforcing the unequal treatment of Plaintiff, subjecting him to unnecessary legal burdens (see Paragraph 34).

4. **Joshua Parsons**

    - o Official Capacity: Parsons ratified the County's actions that subjected Plaintiff to a more burdensome judicial review process (see Paragraph 35).

    - o Individual Capacity: Parsons personally endorsed and supported the policy of selective enforcement against Plaintiff, knowingly subjecting him to additional

legal obstacles (see Paragraph 35).

5. **Ray D'Agostino**

  o  Official Capacity: D'Agostino approved the County's disparate enforcement policies, subjecting Plaintiff to the more burdensome judicial process (see Paragraph 35).

  o  Individual Capacity: D'Agostino participated in the decision to subject Plaintiff to a more burdensome judicial review process, enforcing the disparate treatment in his individual capacity (see Paragraph 35).

**E. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**F. Legal Elements and Supporting Facts**

1. **Arbitrary Classification**:

   Defendants created two distinct classes of RTKL requestors:

   o  Class 1: Section 1301 requestors who received direct judicial review.

   o  Class 2: Section 1302 requestors, like Plaintiff, who were subjected to the more burdensome process of mandamus actions.

2. **No Legitimate Purpose**:

   There is no stated legislative purpose in the RTKL to subject certain requestors to mandamus actions. Defendants' enforcement of these provisions against Plaintiff lacked any legitimate governmental justification.

3. **Harm Resulting from Unequal Treatment**:

   The arbitrary classification subjected Plaintiff to unnecessary legal costs, delays, and procedural obstacles, causing significant harm, including financial losses, reputational damage, and suppression of his advocacy efforts.

## G. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by selectively enforcing RTKL provisions to place Plaintiff into a more burdensome judicial process. This unlawful conduct justifies suing Defendants in their individual capacities.

## H. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## I. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

## J. Relief Sought

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5.  Such other relief as the Court deems just and proper.

## COUNT VII: PENNSYLVANIA CONSTITUTION VIOLATION – FREE SPEECH & RIGHT TO PETITION
### A. Capacity References

This Count is asserted against:

1.  County of Lancaster (Official Capacity)

2.  Tammy Bender (in her Individual and Official Capacities)

3.  Jacqueline Pfursich (in her Individual and Official Capacities)

4.  Joshua Parsons (in his Individual and Official Capacities)

5.  Ray D'Agostino (in his Individual and Official Capacities)

6.  Christa Miller (in her Individual and Official Capacities)

### B. Introduction

Plaintiff alleges that Defendants violated his rights under Article I, Section 7 (Free Speech) and Article I, Section 20 (Right to Petition) of the Pennsylvania Constitution. Defendants suppressed Plaintiff's speech and retaliated against him for exercising his right to petition the government for redress. Defendants obstructed Plaintiff's efforts to advocate for election transparency and to seek legal redress, violating both state constitutional protections.

### C. Restatement of Facts

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 15, 19, 21-23, 27, 31, 34, 36, and 46-53 of the Factual Allegations Section as if fully set forth herein.

### D. Specific Conduct of Defendants

1.  **County of Lancaster**

    o  County officials obstructed Plaintiff's right to free speech and petition by

55

implementing policies that suppressed Plaintiff's access to and dissemination of
public records concerning election irregularities (¶31, ¶34).

2. **Tammy Bender**

   o   Official Capacity: Bender imposed restrictions that blocked Plaintiff's access to
       public records, suppressing his ability to advocate for election transparency (¶34,
       ¶43).

   o   Individual Capacity: Bender actively participated in restricting Plaintiff's access
       to records, preventing him from exercising his free speech and right to petition
       (¶34, ¶43).

3. **Jacqueline Pfursich**

   o   Official Capacity: Pfursich directed Bender to impose restrictions, obstructing
       Plaintiff's right to inspect records and engage in public advocacy for transparency
       (¶31, ¶43).

   o   Individual Capacity: Pfursich knowingly participated in obstructing Plaintiff's
       access to records and suppressing his public advocacy (¶31, ¶43).

