**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL MILLER, | : | |
| Plaintiff, | : | No. 5:24-CV-05338-JFL |
| | : | |
| v. | : | Judge Joseph F. Leeson, Jr. |
| | : | |
| COUNTY OF LANCASTER, *et al.*, | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

This is the second frivolous federal lawsuit that *pro se* Plaintiff Michael Miller ("Miller")

has filed to relitigate his state Right to Know Law proceedings. Miller's claims have already

been litigated and decided by the U.S. District Court for the Middle District of Pennsylvania (or

could have been litigated in that action), and therefore, the Amended Complaint is barred by *res

judicata*. In fact, Miller admits in his Amended Complaint that he "filed a federal declaratory

judgment action on January 4, 2024, **to address the same issues that are the basis of this

action.**" (Doc. No. 4 at 8 (emphasis added)).[1] Defendants County of Lancaster, Tammy Bender,

Jacqueline Pfursich, Joshua Parsons, Ray D'Agostino, and Christa Miller (collectively,

"Defendants"), submit this memorandum of law in support of their Motion to Dismiss the

Amended Complaint (Doc. No. 4).[2] Defendants respectfully request that this Court grant their

Motion and dismiss the Amended Complaint with prejudice.

---

[1] Because portions of Miller's Amended Complaint fail to comply with Rule 10(b) (requiring averments to be made in separately numbered paragraphs), throughout this brief Defendants will cite the page number of the Amended Complaint where the averment can be found.

[2] Defendants Bender, Pfursich, Parsons, D'Agostino, and Miller are referred to collectively as the "Individual Defendants" herein, while Defendant County of Lancaster is referred to individually as "the County" herein.

## I.  STATEMENT OF FACTS

### A.  The Middle District Action

Miller filed this action less than one week after the Middle District of Pennsylvania dismissed his complaint based upon the same set of facts he complains about here (the "Middle District Action").  Miller filed the Middle District Action, also on a *pro se* basis, on January 4, 2024, naming the County and the Commonwealth of Pennsylvania Office of Open Records ("OOR") as Defendants.  *See* Complaint, Doc. No. 1, *Miller v. County of Lancaster, et al.*, No. 1:24-CV-14 (M.D. Pa.), attached hereto (without exhibits) as Exhibit A.[3]  Miller made the following allegations in that Complaint.

Miller unsuccessfully ran as a candidate for the Republican nomination for Pennsylvania State Senate, 36th District, during the 2022 primary.  (Exhibit A ¶ 13).  Miller alleged that "[s]ome ballots received from voters in Senate District 36 did not have Miller's contest printed on the ballot, therefore those voters were unable to vote for Miller."  (*Id.* ¶ 15).  Miller also claimed that the County's "policymaking board directed [the] County's [employees] to procure and mark 14,000 'replacement' mail-in ballots and to count these instead of the ballots returned by voters" and that the County "reported the count of the replacement ballots instead of the ballots completed by voters."  (*Id.* ¶¶ 16-17).

---

[3] Because the Middle District Action is a matter of public record and Miller repeatedly references it in his Amended Complaint, this Court may properly consider it when ruling upon this Motion to Dismiss.  *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record" when reviewing a motion to dismiss); *Buck v. Hampton Twp. Sch. Dis.*, 452 F.3d 256, 260 (3d Cir. 2006) (court is not limited to the four corners of the complaint and may consider "matters incorporated by reference integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case").

Miller claimed he filed several different Right to Know Law ("RTKL") requests, seeking to review copies of mail-in ballots ("Request #1"), cast vote record reports ("Request #2"), and copies of scanned images of ballots ("Request #3"). (*Id.*, ¶¶ 23-24, 43, 55). Miller was dissatisfied with the response he received, so he appealed those determinations to the OOR, the Court of Common Pleas for Lancaster County, and then the Commonwealth Court.[4] (*Id.*, ¶¶ 28, 42, 45, 57, 65, 72).

Miller asked the Middle District court to determine "the State's compliance" with numerous constitutional provisions (both state and federal), state statutes, and procedural rules. (*Id.*, ¶¶ "VI", a-j). Miller posed 23 questions for the district court to answer. (*Id.*, ¶¶ 74-96). He invoked the Declaratory Judgment Act, federal question jurisdiction, and 28 U.S.C. § 1343(a)(3) ("civil rights claims arising under the Constitution"). (*Id.*, ¶¶ 1-3).

On February 1, 2024, the County filed a Motion to Dismiss the Complaint in the Middle District Action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Middle District Action, Doc. No. 8). After appropriate notice to Miller, the County also filed a Motion for Sanctions pursuant to Rule 11. (Middle District Action, Doc. No. 48 (cataloguing the numerous lawsuits Miller initiated regarding his grievances)).

On June 20, 2024, Magistrate Judge Martin C. Carlson issued a Report and Recommendation ("R&R") recommending, *inter alia*, that the County's Motion to Dismiss be granted and that, in the alternative, any surviving claims should be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). (Middle District Action, Doc. No. 59),

---

[4] Miller's appeal to the Commonwealth Court remains pending. *See Miller v. Lancaster*, 595 CD 2023 (Pa. Cmwlth.).

attached hereto as Exhibit B.[5]  Magistrate Judge Carlson observed that Miller "expressly invoke[d] the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and 28 U.S.C. § 2202, in the course of inviting us to intervene in state litigation involving the application and interpretation of the state Right to Know law and opine on some 23 questions propounded by the plaintiff." (Middle District Action, Doc. No. 59 at 10).  Magistrate Judge Carlson cited authority finding that challenges to the application of Pennsylvania's RTKL do not provide a basis for federal jurisdiction.  (Middle District Action, Doc. No. 59 at 14) ("[I]t has long been held that state law provides other, exclusive remedial avenues for Right to Know Act litigants like Miller. Therefore, this discretionary factor—the availability and relative convenience of other remedies—also strongly cautions in favor of dismissal of Miller's far reaching declaratory judgment action.").