4. **Christa Miller**

   o   Official Capacity: C. Miller provided false justifications for denying Plaintiff
       access to records, suppressing his ability to engage in public advocacy (¶27, ¶29).

5. **Joshua Parsons and Ray D'Agostino**

   o   Official Capacities: Parsons and D'Agostino ratified the policies obstructing
       Plaintiff's right to access public records and advocate for transparency during the
       October 12, 2022, board meeting (¶36, ¶43).

**E. Elements of the Claim**

1. **Free Speech**

   o   Article I, Section 7 of the Pennsylvania Constitution: Protects Plaintiff's right to
       free speech, including the ability to access public records and advocate for
       transparency in the electoral process (¶13, ¶19, ¶31).

2. **Right to Petition**

   o   Article I, Section 20 of the Pennsylvania Constitution: Guarantees Plaintiff's right
       to petition the government for redress, including his efforts to seek accountability
       through advocacy and legal action (¶31, ¶34).

3. **Violation by Government Action**

   o   Defendants' Actions: Defendants, acting under color of state law, suppressed
       Plaintiff's rights by obstructing his access to public records and preventing him
       from disseminating critical election information (¶34, ¶43).

## F. Ultra Vires Statement

Although Defendants acted in their official capacities, their actions exceeded their lawful
authority by suppressing Plaintiff's free speech and right to petition. Defendants' unlawful
conduct justifies suing them in their individual capacities.

## G. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their
respective capacities as officers, employees, or agents of the County. Each Defendant's conduct
constitutes state action and is actionable under Pennsylvania state law for violating Plaintiff's
constitutional rights.

## H. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's

Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**I. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**J. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT VIII: PENNSYLVANIA CONSTITUTION VIOLATION – FREE AND FAIR ELECTION**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Tammy Bender (in her Individual and Official Capacities)

- Jacqueline Pfursich (in her Individual and Official Capacities)

- Joshua Parsons (in his Individual and Official Capacities)

- Ray D'Agostino (in his Individual and Official Capacities)

- Christa Miller (in her Individual and Official Capacities)

## B. Introduction

Plaintiff alleges that Defendants violated Article I, Section 5 of the Pennsylvania Constitution, which guarantees the right to free and fair elections. By mishandling absentee ballots, obstructing Plaintiff's access to critical election records, and failing to provide voters with opportunities to verify and correct their ballots, Defendants compromised the transparency and fairness of the May 2022 election. This misconduct deprived Plaintiff of a fair election process and undermined his ability to seek redress.

## C. Restatement of Facts

Plaintiff incorporates by reference the factual allegations in Paragraphs 3-7, 14, 16, 19, 22, 24, 29, 31, 34, 36, 46-53 of the Factual Allegations Section as if fully set forth herein.

## D. Specific Conduct of Defendants

1. **County of Lancaster**

   o Official Capacity: County officials failed to ensure transparency by obstructing access to public voting records and mishandling absentee ballots, including re-marking ballots without providing voters the opportunity to verify or correct their selections (¶31, ¶34, ¶36).

2. **Tammy Bender**

   o Official Capacity: Bender participated in obstructing Plaintiff's access to election records and took part in the re-marking process for absentee ballots without voter verification (¶34, ¶43).

   o Individual Capacity: Bender directly participated in obstructing Plaintiff's access

to election records and mishandling absentee ballots, violating Plaintiff's right to a free and fair election.

3. **Jacqueline Pfursich**

   o Official Capacity: Pfursich directed other officials to obstruct Plaintiff's access to records and supervised the re-marking process that did not allow voters to verify their ballots (¶31, ¶43).

   o Individual Capacity: Pfursich advised and directed unlawful restrictions on Plaintiff's access to records, contributing to the mismanagement of absentee ballots.