On September 30, 2024, the Honorable Jennifer P. Wilson adopted Magistrate Judge Carlson's R&R, granted the County's Motion, dismissed Miller's Complaint with prejudice, and directed that the case be closed.  *See* Ex. B (Middle District Action, Doc. No. 64).  Despite closing the case, Judge Wilson referred the County's sanctions request back to Magistrate Judge Carlson for resolution.  (Middle District Action, Doc. No. 64 at 5).  That motion is still pending.

Miller appealed Judge Wilson's order to the United States Court of Appeals for the Third Circuit.  (Middle District Action, No. 65; *Miller v. County of Lancaster, et al.*, Civ. No. 24-2934).  The appeal has been listed for possible summary action by a panel of the Third Circuit in accordance with the Court of Appeals' Internal Operating Procedures.  *See Miller v. County of Lancaster, et al.*, Civ. No. 24-2934, Doc. No. 11-1.  On November 4, 2024, Miller filed a

---

[5] Judge Carlson had previously directed the parties to address the issue of propriety of venue in the Middle District.  *See* Middle District Action, Doc. No. 36.

"Motion for Judicial Intervention" seeking to revoke the Clerk's directive listing the appeal for summary action, characterizing it as "procedural and jurisdictional abuse[.]" *Id.*, Doc. No. 15 at 2. Miller also requested $4,000 "to be paid by the Court itself" as compensatory damages for the "time, financial costs, and emotional distress imposed upon [him] due to the Clerk's unauthorized actions." *Id.*, Doc. No. 15 at 3-4. Although the briefing schedule in the appeal has been suspended, Miller recently filed his principal brief, asserting that Judge Wilson engaged in judicial misconduct reflected by the "unbroken 18-0 scorecard . . . with no decisions favoring [Miller]," which he claims "is a testament to the systemic hostility and lack of impartiality that permeated this case." *Id.*, Doc. No. 18 at 13.

### B.    This Action

Miller filed a Complaint in this Court on October 5, 2024 against the County, Open Records Officer Tammy Bender, Solicitor Jacqueline Pfursich, Commissioner Joshua Parsons, Commissioner Ray D'Agostino, and Director of Elections Christa Miller. (Doc. No. 1). He did not serve the Complaint on Defendants. Miller filed an Amended Complaint on October 12, 2024 (Doc. No. 4), which was served on October 16, 2024 (Doc. No. 7). While the Amended Complaint refers to exhibits and includes an "exhibit list" (Doc. No. 4 at 82), Miller did not file those exhibits, and instead has indicated "all referenced materials will be served . . . during discovery." (Doc. No. 9 at 1).

The Amended Complaint sets forth 12 counts. (Doc. No. 4).[6] The following counts invoke federal law and/or are asserted pursuant to 42 U.S.C. § 1983: Count I ("prior restraint"); Cout II (retaliation); Count III (right to petition under the First Amendment); Count IV

---

[6] The "Summary of Claims" at page 5 of the Amended Complaint indicates there are 13 claims, but the substantive portion of the Amended Complaint setting forth each count indicates there are 12 claims in total. *See generally* Doc. No. 4.

(procedural due process); Count V (an equal protection violation based on "disparate access to election records"); Count VI (an equal protection violation based on "disparate access to judicial review under the Pennsylvania Right-to-Know Law"); Count IX (conspiracy); Count X (a violation of the Help America Vote Act); and Count XI (*Monell* liability); and Count XII (abuse of process). The following claims invoke state law: Count VII (alleged violations of free speech and the right to petition under the Pennsylvania Constitution); and Count VIII (a violation of the guarantee of free and fair elections under the Pennsylvania Constitution).

The factual basis for the Amended Complaint mirrors the facts underlying the Complaint that Judge Wilson dismissed. Indeed, under the section entitled "TOLLING ARGUMENT," Miller asserts that he "filed a federal declaratory judgment action on January 4, 2024, **to address the same issues that are the basis of this action.**" (*Id.*, at 8 (emphasis added)).

The Amended Complaint discusses Miller's candidacy for political office in a primary election in May of 2022 and alleges that certain Individual Defendants mishandled ballots following issues with mail-in ballots that could not be counted by election software, and that proceedings were held in the Court of Common Pleas over counting his election records. (*Id.* at 12-14). Miller states that the Court of Common Pleas denied petitions in that instance and denied a hand count. (*Id.* at 14, ¶ 11). Miller alleges that he filed a RTKL request in June of 2022 to "inspect and copy" mail-in ballots and ballot envelopes, which was denied. (*Id.*, ¶¶ 13-16). Also in June of 2022, Miller filed a request for cast vote records pertaining to this election, which was denied, and which he appealed to the OOR. (*Id.*, ¶¶ 20-22, 26-30).

Miller makes various allegations of what he views as improper conduct by certain Individual Defendants in connection with the denials and allegedly "influencing" the denials. (*Id.*, ¶¶ 28, 29). Miller claims that in October of 2022, the requested mail-in ballots and ballot

envelopes were ordered released under specific conditions. (*Id.*, ¶ 31). Miller maintains certain Individual Defendants have imposed additional restrictions on access to records that were not ordered by the OOR and that Defendants adopted a policy as to restrictions on records that is improper. (*Id.*, ¶¶ 34, 41).

Miller alleges that in late October 2022, he filed another RTKL request seeking digital images of mail-in ballots, which was denied on the grounds that the records sought did not exist in the requested format, and the denial of which proceeded to an appeal before the OOR. (*Id.*, ¶¶ 46-47, 50). On this front, Miller takes issue with various aspects of the proceedings before the OOR appeals officer and notes that a final determination was issued against him. (*Id.*, ¶¶ 48-50). Miller states that in December of 2022, he filed a petition to enforce a previous final determination from the OOR granting access to mail-in ballots and that the Court of Common Pleas subsequently dismissed the petition, indicating the court found the County had the authority to put in place certain procedures regarding access to the records. (*Id.*, ¶¶ 51-52). Miller also notes that in 2023, the Court of Common Pleas dismissed his appeal with respect to digital ballot images. (*Id.*, ¶ 53). Miller states that he appealed both decisions by the Court of Common Pleas to the Commonwealth Court and that both cases were pending as of June 2023. (*Id.*, ¶ 54).