4. **Christa Miller**

   o Official Capacity: C. Miller provided false justifications for denying Plaintiff access to records and oversaw the absentee ballot re-marking process without providing voter verification (¶27, ¶29).

   o Individual Capacity: C. Miller personally participated in denying Plaintiff access to records and played a role in the improper re-marking of absentee ballots.

5. **Joshua Parsons and Ray D'Agostino**

   o Official Capacities: Parsons and D'Agostino ratified policies that obstructed Plaintiff's access to records and oversaw the re-marking of absentee ballots, compromising the election process (¶36, ¶43).

   o Individual Capacities: Both Parsons and D'Agostino actively participated in obstructing Plaintiff's access to election records and mishandling absentee ballots, contributing to the violations of Plaintiff's right to a fair election.

**E. Integration of HAVA Violations**

Defendants' mishandling of absentee ballots violated HAVA (52 U.S.C. § 21081), which sets federal standards for voting transparency and fairness. The County's re-marking process exceeded allowable error rates, failed to provide voters the opportunity to verify their votes, and did not produce an auditable record, directly violating HAVA's standards and Pennsylvania's constitutional right to a fair election.

## F. Ultra Vires Statement

Although Defendants acted in their official capacities, they exceeded their lawful authority under HAVA and Pennsylvania law. As County officials, their failure to comply with HAVA and their mismanagement of absentee ballots violated both federal and state election standards. This justifies suing Defendants in their individual capacities.

## G. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under Pennsylvania state law for violating Plaintiff's constitutional rights.

## H. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## I. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury under *Elrod v. Burns*.

**J. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

## COUNT IX: CONSPIRACY (42 U.S.C. § 1983)

### A. Capacity References

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Tammy Bender (in her Individual and Official Capacities)

- Jacqueline Pfursich (in her Individual and Official Capacities)

- Joshua Parsons (in his Individual and Official Capacities)

- Ray D'Agostino (in his Individual and Official Capacities)

- Christa Miller (in her Individual and Official Capacities)

### B. Summary of Count

Plaintiff alleges that Defendants conspired to deprive him of constitutional rights under the First and Fourteenth Amendments, including free speech, petition, due process, and equal protection.

Defendants coordinated to obstruct Plaintiff's access to public records, deny transparency, and retaliate against him for exercising his rights. Their coordinated efforts are evident from discussions at the October 12, 2022 Board Meeting and D'Agostino's October 18, 2022 letter, aimed at suppressing Plaintiff's ability to challenge election irregularities.

## C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks redress for the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

## D. Elements of Conspiracy Claim

1. Agreement to Deprive Plaintiff of Constitutional Rights: There must be an agreement between two or more persons to deprive Plaintiff of his constitutional rights.

2. Actions in Furtherance of the Conspiracy: Defendants must have engaged in overt acts in furtherance of the conspiracy.

3. Deprivation of Constitutional Rights: As a result of the conspiracy, Plaintiff must have been deprived of constitutional rights, including free speech, the right to petition, due process, or equal protection.

## E. Restatement of Facts

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 15-17, 19, 21-23, 27, 31, 34, 36, 46-53 of the Factual Allegations Section as if fully set forth herein.

## F. Specific Conduct of Defendants

1. **County of Lancaster**:

   o County officials engaged in an agreement to deprive Plaintiff of his rights by

coordinating efforts to deny access to public records and suppress Plaintiff's advocacy (¶35).

- County officials carried out overt acts, including issuing policies and orders to block Plaintiff's access to essential election records, resulting in the deprivation of Plaintiff's constitutional rights (¶35).

2. **Tammy Bender**:

- Official Capacity: Bender participated in the conspiracy by enforcing policies that denied Plaintiff access to public records and suppressed his advocacy, carrying out overt acts in furtherance of the conspiracy (¶34).

- Individual Capacity: Bender personally acted in concert with others to deprive Plaintiff of his First and Fourteenth Amendment rights by arbitrarily denying his access to public records and advancing the conspiracy's objectives (¶34).