Miller alleges that he has suffered various harms from Defendants' actions, including: emotional distress; lost business opportunities; reputational harm; being forced to spend "thousands of hours on litigation" and "thousands of dollars in litigation"; and having to litigate under "coercion" and "duress." (*Id.*, ¶¶ 56-62). Further, Miller maintains that a news article

published around August 2022 targeted him and resulted from Defendants' actions. (*Id.*, ¶ 63).[7] Miller adds that he previously brought a proceeding in state court by filing a complaint pursuant to the Help America Vote Act ("HAVA"), which was dismissed by the Commonwealth of Pennsylvania Secretary of State and, according to Miller, without consideration of election irregularities and re-marking process issues. (*Id.*, ¶ 64). Miller asserts that the decision issued in *Previte v. Erie County Board of Elections* contradicts what he views as Defendants' refusal to provide certain requested records. (*Id.*, ¶ 65). Elsewhere in the Amended Complaint, Miller makes various allegations regarding the Rule 11 letter and motion in the Middle District Action, asserting that the sanctions proceedings were designed to intimidate him and stifle his advocacy related to his legal claims. (*Id.* at 36).

Miller seeks a "declaration that Defendants' conduct violated [his] rights under applicable" laws; an injunction generally prohibiting Defendants from violating the law; unspecified compensatory damages; punitive damages; costs; and any further relief the Court deems just and proper. (*Id.* at 81).

## II.     STATEMENT OF THE QUESTIONS INVOLVED

Whether the Amended Complaint Should Be Dismissed Under the Doctrine of *Res Judicata*?

> *Suggested Answer:* Yes

Whether the Amended Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction?

> *Suggested Answer:* Yes

Whether Miller's Claims Under Section 1983 Should Be Dismissed Because Miller Has Failed to State a Claim, Qualified Immunity Bars the Claims, and/or the Claims Are Untimely?

---

[7] With regard to this article, Miller references an exhibit at paragraph 63 of the Amended Complaint, but the exhibit has not been included with the Amended Complaint.

*Suggested Answer:* Yes

Whether Miller's Claim Relating to the Help America Vote Act Should Be Dismissed Because Miller Cannot State a Claim for Relief Under this Act?

*Suggested Answer:* Yes

Whether the Court Should Decline to Exercise Supplemental Jurisdiction Over Miller's State Law Claims?

*Suggested Answer:* Yes

Whether, in the Alternative, the Amended Complaint Should Be Stricken/Dismissed Because It Does Not Comply with Federal Rule 10?

*Suggested Answer:* Yes

## III. SUMMARY OF ARGUMENT

Miller admits that this lawsuit is duplicative of his prior Middle District Action, which has been dismissed with prejudice. A comparison of the Amended Complaint in this case to the Complaint filed in the Middle District Action confirms that the pleadings arise from the same set of facts and grievances. Distilled to their core, both pleadings are focused on the adverse outcomes Miller experienced in the state court system in connection with his various requests made under the RTKL. *Compare* Doc. No. 4 at 8-21, *with* Exhibit A at 9-23.

The Amended Complaint is nothing more than Miller's attempt to relitigate the Middle District Action and it should be dismissed as barred by *res judicata*. Further, while Miller may have restyled his complaint, added formal counts and new defendants, and attempted to inject new facts, none of these considerations changes the ultimate fact that Miller is seeking relief that cannot be afforded to him—intervention by a federal court in state RTKL proceedings. And putting that aside, the Amended Complaint suffers from myriad deficiencies that warrant dismissal for separate reasons, among them being Miller's failure to state a claim upon which relief may be granted, the application of qualified immunity, timeliness issues, and more.

Defendants respectfully request that this Court dismiss this case with prejudice to stop Miller's frivolous pursuit of meritless claims at the expense of public resources.

## IV.   ARGUMENT

### A.   Applicable Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Rule 12(b)(6) authorizes dismissal of a claim "for failure to state a claim upon which relief may be granted." *See* Fed. R. Civ. P. 12(b)(6). As to Rule 12(b)(1) challenges to a complaint, this Court has previously summarized the applicable standard, in pertinent part, as follows:

> A district court considering a motion pursuant to Rule 12(b)(1) must first determine whether that motion presents a "facial" attack or a "factual" attack on the claim at issue "because that distinction determines how the pleading must be reviewed." *Moore v. Angie's List, Inc.,* No. CIV.A. 15–1243, —— F.Supp.3d ——, ——, 2015 WL 4669209, at *1 (E.D.Pa. Aug. 7, 2015) (quoting *Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 357 (3d Cir.2014)). A facial challenge contests the sufficiency of the complaint because of a defect on its face—such as lack of diversity among the parties or the absence of a federal question. *Id.* In a facial challenge, the Court must consider the allegations of the complaint as true and consider only those allegations in the complaint, and the documents attached thereto, in the light most favorable to the plaintiff to determine whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. *Id.* Thus, when confronted with a facial challenge, the Court applies the identical standard of review that it uses in considering a motion to dismiss under Rule 12(b)(6).

*Elbeco Inc. v. Nat'l Ret. Fund,* 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (Leeson, J.).

As to motions to dismiss under Rule 12(b)(6), this Court has noted that the Court "must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *See Elbeco*, 128 F. Supp. 3d at 854 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). Two key principles factor into a court's Rule

12(b)(6) analysis. First is "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See id.* (quoting *Iqbal*, 556 U.S. at 678). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* (quoting *Iqbal*, 556 U.S. at 678).