3. **Jacqueline Pfursich**:

- **Official Capacity**: Pfursich advised and directed the denial of Plaintiff's access to election records and public information, furthering the conspiracy by issuing legal justifications to suppress Plaintiff's advocacy (¶34).

- **Individual Capacity**: Pfursich actively participated in the conspiracy by advising others and taking actions designed to prevent Plaintiff from exercising his rights, including drafting letters and legal memoranda to support the conspiracy's objectives (¶34).

4. **Joshua Parsons, Ray D'Agostino, and Christa Miller**:

- Official Capacities: Parsons, D'Agostino, and C. Miller ratified the conspiracy by approving policies and actions that blocked Plaintiff's access to records and

64

suppressed his political advocacy, committing overt acts to further the conspiracy's goals (¶35).

  o  Individual Capacities: Parsons, D'Agostino, and C. Miller personally acted in concert with others, including issuing directives and policies that obstructed Plaintiff's ability to obtain public records and disseminate information about election irregularities, contributing to the conspiracy's success (¶35).

## G. Ultra Vires Statement

Although Defendants acted in their official capacities, they exceeded their lawful authority by conspiring to deprive Plaintiff of his constitutional rights. This unlawful conduct justifies suing Defendants in their individual capacities.

## H. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for conspiring to violate Plaintiff's constitutional rights.

## I. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## J. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury under *Elrod v. Burns*.

**K. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT X: VIOLATION OF THE HELP AMERICA VOTE ACT (HAVA)**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants violated the Help America Vote Act (HAVA) by mishandling

absentee ballots during the 2021, 2022, and 2023 election cycles. Specifically, Defendants'

remarking process violated HAVA standards by failing to provide voters with ballots containing

Plaintiff's race, preventing voters from verifying their ballots, and denying them the opportunity

to correct any errors before the ballots were counted. During the January 9, 2023, hearing before

Acting Secretary of State Al Schmidt, testimony from Defendant Christa Miller confirmed that

Parsons, Pfursich, and D'Agostino were directly involved in the remarking process. The

Pennsylvania Department of State's dismissal of Plaintiff's HAVA complaint further

demonstrates Defendants' pattern of disregard for federal election law (see Exhibits 01 and 06).

## C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks to redress

violations of HAVA, a federal law. Venue is proper under 28 U.S.C. § 1391(b) because

Defendants reside in and the events giving rise to this claim occurred in the Eastern District of

Pennsylvania.

## D. Elements of HAVA Violation

1. Failure to Permit Voter Verification (52 U.S.C. § 21081(a)(1)(A)(i)):

    o Defendants replaced approximately 14,000 absentee ballots without allowing
    voters to verify their vote selections before the ballots were cast and counted,
    violating HAVA's voter protection standards.

2. Failure to Allow Opportunity for Correction (52 U.S.C. § 21081(a)(1)(A)(ii)):

    o Defendants denied voters the opportunity to correct any errors before their ballots
    were cast and counted. The remarking process prevented voters from reviewing
    and correcting their ballots.

3. Failure to Provide Notice of Over-Voting (52 U.S.C. § 21081(a)(1)(A)(iii)):

    o Defendants failed to notify voters of over-votes and did not provide an
    opportunity to correct these mistakes before their ballots were counted.

4. Failure to Produce an Audit Trail (52 U.S.C. § 21081(a)(2)):

      o  Defendants failed to produce a permanent, auditable paper record for absentee ballots, violating HAVA's requirement for election auditability.

5.  Exceeding the FEC Error Rate Standard (52 U.S.C. § 21081(a)(5)):

      o  The error rate associated with the remarking of absentee ballots exceeded the FEC's allowable error rate of one in 10,000,000 ballot positions, violating HAVA's error rate requirements.

## E. Restatement Clause

Plaintiff incorporates by reference Paragraphs 3 through 9 of the Factual Allegations Section, detailing how Defendants failed to meet HAVA standards in handling absentee ballots, including misprints, disenfranchisement, and illegal ballot replacements during the remarking process.