### B.   The Amended Complaint Is Barred by the Doctrine of *Res Judicata*.

"Res judicata bars claims that were actually litigated or could have been litigated in a prior action." *Lewis v. O'Donnell*, 674 F. App'x 234, 236-37 (3d Cir. 2017); *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010); *see also Ball v. Famiglio*, 726 F.3d 448, 459 n.16 (3d Cir. 2013) (noting that *res judicata* may be raised in a 12(b)(6) motion to dismiss where the defense is apparent on the face of the complaint), *abrogated in part on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015). For *res judicata* to apply, a defendant must show there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *See Egli v. Strimel*, 251 F. Supp. 3d 827, 835 (E.D. Pa. 2017) (Rufe, J.) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). "The purpose of *res judicata* is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* (quoting *Davis*, 824 F.3d at 341-42). "In determining whether *res judicata* applies, courts 'do not proceed mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources.'" *Id.* (quoting *Davis*, 824 F.3d at 341).

Here, *res judicata* bars Miller's Amended Complaint.  First, the Order dismissing the Middle District Action constituted a final judgment on the merits "entered after Plaintiff had a full and fair opportunity to prove his case and failed to do so."  *See Egli*, 251 F. Supp. 3d at 836 (citing *Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013)).  Miller zealously litigated the County's motion to dismiss that case and lost, twice—once before Magistrate Judge Carlson and again upon Judge Wilson's review of the R&R.  (Ex. B).  Miller's meritless appeal of that Order does not change this analysis.  *See Banks v. Hayward*, No. CIV.A. 06-1572, 2007 WL 120045, at *4, n.6 (W.D. Pa. Jan. 10, 2007) (finding that a pending appeal does not negate the finality of a judgment for *res judicata* purposes and noting, *inter alia*, that "it has become clear in the federal courts that *res judicata* ordinarily attaches to a final lower court judgment even though an appeal has been taken and remains undecided" (citing C. Wright, A. Miller & E. Cooper, 18A Federal Practice and Procedure: Jurisdiction § 4427)).

Second, this case involves the same parties (Miller versus the County) or parties in privity (the County employees).  *See Egli*, 251 F. Supp. 3d at 836 ("Privity is merely a word used to say that the relationship between one who is a party on the record, and another is close enough to include that other within the *res judicata*." (quoting *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004)).  An employer-employee relationship is generally sufficient to satisfy the privity requirement.  *See, e.g.*, *Gupta v. Wipro Ltd.*, 749 F. App'x 94, 96 (3d Cir. 2018).

Third, the "same cause of action" requirement is readily met in this instance.  As a court in this District has stated:

> Courts in the Third Circuit "take a broad view of what constitutes the same cause of action and [ ] *res judicata* **generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims**."[] "In analyzing essential similarity," courts "consider several factors: (1) whether the acts complained of and the demand for relief are the same...; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial

are the same...; and (4) whether the material facts alleged are the same. It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions."[] "Further, [t]he fact that several new and discrete [ ] events are alleged does not compel a different result. A claim extinguished by *res judicata* includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, *or series of connected transactions*, out of which the action arose."[]

*Egli*, 251 F. Supp. 3d at 837 (footnotes omitted) (bolded emphasis added).

Miller freely admits that his Middle District Action "address[ed] the same issues that are the basis of this action." (Doc. No. 4 at 8). He included a section in his Amended Complaint arguing why the statute of limitations on these *preexisting claims* should be tolled. (*Id.* at 7-9). He asserts that his "claims" have been tolled by "the ongoing litigation in both state and federal court." (*Id.* at 9). He claims that his "federal declaratory judgment action, along with the pending appeal to the Third Circuit, represents a good faith effort to resolve *these matters*." These assertions constitute admissions that Miller is merely seeking to relitigate the Middle District Action and the RTKL cases he lost or that are still pending before the Commonwealth Court.[8]

The relief Miller seeks in the Amended Complaint—asking this Court to overturn decisions adverse to him in his state RTKL proceedings—is the same as that which Judge Wilson rejected in the Middle District Action. This renders *res judicata* applicable. *See Lewis*,

---

[8] Miller further admits to his own history of unsuccessful attempts to litigate his grievances in the federal court system. For example, as discussed previously, in a recent submission to the Third Circuit in Miller's pending appeal in the Middle District Action that Miller styles as his "appellate brief" despite the Third Circuit having indicated this the appeal may be disposed of through summary action and, as a result, no briefing schedule has been issued, Miller referred to what he terms a "scorecard of judicial decisions," which he maintains shows "how procedural and substantive decisions were consistently adverse to [his] rights." *See Miller v. County of Lancaster, et al*., Civ. No. 24-2934 (3d Cir.), Doc. No. 60 at 18. Miller's "scorecard" reflects 18 instances where the defendants in the Middle District Action filed requests he opposed or the court granted relief adverse to him or over his objection.

674 F. App'x at 237 (affirming district court's dismissal of complaint on the basis of *res judicata* where it was "clear that . . . [plaintiff was] merely attempting to re-litigate issues that were already decided in state court"); *Walthour v. Herron*, No. CV 16-2162, 2016 WL 5339582, at *6 (E.D. Pa. Sept. 22, 2016) (Kearney, J.) (finding that plaintiff's claims "are barred by the doctrine of *res judicata* because he merely seeks to relitigate prior meritless claims against the same Defendants" and "[w]e appreciate his anguish with court rulings but, having filed his claims and judges dismissing his claims, he cannot serially file the same claims with the same facts hoping for a different result"), *aff'd sub nom*, 720 F. App'x 130 (3d Cir. 2017).

To the extent that Miller has asserted "new" claims in the Amended Complaint – he could have asserted those same claims in the Middle District Action. Miller does not allege that he has discovered any new facts giving rise to valid claims.[9] Accordingly, *res judicata* forecloses Miller's case in this Court, and the Amended Complaint should be dismissed with prejudice.