## F. Unified Conduct and Elements by Defendant

1.  **County of Lancaster**:

      o  County violated HAVA by implementing policies that resulted in the replacement of absentee ballots without giving voters the opportunity to verify or correct their selections (see **Exhibit 01**).

2.  **Jacqueline Pfursich**:

      o  Official Capacity: Pfursich directed the ballot replacement procedures, denying voters verification of their ballots, thereby violating HAVA's safeguards (**see Exhibit 01**).

      o  Individual Capacity: In her individual capacity, Pfursich advised Defendants Parsons, D'Agostino, and C. Miller to implement procedures that unlawfully denied voters their rights under HAVA (See **Exhibit 08**).

3.  **Joshua Parsons, Ray D'Agostino, and Christa Miller**:

- o Official Capacities: These Defendants approved and implemented the illegal remarking process for absentee ballots, denying voters the right to verify and correct their ballots before they were cast. (see **Exhibit 01**)

- o Individual Capacities: In their individual capacities, Parsons, D'Agostino, and C. Miller actively participated in implementing the replacement of ballots. Testimony from Defendant C. Miller during the January 9, 2023, hearing highlights her role and references to Parsons, Pfursich, and D'Agostino as decision-makers (see **Exhibit 08**).

## G. Ultra Vires Clause

While some of Defendants' actions were taken in their official capacities, many exceeded their lawful authority. These ultra vires actions justify suing Defendants in their individual capacities.

## H. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## I. Legal Elements and Supporting Facts

1. Violation of 52 U.S.C. § 21081(a)(1)(A)(i):

   - o Defendants violated HAVA's requirement by replacing absentee ballots without allowing voters to verify their selections before they were counted.

2. Violation of 52 U.S.C. § 21081(a)(1)(A)(ii):

   - o Defendants failed to offer voters the opportunity to correct errors on their ballots before they were processed.

3. Violation of 52 U.S.C. § 21081(a)(1)(A)(iii):

69

  - ○ Defendants failed to notify voters of over-votes and provide an opportunity for correction.

4. Violation of 52 U.S.C. § 21081(a)(2):

  - ○ Defendants did not produce a permanent, auditable paper record for absentee ballots, violating HAVA's auditability requirement.

5. Violation of 52 U.S.C. § 21081(a)(5):

  - ○ The error rate in the replacement of absentee ballots exceeded HAVA's allowable error rate standard.

**J. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury.

**K. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

## COUNT XI: MONELL LIABILITY

### A. Capacity References

This Count is asserted against County of Lancaster for constitutional violations under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*. Plaintiff alleges that the deprivation of his rights resulted from County's official policies, customs, and practices, which were the moving force behind the constitutional violations described in this complaint.

### B. Summary of Count

Plaintiff alleges that County of Lancaster is liable under *Monell* because its official policies, customs, and failure to supervise employees led to the deprivation of Plaintiff's constitutional rights. These violations include obstruction of access to public records, suppression of advocacy efforts, and unlawful actions regarding the administration of absentee ballots during federal elections. The County's failure to follow federal law, including HAVA, and its reliance on pretextual legal justifications to block public access, violated Plaintiff's rights under the First and Fourteenth Amendments.

### C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks to redress violations of his constitutional rights under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendant County of Lancaster resides in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

### D. Elements of Monell Claim

1. Existence of a Policy or Custom: Plaintiff must show that a municipal policy or custom caused the constitutional violation.

2. Causation: The policy or custom must be the moving force behind the constitutional violation.

3. Failure to Train or Supervise: Plaintiff must show that the County's failure to adequately train or supervise employees led to the constitutional violation.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 16, 19, 22, 23, 26, 34, 36, 46-53 of the Factual Allegations Section as if fully set forth herein.

**F. Specific Conduct of the County**

1. **Policy or Custom of Obstruction**:

   County maintained a policy or custom of obstructing public access to records, especially election-related records. This obstruction served to suppress unfavorable information, preventing Plaintiff from engaging in public advocacy and undermining his constitutional rights to free speech and petition (see Paragraphs 31, 34, and 43).