C. **The Amended Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Because Alleged Violations of the RTKL Do Not Give Rise to Federal Constitutional Claims.**

If the Court concludes that *res judicata* is not applicable in this instance, the Amended Complaint should nonetheless be dismissed with prejudice for lack of subject matter jurisdiction. As was the case in the Middle District Action, here, the crux of Miller's grievance is his

---

[9] The only "new" fact that Miller alleges arises from the filing of a Rule 11 sanctions motion against Miller that remains pending in the Middle District Action. (Doc. No. 4 at 35). Miller falsely asserts in Count II that the sanctions motion was filed by the Individual Defendants as an act of retaliation, but those individuals were not even parties to the Middle District Action. *See* Exhibit A. More importantly, the Rule 11 sanctions motion is protected by the judicial privilege. That privilege "provides 'immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought,' whether made by 'a party, a witness, an attorney, or a judge.'" *Church Mut. Ins. Co. v. Alliance Adjustment Grp.*, 102 F. Supp. 3d 719, 730 (E.D. Pa. 2015) (Sanchez, J.) (citations omitted).

dissatisfaction with the outcome of proceedings under the RTKL.  However, Miller's

dissatisfaction with the Commonwealth's handling of his proceedings under the RTKL does not

give rise to a federal cause of action and, therefore, there is no basis for federal question

jurisdiction.  *See Breslin v. Duncannon Borough*, No. CV 12-0360, 2018 WL 4002855, at *3

(M.D. Pa. Aug. 22, 2018) (Stengel, J.) (noting that "alleged violations of Pennsylvania's Right to

Know Law do not give rise to a constitutional claim").

     In *Breslin*, the plaintiffs filed a civil rights action against their local township and some of

its officials, alleging violations of their First, Fourth, and Fourteenth Amendment rights.  Judge

Lawrence Stengel, sitting by designation, explained that one of the plaintiffs' claims rested

"upon his attempt to turn his dissatisfaction with a state law administrative procedure for access

to records into a federal Constitutional claim.  *Violations of state statutes do not give rise to

claims for violations of civil rights*."  *Breslin*, *supra* at *4 (emphasis added) (citing *Benn v.

Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004)).  Judge Stengel continued:

"[Section] 1983 supports causes of action based upon violations, under color of state action, of

federal statutory law or constitutional rights.  It does not provide a cause of action for violation

of state statutes."  *Id.*

     More recently, a court in this District considered this issue in *Miller v. Nelling*, No. CV

22-3329-KSM, 2023 WL 2743564 (E.D. Pa. Mar. 31, 2023) (Marston, J.).  That court concluded

that it lacked jurisdiction over a claim that public officials had failed to provide records pursuant

to the RTKL "because state courts provide the exclusive forum for litigating under that statute."

*Miller*, *supra*, at *6 (quotations omitted) (collecting cases).

     In *Miller*, the plaintiff filed a federal suit challenging a school district policy.  The

plaintiff submitted several RTKL requests, which yielded no documents.  The plaintiff filed a

lawsuit in part alleging that the public officials had destroyed records. The court reasoned that, "Chapter 11 and 13 of the RTKL provide the appropriate method of relief when a state agency denies a citizen's document request[,]" and emphasized that "[t]his statutory remedy is exclusive; it does not permit judicial review at the federal level." *Id.*; *see also McCullough v. Cty. of Allegheny*, No. CV 16-534, 2016 WL 7116640, at *2 (W.D. Pa. Dec. 7, 2016) (federal courts lack jurisdiction to compel the production of documents requested under the RTKL); *Degenes v. Mueller*, No. CIV.A. 11-916, 2012 WL 260038, at *3 (W.D. Pa. Jan. 27, 2012) (granting motion to dismiss plaintiff's RTKL claim for lack of subject matter jurisdiction).

Miller attempts to circumvent this authority—which he knows exists, because these issues were already litigated and decided against him—by sprinkling in various boilerplate statements about Defendants violating his constitutional rights and adding grievances regarding HAVA proceedings and the Rule 11 motion. However, those efforts at distraction do not alter the reality that Miller is asking this Court to overturn results of state court RTKL proceedings, which does not give rise to federal jurisdiction. As a result, the Amended Complaint should be dismissed with prejudice.[10]

### D.    Miller's Section 1983 Claims Fail from a Substantive Standpoint.

While Defendants respectfully submit that the Amended Complaint should be dismissed with prejudice for the reasons discussed above, Miller's claims fail for several additional reasons. Defendants address each category of claims topically and begin with a discussion of Miller's Section 1983 claims, which Miller appears to assert at: Count I ("prior restraint"); Count

---

[10] While the lack of federal jurisdiction compels dismissal of Miller's federal claims, as explained *infra*, should the federal claims be dismissed, the entire Amended Complaint should also be dismissed on the basis that the Court may decline to exercise supplemental jurisdiction over any remaining state law claims.

II (retaliation); Count III (right to petition under the First Amendment); Count IV (procedural

due process); Count V (an equal protection violation based on "disparate access to election

records"); Count VI (an equal protection violation based on "disparate access to judicial review

under the Pennsylvania Right-to-Know Law"); Count IX (conspiracy); Count XI (*Monell*

liability); and Count XII (abuse of process). As this Court has previously explained:

> 42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be
> brought in federal court. "To state a claim under § 1983, a plaintiff must allege the
> violation of a right secured by the Constitution and laws of the United States, and
> must show that the alleged deprivation was committed by a person acting under
> color of state law."

*Burgess v. Reading Parking Auth.*, No. 5:23-CV-3390, 2024 WL 3678680, at *2 (E.D. Pa. Aug.

6, 2024) (Leeson, J.) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### 1. Miller's Section 1983 Claims Against the Individual Defendants Sued in Their Personal Capacities Are Barred by Qualified Immunity.