2. **Failure to Supervise and Train**:

   County failed to adequately train and supervise its employees, particularly Defendants Bender, Pfursich, Parsons, and D'Agostino, regarding compliance with public records laws and HAVA standards. This failure to provide proper training led to the unlawful obstruction of Plaintiff's access to critical election records (see Paragraphs 31 and 34).

3. **Failure to Execute Federal Law**:

   County officials, administering a federal election, were required to follow federal law under the Help America Vote Act (HAVA). The County's failure to allow voters to verify and correct their absentee ballots before they were counted violated federal election law and contributed to the constitutional violations suffered by Plaintiff. As administrators of a federal election, County officials were also required to faithfully execute these laws under the Take Care Clause of the U.S. Constitution, but failed to do

72

so (see Paragraphs 31 and 35).

4. **Pretextual Legal Justifications**:

County officials used pretextual legal arguments, such as 25 P.S. § 2648, to deny Plaintiff

access to public voting records while granting the same records to others, including

election vendors. These pretexts were part of a broader policy of suppression and

discrimination that targeted Plaintiff and his efforts to ensure election transparency (see

Paragraphs 31 and 34).

**G. Ultra Vires and Take Care Clause Violation**

Although many of Defendants' actions were taken under the guise of official policies, County

officials exceeded their lawful authority under Title 53, Section 2962 of the Pennsylvania

Consolidated Statutes by mishandling election procedures and failing to comply with federal

law. Their actions also violated their duty under the Take Care Clause of the U.S. Constitution to

faithfully execute federal election law, including HAVA, which further supports Plaintiff's

claims for Monell liability.

**H. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which

comprehensively describes the harm Plaintiff has experienced due to Defendants' actions,

including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury.

**I. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages

5. Such other relief as the Court deems just and proper.

## COUNT XII: ABUSE OF PROCESS
### A. Capacity References

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

### B. Summary of Count

Plaintiff alleges that Defendants abused legal processes, including public records requests and litigation, to delay, coerce, and obstruct Plaintiff's rights. Defendants used legal mechanisms not for their intended purposes but to harass and burden Plaintiff, including by pursuing a sanctions motion and invoking pretextual legal justifications for denying access to election records.

Defendants' refusal to grant access to public election records is inconsistent with the ruling in *Previte v. Erie County Board of Elections*, where the court affirmed that such records must be accessible (See **Exhibit 07**).

### C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

### D. Elements of Abuse of Process Claim

1. Legal Process Used Improperly: Defendants must have used legal process for an illegitimate purpose.

2. Improper Motive: Defendants must have had an improper motive or objective unrelated to the legal process itself.

3. Harm to Plaintiff: The improper use of legal process must have harmed the Plaintiff.

### E. Restatement Clause

Plaintiff incorporates by reference the factual allegations in Paragraphs 15–17, 19, 21–23, 27, 31, 34, 36, and 41–43 of the Factual Allegations Section as if fully set forth herein.

### F. Unified Conduct and Elements by Defendant

1. **County of Lancaster**

   o County officials, through the County's policies and practices, pursued legal processes like a sanctions motion to intimidate and coerce Plaintiff into withdrawing his legal actions (see Paragraphs 35, 36).

2. **Tammy Bender**

   o Official Capacity: Bender manipulated public records requests, providing pretextual denials to frustrate Plaintiff's access to public information (see Paragraph 34).

   o Individual Capacity: In her individual capacity, Bender knowingly enforced

policies aimed at obstructing Plaintiff's access to critical records, beyond her lawful authority (see Paragraph 34).

3. **Jacqueline Pfursich**

   o   Official Capacity: Pfursich issued and directed legal justifications used to obstruct Plaintiff's access to records, misapplying laws such as 25 P.S. § 2648 (see Paragraph 34).

   o   Individual Capacity: Pfursich, in her individual capacity, actively participated in abuse of the process by directing arbitrary denials and misapplications of legal processes (see Paragraph 34).