Counts I through VI, Count IX, and Count XII raise allegations against five county

employees in their personal and official capacities and assert claims for unspecified monetary

damages. The "personal capacity" claims should be dismissed on the basis of qualified

immunity. "Under the now-familiar standard for the judge-created defense of qualified

immunity, a state officer is shielded from a suit for monetary damages under § 1983 unless 'the

official violated a . . . constitutional right,' and 'the right was clearly established at the time of

the challenged conduct.'" *Weimer v. Cty. of Fayette*, 972 F.3d 177, 190 (3d Cir. 2020) (quoting

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[A] defendant cannot be said to have violated a

clearly established right unless the right's contours were sufficiently definite that any reasonable

official in the defendant's shoes would have understood that [s]he was violating it." *See id.*

(quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). As an affirmative defense,

qualified immunity can be raised through a Rule 12(b)(6) motion if the basis for the immunity is apparent on the face of the complaint. *See Zehring v. Sorber*, No. CV 20-3195, 2024 WL 233217, at *10 (E.D. Pa. Jan. 22, 2024) (Slomsky, J.) (citing various authority in support of same).

It is apparent from the face of the Amended Complaint that Miller's claims against the Individual Defendants are barred by qualified immunity. Miller repeats vague grievances pertaining to the outcome of his litigation in the state court system and his dealings with the Individual Defendants in connection with the same. The alleged conduct complained of by Miller, which stems purely from his disagreement with how his records requests have been adjudicated, does not touch on any constitutional right (because there is no recognized constitutional right to access records under the RTKL), let alone show that a clearly established law was violated for purposes of overcoming qualified immunity. *See Crump v. Passaic Cty.*, 147 F. Supp. 3d 249, 258 (D.N.J. 2015) (finding that "[t]here is no clearly established law that the alleged conduct here violated" the constitutional provision at issue); *Trout v. Wentz*, No. 1:10-CV-0439, 2011 WL 98713, at *7 (M.D. Pa. Jan. 12, 2011) (applying qualified immunity and noting alleged facts suggested "that a reasonable officer in these circumstances would have believed his conduct to be lawful").

As discussed above, violations of the RTKL do not give rise to federal constitutional claims. *See Breslin*, *supra* at *4. Because the Individual Defendants have not violated any clearly established law, Counts I through VI, Count IX, and Count XII should be dismissed to the extent they seek monetary damages. *See Trout*, 2011 WL 98713, at *7 ("For all of these

reasons, the York City defendants enjoy qualified immunity.  It is therefore unnecessary for the

court to address the merits of the Trouts' claims.").[11]

### 2. Miller's "Official Capacity" Section 1983 Claims Against the Individual Defendants Are Duplicative of His Claims Against the County And Should Be Dismissed.

Miller has sued every Individual Defendant in their personal *and* official capacities.

However, a claim against a government official in their "official capacity" is "indistinguishable"

from a claim against the municipality that employs them.  *See, e.g.*, *Logue v. Unified Jud. Sys. of*

*Pennsylvania by & through York Cty. Ct. of Common Pleas*, No. 1:23-CV-00535, 2024 WL

1217224, at *1 n.1 (M.D. Pa. Mar. 21, 2024) ("An official capacity suit is 'in all respects other

than name, to be treated as a suit against the entity.'" (quoting *Kentucky. v. Graham*, 473 U.S.

159, 166 (1985))).  Each of the Individual Defendants are County employees (*see* Doc. No. 4 at

3), which means the official-capacity claims are duplicative of the claims against the County and

---

[11] Other than monetary damages, Miller has failed to articulate what he even is asking the Court to do in awarding him relief.  To the extent Miller relies on the County's Rule 11 motion in the Middle District Action as a basis for a retaliation claim in Count II, that claim fails, too.  *See Church Mut. Ins. Co.*, 102 F. Supp. 3d at 730 (Sanchez, J.) (stating that statements made in litigation are protected by judicial privilege).

Relatedly, to the extent Miller alleges he is entitled to relief as a result of the Rule 11 motion in the context of his abuse of process claim, "a section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law."  *See Booker v. Borough of N. Braddock*, No. 2:19-CV-01649-CCW, 2021 WL 37618, at *8 (W.D. Pa. Jan. 5, 2021) (internal quotation marks omitted) (quoting *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010)).  "Thus, [t]he gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Dunne v. Twp. of Springfield*, 500 F. App'x 136, 138 (3d Cir. 2012)).  The Amended Complaint simply does not plead facts that would meet this standard with respect to any filing on behalf of the County in the Middle District Action, given that a Rule 11 motion is a court-authorized procedure for addressing litigation that Miller himself initiated.  Moreover, the Individual Defendants were not even parties to the Middle District Action, as noted previously.

should be dismissed.  *See McMillian v. Monroe County Ala.*, 520 U.S. 781, 785 (1997) ("a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent, in that victory in such an official-capacity suit imposes liability on the entity that the officer represents[.]"); *Logue*, 2024 WL 1217224, at *1 n.1 (treating official capacity claim against individual defendant as against entity defendant only).

### 3. Miller's Section 1983 Claims Against the County Fail Because Miller Has Failed to Sufficiently Plead *Monell* Liability.

Miller's claims against the County at Counts I through VI, Count IX, Count XI, and Count XII warrant dismissal because Miller has failed to plead any valid claims on the basis of *Monell* liability.  "It is well established that, '[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.'"  *Bracy v. Doe*, No. CV 22-1054-SRF, 2024 WL 4333093, at *6 (D. Del. Sept. 27, 2024) (alteration in original) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).  "Constitutional claims under Section 1983 are allowed against municipalities to the same extent they are against individual defendants."  *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).