4. **Joshua Parsons and Ray D'Agostino**

   o   Official Capacities: These Defendants ratified and supported the County's abuse of process, including filing motions aimed at coercing Plaintiff into dropping his legal actions (see Paragraph 35).

   o   Individual Capacities: Parsons and D'Agostino participated individually in the decision to pursue a sanctions motion and other legal actions meant to coerce Plaintiff rather than serve a legitimate legal purpose (see Paragraph 35).

5. **Christa Miller**

   o   Official Capacity: C. Miller, in her role as Chief Registrar, provided misleading information during the HAVA hearing to support the County's abuse of process, obstructing Plaintiff's access to records (see Paragraph 27).

   o   Individual Capacity: In her individual capacity, C. Miller knowingly participated in the abuse of legal mechanisms, including falsely testifying to support the County's position in denying records to Plaintiff (see Paragraph 27). (See Exhibit

04).

## G. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County of Lancaster. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983.

## H. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## I. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

## J. Relief Sought

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

# XIV.   <u>CONSOLIDATED RELIEF SECTION</u>

Plaintiff respectfully requests that this Court grant the following relief against Defendants:

1. **Declaratory Relief**

   o A declaration that Defendants' conduct violated Plaintiff's rights under applicable federal and state laws.

   o A declaration that the laws, regulations, or actions applied by Defendants are unconstitutional, invalid, or otherwise unlawful under applicable federal and state laws.

2. **Injunctive Relief**

   o An injunction prohibiting Defendants from engaging in unlawful conduct and requiring appropriate remedial actions.

   o An injunction preventing Defendants from enforcing or applying the invalid laws, regulations, or actions, and requiring Defendants to comply with lawful standards.

3. **Compensatory Damages**

   o Against Defendants in their official capacities for harm caused to Plaintiff.

4. **Punitive Damages**

   o Against Defendants in their individual capacities for willful, wanton, and reckless conduct.

5. **Costs and Expenses**

   o An award for any costs and expenses incurred by Plaintiff in pursuing this action.

6. **Other Relief**

   o Any further relief this Court deems just and proper.

## XV.    **EXHIBIT LIST**

| Exhibit Number | Title | Referenced In |
|---|---|---|
| Exhibit 01 | May 17, 2022 Ballot Remarking Instructions | Prior Restraint, Conspiracy, HAVA Violation |
| Exhibit 02 | October 5, 2022 Conditions and Restraints on Miller | Due Process, Prior Restraint |
| Exhibit 03 | Transcript of October 12, 2022 Board Meeting | Due Process, Prior Restraint, Conspiracy |
| Exhibit 04 | November 17, 2022 C. Miller Affidavit | Due Process, Abuse of Process |
| Exhibit 05 | "Ex-Hopeful" in Article | Retaliation |
| Exhibit 06 | Department of State Dismissal of HAVA Complaint | HAVA Violation, Right of Petition |
| Exhibit 07 | *Previte* Decision in Commonwealth Court | Prior Restraint, Due Process |
| Exhibit 08 | January 9, 2023 HAVA Hearing | HAVA Violation |
| Exhibit 09 | OOR Final Determination | Prior Restraint |

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## XVI.    <u>VERIFICATION AND SIGNATURE</u>

I, Michael Miller, declare under penalty of perjury that the factual allegations set forth in the

foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Date: **<u>October 12, 2024</u>**

Signature: **<u>/s/ Michael Miller</u>**

**Michael Miller**

108 North Reading Road, F, Ste. 246

Ephrata, Pennsylvania 17522

717-388-0163

reaganfive@protonmail.com

## XVII. NOTICE OF CONSTITUTIONAL CHALLENGE UNDER RULE 5.1

Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, Miller provides notice that the constitutionality of Chapter 13 of the Pennsylvania Right-to-Know Law are challenged in this complaint. Miller will serve a copy of this complaint on the Attorney General of Pennsylvania.