To invoke *Monell* liability, "a plaintiff must 'plead that the complained-of injury was caused directly by a local government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *See Ashley v. Kosehba*, No. 1:22-CV-00982, 2023 WL 6200805, at *4 (M.D. Pa. Sept. 22, 2023) (first set of internal quotation marks omitted) (quoting *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020)).  As the District Court in *Ashley v. Kosehba* noted:

> A policy or custom can be proven in multiple ways. First, a plaintiff may point to "a formal policy officially promulgated or endorsed by the municipality ...." *Id.* at

351. The policy must be "an official proclamation, policy or edict" made by "a decisionmaker possessing final authority to establish municipal policy with respect to the action ...." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d. Cir. 2019).

Second, absent a formal policy, a "specific injury-causing action[ ] taken by a government official who is responsible for establishing municipal polices" may establish a municipal policy or custom. *Schlaybach*, 434 F. Supp. 3d at 351. In this scenario, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Third, absent a formal policy, the plaintiff may allege a municipality's custom, which is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a policymaker must have been aware[,]" caused the violation of their rights. *Id.* (*see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990)). The custom must be "so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

Finally, absent a formal policy, "a widespread failure by policymakers to provide adequate training or supervision to subordinates" which amounts to deliberate indifference towards the rights of citizens can also support municipal liability. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003). In any of the above scenarios, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850.

*Id.* at *4.

The Amended Complaint comes nowhere close to pleading the existence of an unlawful policy or custom for purposes of *Monell* liability. Miller's allegations are rote, boilerplate accusations that do not meet the requirements articulated above. *See, e.g.*, Doc. No. 4 at 18 ("County maintained a policy or custom of arbitrarily denying or obstructing public record requests to suppress unfavorable information and prevent its dissemination."); 21-23; 74-76. Miller claims that the County deprived him of his First Amendment, due process, and equal protection rights, but fails to provide any facts supporting these claims other than repeatedly

stating that his RTKL requests and appeals were denied.  It is not clear that the County was even involved in all the actions that underlie Miller's grievances, let alone that the County acted pursuant to an established policy or custom.  For example, Miller complains about decisions of the Commonwealth's OOR appeals officer (*id.* at 16, ¶ 50); the Commonwealth's Secretary of State (*id.* at 17, ¶ 64 and 39 (complaining about dismissal of HAVA petition)); and the Lancaster County Court of Common Pleas (*id.* at 16, ¶ 53).

Once again, Miller's allegations are based only on his disagreement with the outcome of his records requests in the state court system.  Because RTKL proceedings do not give rise to federal constitutional claims, Miller has again failed to allege the deprivation of a federal right— whether by policy, custom, or otherwise.  This defect is reflected in every count in which Miller seeks to hold the County liable on this basis.  Accordingly, Counts I through VI, Count IX, Count XI, and Count XII should be dismissed as to the County.

**E.**     **Miller's Section 1983 Claims Are Untimely.**

The Amended Complaint also suffers from timeliness issues.  A two-year statute of limitations period applies to Miller's claims arising under Section 1983.  *See, e.g.*, *Drayton v. Philadelphia Prison Sys.*, No. 24-CV-1800, 2024 WL 2218894, at *2 (E.D. Pa. May 16, 2024) (Leeson, J.) (stating that "the timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose" and that "[t]he Pennsylvania statute of limitations for a personal injury action is two years" and, therefore, the applicable limitations period was two years).  Miller filed the original complaint in this action on October 5, 2024, meaning that any Section 1983 claims based on events arising before October 5, 2022 are time barred.  Putting aside the fundamental issues of *res judicata* and lack of jurisdiction plaguing Miller's claims as discussed earlier, a significant portion of the facts alleged

in the Amended Complaint predate October 5, 2022.  *See* Doc. No. 4 at 8-21.  Accordingly, any Section 1983 claims based on those alleged events—to the extent those claims are even cognizable, which Defendants submit they are not—are untimely.  Accordingly, the Court should dismiss any such claims.

### F.     Miller's Claim Relating to HAVA Should be Dismissed.

Count X of the Amended Complaint is based on alleged violation of the Help America Vote Act ("HAVA").[12]  In support of this count, Miller states that: "Defendants violated [HAVA] by mishandling absentee ballots during the 2021, 2022, and 2023 election cycles" by "failing to provide voters with ballots containing Plaintiff's race, preventing voters from verifying their ballots, and denying them the opportunity to correct any errors before the ballots were counted"; "[d]uring the January 9, 2023, hearing before Acting Secretary of State Al Schmidt, testimony from Defendant Christa Miller confirmed that Parsons, Pfursich, and D'Agostino were directly involved in the remarking process"; and "[t]he Pennsylvania

---

[12] One district court recently described HAVA as follows:

> [The] Help America Vote Act ("HAVA") of 2002, 52 U.S.C. § 21081 *et seq.*, imposes certain election procedures upon the states pursuant to Congress's constitutional authority to regulate federal elections. *See* U.S. CONST. art. I, § 4. The states are required, *inter alia*, to build computerized voter registration systems and to implement minimum requirements for voters who register by mail. *See generally* 52 U.S.C. § 21083. They must adopt "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns" each one "a unique identifier." *See id.* § 21083(a)(1)(A). And they must also regularly "perform list maintenance" to remove ineligible voters. *See id.* § 21083(a)(2).

*Reschenthaler v. Schmidt*, No. 1:24-CV-1671, 2024 WL 4608582, at *1 (M.D. Pa. Oct. 29, 2024).

Department of State's dismissal of Plaintiff's HAVA complaint further demonstrates Defendants' pattern of disregard for federal election law (see Exhibits 01 and 06)." (Doc. No. 4 at 69-70).

Initially, courts in this Circuit have held that HAVA does not provide a private right of action. *See Am. C.R. Union v. Philadelphia City Commissioners*, 872 F.3d 175, 181 (3d Cir. 2017) ("HAVA does not include a private right of action that allows aggrieved parties to sue nonconforming states. Subchapter IV of the HAVA includes only two mechanisms for enforcement: (1) a civil action brought by the Attorney General,[] and (2) administrative complaint." (footnotes and citations omitted)); *see also Reschenthaler*, 2024 WL 4608582, at *8 (noting that no private right of action is available under HAVA).

Even if HAVA did afford a private right of action, Miller makes only conclusory statements about any alleged violation of HAVA. It is far from clear that the named parties are the appropriate defendants to such a claim. None of the named Defendants were personally involved in Miller's HAVA proceedings. More fundamentally, Miller is attempting to have this Court review the outcome of election proceedings administered through the Commonwealth of Pennsylvania Department of State, which seems to present an issue under the *Rooker-Feldman* doctrine. *See, e.g.*, *Vuyanich v. Smithton Borough*, 5 F.4th 379, 384 (3d Cir. 2021) (discussing doctrine generally). This is not a proper basis for federal jurisdiction, much like Miller's attempt to seek review in the federal courts of the RTKL proceedings with which he disagrees. Accordingly, Miller's claim at Count X should be dismissed with prejudice.

**G. The Court Should Decline to Exercise Supplemental Jurisdiction Over Miller's State Law Claims, or Alternatively, Dismiss the Remaining Claims With Prejudice.**

The Amended Complaint asserts two claims purportedly under state law: Count VII (alleged violations of free speech and the right to petition under the Pennsylvania Constitution); and Count VIII (a violation of the guarantee of free and fair elections under the Pennsylvania Constitution). If no federal claims remain, Defendants request that the Court decline to exercise supplemental jurisdiction over these state claims.

"Pursuant to 28 U.S.C. § 1367(c)(3), '[a] district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [the court] has dismissed all claims over which it has original jurisdiction.'" *John v. Pa. Dep't of Hum. Servs.*, No. 5:24-CV-0781, 2024 WL 4371017, at *3 (E.D. Pa. Oct. 2, 2024) (Leeson, J.). In deciding whether to exercise supplemental jurisdiction, a court should consider "factors such as judicial economy, convenience, and fairness to litigants." *See id.* (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Considering that Miller's state law claims concern the application of state constitutional rights and statutory provisions, Defendants respectfully submit that the Court should decline to hear these claims. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 487 (3d Cir. 1998) (affirming district court declining supplemental jurisdiction over state constitutional claims and reasoning that the interpretation of a state constitution is properly left to state courts).

If the Court does exercise jurisdiction over these claims, though, courts have held that there is no private right of action for alleged violations of the Pennsylvania constitution seeking monetary damages. *See, e.g.*, *James v. Wetzel*, No. 1:21-CV-01069, 2024 WL 1333368, at *16 (M.D. Pa. Mar. 28, 2024). Accordingly, Miller's claims seeking monetary damages at Counts

VII and VIII fail on this basis. Further, to the extent Miller seeks relief other than monetary damages under these counts, similar to his federal claims, Miller has not articulated what he is asking this Court to order in the form of relief, other than apparently overturning the results of various proceedings in the state court system and state administrative process with which he disagrees—which Defendants respectfully submit this Court is not empowered to do. Finally, Miller puts forth no facts that would plausibly suggest a violation of the constitutional provisions relating to free speech, the right to petition the government, and the guarantee of free and fair elections. Accordingly, Counts VII and VIII should be dismissed, as well.

### H. In the Alternative, the Court Should Dismiss the Amended Complaint Because It Fails to Comply with Federal Rule of Civil Procedure 10.

In the alternative, Miller's Amended Complaint should be dismissed and/or stricken for failure to comply with Federal Rule 10, which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b); *see, e.g.*, *Brown v. Joseph McCormick Constr. Co.*, No. CIV.A. 14-27, 2014 WL 6612892, at *1 (W.D. Pa. Nov. 20, 2014) (striking complaint because it was "broken into only a handful of numbered sections, most of which contain several paragraphs (and, in some cases, full pages) of text describing a wide range of allegations").

Further, while the Amended Complaint purports to rely upon exhibits and includes an "exhibit list" (Doc. No. 4 at 82), it does not include the referenced exhibits, and Miller has filed a "Supplemental Notice Regarding Exhibit Handling" indicating that no exhibits were attached to the Amended Complaint and that "all referenced materials will be served . . . during discovery" (Doc. No. 9 at 1). Miller provides no authority or other basis for proceeding in this fashion. Although the Amended Complaint is substantively deficient for the many reasons discussed

above, at a minimum, the Court should direct Miller to refile a properly composed pleading that complies with Rule 10(b) and includes all referenced exhibits.

## V. CONCLUSION

Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss Miller's Amended Complaint (Doc. No. 4) with prejudice.[13]  Because of Miller's significant history of filing frivolous lawsuits, Defendants further request that this Court impose a pre-filing approval requirement before Miller is permitted to file any further actions in this Court based on the facts giving rise to the Amended Complaint.  *See Walthour*, 2016 WL 5339582, at *6 (Kearney, J.) (imposing requirement on *pro se* litigant who filed repetitive complaints asserting "the same underlying fact pattern . . . [against] immune parties and otherwise requir[ing] scarce government resources to answer his serial filings").

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By: _____
　　　Sarah Hyser-Staub, PA ID 315989
　　　Lauren Anthony, PA ID 324557
　　　100 Pine Street
　　　P.O. Box 1166
　　　Harrisburg, PA  17108-1166
　　　(717) 232-8000
　　　sstaub@mcneeslaw.com
　　　lanthony@mcneeslaw.com

Dated:  November 20, 2024　　　　　　*Attorneys for Defendants*

---

[13] The Amended Complaint should be dismissed with prejudice because amendment would be futile.  *See, e.g.*, *Daniels v. City of Philadelphia*, 296 F. Supp. 3d 722, 725 (E.D. Pa. 2017) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." (citing *In re Burlington Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997))); *see also id.* ("[a] district court need not grant leave to amend if 'the complaint, as amended, would fail to state a claim upon which relief could be granted'" (citing *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011))).