UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MILLER,         Plaintiff, <br><br> v. <br><br> COUNTY OF LANCASTER, TAMMY BENDER, JACQUELINE PFURSICH, JOSHUA PARSONS, RAY D'AGOSTINO, CHRISTA MILLER, <br><br>         Defendants. | No. 5:24-cv-05338 |

**O P I N I O N**
Motion to Dismiss, ECF No. 17 – Granted and Denied in part

**Joseph F. Leeson, Jr.**                                        **March 7, 2025**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Michael Miller filed this *pro se* action against Defendants Lancaster County and individuals Tammy Bender, Jacqueline Pfursich, Joshua Parsons, Ray D'Agostino, and Christa Miller, alleging that his rights under the Pennsylvania constitution and the Federal Constitution were violated when his requests for unrestricted access to local election documents were denied. Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and also based on *res judicata* and untimeliness. For the reasons stated below, the Motion to Dismiss is granted as to all federal claims, with limited leave to amend.

## II.    BACKGROUND[1]

---

[1]    The Court must accept all allegations in the Amended Complaint as true and view them in the light most favorable to the nonmoving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) The facts in the Background section are written accordingly.

### A. The May 2022 Election – Lancaster County, Pennsylvania.

Plaintiff Michael Miller ("Miller") ran for Pennsylvania State Senate in the District 36 primary election in Lancaster County on May 17, 2022. Am. Compl. ¶ 1, ECF No. 4.[2] It was reported that some 22,000 mail-in ballots were received for this election. *Id.* at ¶ 2. Christa Miller ("C.M."), the Chief Registrar and Director of Elections for the County, along with Joshua Parsons and Ray D'Agostino, both County Commissioners and members of the Board of Elections, had caused to be printed some 14,000 mail-in ballots that "could not be counted by [the] election software." *Id.* at ¶ 3. On May 17, 2022, Parsons, D'Agostino, C.M., and Jacqueline Pfursich, County Solicitor, directed County employees to replace the 14,000 errored ballots with absentee ballots. *Id.* at ¶ 5. It was reported that some "original" and absentee ballots were "missing Plaintiff's race." *Id.* at ¶¶ 4, 6. Parsons, D'Agostino, and C.M. "did not permit [absentee] voters who were sent an error ballot to complete a replacement ballot."[3] *Id.* at 7. On May 18, 2022, C.M. "caused to be ordered 4,100 replacement ballots . . . to be marked, scanned, and counted" by the software. *Id.* at ¶ 8. Ultimately Miller was not elected to the Pennsylvania

---

[2]     Any citations herein to paragraph numbers in the Amended Complaint refer to the "Factual Allegations" section beginning on page nine. Any citations to the Amended Complaint that do not include a paragraph number shall reference the page number.

[3]     Miller alleges that on May 17, 2022, "Parsons, D'Agostino and C. Miller[] were responsible for causing to be printed 14,000 voted *mail-in* ballots that could not be counted by [election] software," Am. Compl. at ¶ 3 (emphasis added), but also alleges that on the same day County employees were directed "to replace approximately 14,000 *absentee* ballots to replace the marked ballots that could not be read by [election] software," *id.* at ¶ 5 (emphasis added), and later referred to the County's policies as "the replacement of *absentee* ballots" once again, *id.* at ¶ 68 (emphasis added). The Amended Complaint does not indicate how or whether Lancaster County distinguishes between "absentee" and "mail-in" ballots and Miller appears to use the terms interchangeably. Though it is unclear whether the initial ballots printed in error were absentee or mail-in, the Court reads "replacement ballots" in the Amended Complaint to refer generally to ballots used to replace any errored ballots sent to those who intended to vote not in person. To the extent this Opinion references "replacement ballots" it shall be understood similarly.

State Senate in May 2022. *See id.* at ¶¶ 1, 11. In August 2022, an article labeling Miller an "Ex-Hopeful" in the election was published in a local newspaper. *Id.* at ¶ 63.

### B. Miller's Initial Right-to-Know Requests

On June 7, 2022, Miller filed a request under the Right-to-Know Law ("RTKL") to "inspect and copy mail-in ballots and ballot envelopes used in the May 17, 2022, election." *Id.* at ¶ 13. After a 30-day extension, Tammy Bender, the Open Records Officer for Lancaster County, denied Miller's request, "citing 25 P.S. § 2648 of the Election Code as the basis for exemption, asserting that the requested records were not subject to public access under the Election Code." *Id.* at ¶ 16. On July 27, 2022, Plaintiff appealed the County's denial of mail-in ballots to the County's Office of Open Records ("OOR"). *Id.* at ¶ 22. On August 17, 2022, Bender sent an email to the OOR's appeals officer which opposed Miller's appeal and asserted that the requested mail-in ballots were not "public records" under the RTKL. *Id.* at ¶ 24. Bender attached to her email a letter written by Pfursich asserting the same. *Id.* The same day, Pfursich directed Bender to forward the OOR appeals officer a letter from Pennsylvania's Director of Bureau of Elections and Notaries, advising "County Election Officials" in the state not to release mail-in ballots to requestors under the RTKL. *Id.* at ¶¶ 23, 25. On October 5, 2022, the OOR issued a "final determination" ordering the County of Lancaster and Bender to release the mail-in ballots and envelopes "under specific conditions." *Id.* at ¶ 31. The same day, Bender and Pfursich sent a letter to Miller imposing "additional restrictions not mentioned in the OOR order, such as limiting inspection to supervised review by a sheriff's deputy and prohibiting photo or video recording." *Id.* at ¶ 34.

On October 12, 2022, a board meeting was held by Parsons, D'Agostino, and Pfursich,[4] wherein they "declared that the Board had created regulations pursuant to 25 P.S. [§] 2648" and that the restrictions on viewing mail-in ballots were part of a County policy that had been in place since the November 2020 general election. *Id.* at ¶¶ 35-37. Miller alleges that it was on this date, October 12, that Bender and Pfursich "issued a policy prohibiting Plaintiff from copying or photographing the granted records." *Id.* at ¶ 41.

On October 14, 2022, Miller emailed C.M. and Pfursich, "asserting his right to obtain the records." *Id.* at ¶ 42. Pfursich responded that the County would not alter its policy. *Id.* at ¶ 43. On October 21, 2022, Miller emailed Bender and the OOR appeal's officer, "advising them of [the] County's response and requesting OOR intervention to clarify his rights under the final determination." *Id.* at ¶ 44. On October 24, 2022, OOR's Chief Counsel responded, stating that "the OOR's jurisdiction ended with the issuance of the final determination." *Id.* at ¶ 45.

### C.  Miller's Cast Vote Records Request

On July 19, 2022, Miller had "filed a separate request for the Cast Vote Records (CVRs) for the May 17, 2022, election." *Id.* at ¶ 20. Miller's request was denied on August 26, 2022. *Id.* at ¶ 26. On August 28, 2022, Miller appealed this denial to the OOR. *Id.* at ¶ 27. Pfursich thereafter wrote to the OOR appeal officer and included "documents she purported to be 'affidavits' by [C.M.], attempting to influence the appeal officer to deny Plaintiff the records." *Id.* at ¶ 29. OOR denied Plaintiff's appeal "on grounds that [C.M.]'s statements were competent evidence." *Id.* at ¶ 30.

### D.  Miller's Request for Digital Images

---

[4]     Though unclear from the Amended Complaint, the Court reads this to describe a meeting of the Lancaster County Board of Elections.

On October 26, 2022, Miller filed a request with the County for digital images of the mail-in ballots from the May 17, 2022, election. *Id.* at ¶ 46. On November 2, 2022, Bender and Pfursich denied Miller's request for digital images, "asserting that the records did not exist in the requested format pursuant to 65 P.S. § 67.705." *Id.* at 47. In the coming weeks, Bender and Pfursich sent several "affidavits" by C.M. to the OOR appeals officer, stating that the County had not retained digital images of some 36,000 mail-in ballots scanned into the election software in May 2022. *Id.* at ¶¶ 48-49. On December 1, 2022, the OOR appeals officer issued a final determination denying Plaintiff's request for digital images. *Id.* at ¶ 50.

### E.  Miller's HAVA Complaint

On October 27, 2022, Miller filed a complaint against Parsons, D'Agostino, and C.M., alleging violations of the Help America Vote Act ("HAVA").[5] *Id.* at 5. On January 23, 2023, the Pennsylvania Department of State dismissed Miller's complaint regarding election irregularities under HAVA. *Id.* at ¶ 64. Miller alleges that, in dismissing his complaint, the state "refus[ed] to address the re-marking process issues." *Id.*

### F.  Procedural History

#### i.    Lancaster County Court of Common Pleas

On May 31, 2022, Miller filed petitions in the Lancaster County Court of Common Pleas demanding a hand count of votes in the May 2022 election,[6] but the court "denied the petitions and a hand count." *Id.* at ¶ 11.

---

[5]     The venue in which this HAVA complaint or grievance was filed is unclear from the Amended Complaint. *See* Am. Compl. at 5.

[6]     The Court notes contradicting information in the Amended Complaint regarding who filed these petitions. Miller states that "[o]n May 31, 2022, approximately 120 voters in 40 precincts filed petitions in the Lancaster County Court of Common Pleas demanding a hand count" of the votes from the May 2022 election, Am. Compl. ¶ 11, but separately states that on the same date, "Plaintiff filed petitions in the Lancaster County Court of Common Pleas from

On December 29, 2022, Miller filed a petition in the Lancaster County Court of Common Pleas "under Chapter 13 of the Pennsylvania RTKL and []Pa. R.A.P. 3761(b)[7] to enforce the OOR's final determination issued on October 5, 2022." *Id.* at 6; *see also* ¶ 51. On May 12, 2023, the Court of Common Pleas dismissed Plaintiff's petition, "concluding that the County had authority from 25 P.S. § 2648 to create its regulations." *Id.* at ¶ 52. Miller also filed a concurrent second petition in the Lancaster County Court of Common Pleas under the same statutes, "appealing the OOR's December 1, 2022, final determination denying the requested records in digital form." *Id.* at 6. On May 12, 2023, the Court of Common Pleas "also dismissed [Miller]'s appeal for the digital images, concluding that the RTKL gives the OOR appeals officer wide discretion regarding evidentiary standards under the RTKL and no hearing is required." *Id.* at ¶ 52. Miller appealed both of these matters, which remain pending in the Pennsylvania Commonwealth Court.[8] *Id.* at 54.

### ii.    United States District Court for the Middle District of Pennsylvania

On January 4, 2024, Miller filed a complaint against the County of Lancaster and the Office of Open Records in the United States District Court for the Middle District of Pennsylvania. *See* Civil No. 1:24-cv-00014-JPW-MCC, ECF No. 1. The complaint did not list individual causes of action but posed to the court some twenty-three questions regarding the legality of the defendants' actions under Chapter 13 of the RTKL and asked the court to

---

approximately 120 voters in 40 precincts," demanding the same hand count, *id.* at 5. The Court surmises that Miller likely filed these petitions himself, seemingly on behalf of other voters or with their support, and it has therefore phrased this factual allegation accordingly.

[7]    Pennsylvania Rules of Appellate Procedure, Rule 3761, *Enforcement Proceedings*, section (b), "Enforcement of final determinations of the Office of Open Records."

[8]    The total number of suits Miller initiated in state court is unclear from the Amended Complaint, as are the case names, numbers, parties, and appeal statuses of each. *See* Am. Compl. at 5-16.

determine the County's compliance with state and federal law.[9] *See id.*; Am. Compl. at 7. On September 30, 2024, the Middle District adopted a Report and Recommendation by Magistrate Judge Martin C. Carlson and granted the defendants' motion to dismiss the complaint with prejudice. *See* Civil No. 1:24-cv-00014-JPW-MCC, ECF No. 64. Miller has since appealed this ruling to the Third Circuit. *See id.* at ECF No. 65.

### iii.    United States District Court for the Eastern District of Pennsylvania

On October 5, 2024, Miller initiated the instant action in the United States District Court for the Eastern District of Pennsylvania. *See* Complaint, ECF No. 1. Miller's initial Complaint stated eleven causes of action, including violations of the First and Fourteenth Amendment, Conspiracy, Negligence, and violations of the Help America Vote Act (HAVA), all brought under 42 U.S.C. § 1983. *See id.* Miller filed an Amended Complaint on October 12, 2024, this time stating twelve causes of action: First Amendment violations for prior restraint, retaliation, and right to petition (Counts I through III); procedural due process (Count IV); Equal Protection (Counts V and VI); violations of the Pennsylvania state constitution (Counts VII and VIII); Conspiracy (Count IX); HAVA violations (Count X); *Monell* liability (Count XI); and abuse of process (Count XII). *See* Am. Compl., ECF No. 4. Miller's current federal claims are brought under 42 U.S.C. §1983. *See id.* at 1, 4. Defendants have moved to dismiss the Amended Complaint on grounds of lack of subject matter jurisdiction, *res judicata*, untimeliness, and failure to state a claim. *See* Motion to Dismiss, ECF No. 17.

## III.    LEGAL STANDARDS

---

[9]    At one point in the Middle District action, Defendants moved for sanctions on the basis of excessive and meritless litigation by Miller. *See* Civil No. 1:24-cv-00014-JPW-MCC, ECF No. 48. In the instant action, Miller asserts that this sanctions motion was retaliatory in nature. Am. Compl. at 35. *See* section IV(C)(ii), *infra*.

A.    **Motion to Dismiss under Rule 12(b)(1)- Review of Applicable Law**

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its

face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon*

*Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549

F.2d 884, 891 (3d Cir. 1977)).  "[A] court must first determine whether the movant presents a

facial or factual attack" because the distinction determines the standard of review.  *In re Schering*

*Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  A

facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the

complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*

*v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3).  A

factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not

support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d

Cir. 2014).  A factual attack "cannot occur until plaintiff's allegations have been controverted[,]"

*Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise

presents competing facts." *Aichele*, 757 F.3d at 358.  "When a factual challenge is made, 'the

plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to

weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*,

824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891).  "[N]o presumptive truthfulness attaches

to [the] plaintiff's allegations. . . ." *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in

original).

B.    **Section 1983 Claims- Review of Applicable Law**

Title 42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be

brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

### i. Timeliness of Section 1983 Claim- Review of Applicable Law

"In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions in Pennsylvania is two years. *See id.*; 42 Pa. C.S.A. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599.

"Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). The Rule provides: an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

C.      **Motion to Dismiss under Rule 12(b)(6) – Pro Se Pleadings -Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly

relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and italics omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Courts also have an obligation to construe the filings of *pro se* litigants liberally. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). This extends to the construction of *pro se* pleadings. *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."), *as amended*, (Sept. 19, 2011); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Although *pro se* litigants are entitled to have the substance of their filings liberally construed, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

### i.  First Amendment – Prior Restraint – Review of Applicable Law

"The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (italics omitted). A "prior restraint of speech seeks to prevent speech from being expressed to begin with." *O'Donnell v. Knott*, 283 F. Supp. 3d 286, 304 (E.D. Pa. 2017) (citing *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007) ("[U]nlike an adverse action taken in response to actual speech, [a prior restraint] chills potential speech before it happens.")). "[P]rior restraints are viewed with extreme disfavor and, unless they are established with a series of safeguards to prevent any undue infringement on First Amendment rights, are impermissible." *Adhi Parasakthi Charitable,*

*Med., Educ., and Cultural Socy. of N.A. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 377 (E.D. Pa. 2010). "The United States Supreme Court has stated that even 'informal procedures undertaken by officials and designed to chill expression can constitute a prior restraint.'" *O'Donnell*, 283 F. Supp. 3d at 305 (citing *Multimedia Holdings Corp. v. Circuit Ct. of Fla., St. Johns Cnty.*, 544 U.S. 1301, 1306 (2005)).

Prior restraints are also subject to strict scrutiny. *Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020). "In order to be held lawful (the prior restraint), first, must fit within one of the narrowly defined exceptions to the prohibition against prior restraints, and, second, must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1007 (3d Cir. 1976) (citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 71 (1963).

### ii. First Amendment – Retaliation – Review of Applicable Law

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). To set forth a cognizable First Amendment retaliation claim, a plaintiff must allege that: "(1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). *See also Falco v. Zimmer*, 767 F. App'x 288, 299 (3d Cir. 2019) (finding that a public employee suing his employer for First Amendment retaliation must show that (1) his activity is

protected by the First Amendment, and (2) there is a causal link between the activity and the adverse employment action – such that the former was a substantial or motivating factor in the latter); *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (same) *as amended* (Oct. 25, 2019); *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (same).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). *See also Falco*, 767 F. App'x at 310 ("[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.") (quoting *Estate of Smith v. Mascaro*, 318 F.3d 497, 512 (3d Cir. 2003)); *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee" (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997)) or to "other types of circumstantial evidence . . . that give rise to an inference of causation when considered as a whole." (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000))).

### iii. First Amendment – Right to Petition – Review of Applicable Law

"The right to petition the government for grievances is a fundamental component of a just and orderly society." *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997)[10]. "[T]he Petition

---

[10]    *Anderson v. Davila* involved a fact pattern where the government was alleged to have taken retaliatory action in response to an employee's filing of a lawsuit. 125 F.3d 148, 161-64 (3d Cir. 1997). In analyzing what may constitute protected conduct, the court advanced the idea

Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Lear v. Zanic*, 524 Fed. Appx. 797, 800 (3d Cir. 2013) (unpublished) (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011)). "A petition enjoys constitutional protection whether it is addressed, as here, to a local government, or to a state or national government." *Mirabella v. Villard*, 853 F.3d 641, 654 (3d Cir. 2017). At the same time, the right to petition is neither unrestrained nor absolute. *Id.* (citing *Guarnieri*, 564 U.S. at 390; *McDonald v. Smith*, 472 U.S. 479, 484 (1985)). *See also Mobley v. Tarlini*, 641 F. Supp. 2d 430, 441 (E.D. Pa. 2009). When addressing a Petition Clause claim, courts ask "whether the government may 'nevertheless burden' the right to petition, given countervailing government interests." *Mirabella*, 853 F.3d at 654 (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 535 (2002)). "To balance such competing interests, courts have generally applied Speech Clause precedent, rather than any freestanding Petition Clause doctrine," *Mirabella*, 853 F.3d at

---

that citizen access to the courts, generally, is protected activity under the Petition Clause of First Amendment. *Id.* at 161-62.

654 (citing *Guarnieri*, 564 U.S. at 389),[11] because "the right to petition is cut from the same

cloth as the other [First Amendment] guarantees," *McDonald*, 472 U.S. at 482.[12]

---

[11]     The Supreme Court in *Borough of Duryea v. Guarnieri* indicated that the analyses for violations of the Speech and Petition Clauses should not differ when viewed in the public employment context, 564 U.S. 379, 389 (2011) ("The considerations that shape the application of the Speech Clause to public employees apply with equal force to claims by those employees under the Petition Clause."), but made clear that "[c]ourts should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims," *id.* at 388. Nevertheless, the Third Circuit has before applied Speech Clause precedents to Petition Clause claims brought by regular citizens. *See, e.g., Mirabella v. Villard*, 853 F.3d 641, 655 (3d Cir. 2017) ("[W]e will apply free speech precedent, as the Supreme Court did in *Guarnieri* [and] conclude that this is appropriate given the 'extensive common ground' of the two rights, and the Supreme Court's own example."). On other occasions, Third Circuit courts have maintained that Petition and Speech rights are substantially related, at a minimum. *See, e.g., Ferrone v. Onorato*, 298 Fed. Appx. 190, 193 (3d Cir. 2008)(unpublished) ("Substantive rights under the petition clause are rarely litigated, but 'the right to petition is cut from the same cloth as the other [First Amendment] guarantees'") (quoting *McDonald v. Smith*, 472 U.S. 479, 482 (1985); *de Botton v. Marple Twp.*, 689 F. Supp. 477, 481 (E.D. Pa. 1988) (The Petition Clause "was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble.") (quoting *McDonald*, 472 U.S. at 485).
[12]     In *Mirabella v. Villard*, the Third Circuit applied free speech precedent to a Petition Clause claim where plaintiffs alleged that they were prevented from contacting their local government officials to air their grievances about the misuse of township property. 853 F.3d at 654-55. The *Mirabella* plaintiffs had asserted that the same "no contact" email from a town official both restricted their free (political) speech and their right to petition under the First Amendment. *Id.* at 653-55. The court concluded that applying free speech precedent to the Petition Clause claim was therefore appropriate, given the "'extensive common ground' of the two rights, and the Supreme Court's own example" in *Guarnieri*, 564 U.S. at 389.
     By contrast, in *Ferrone v. Onorato*, the Third Circuit applied to a Petition Clause claim the same intent requirement as a due process analysis—requiring plaintiff "to show that the [defendants] acted 'with reckless or intentional indifference to his constitutional rights'; mere negligence will not suffice." 298 Fed. Appx. 190, 193 (3d Cir. 2008) (unpublished) (quoting *Woods v. Lemonds*, 804 F.Supp. 1106, 1109 (E.D. Mo. 1992), *aff'd*, 991 F.2d 802 (8th Cir. 1993)). The *Ferrone* plaintiffs alleged that County officials' negligence deprived them of *access* to the courts; the court suggested that the due process intent requirement was necessary, given the Third Circuit's "discussion of 'access to court' claims brought under the petition clause" in cases like *Anderson v. Davila*, 125 F.3d 148 (3d Cir.1997), and other courts' comparisons of the right to due process concerns, *see, e.g., Pink v. Lester*, 52 F.3d 73, 74-76 (4th Cir. 1995) (applying the due process intentionality requirement, because the "requisite intent in a given case turns upon the standard necessary to establish a violation of the underlying constitutional or statutory right," and when a prisoner alleges that prison official's negligence deprived him of his

### iv.  Equal Protection – Review of Applicable Law

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on a § 1983 equal protection claim, Plaintiff must allege facts demonstrating 'purposeful discrimination' and that he 'receiv[ed] different treatment from that received by other individuals similarly situated.'" *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015) (internal citations omitted), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016). "To meet the prima facie elements, Plaintiff must allege that he was: (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." *Id.* (italics omitted) (citing *Oliveira v. Twp. of Irvington*, 41 Fed.Appx. 555, 559 (3d Cir.2002); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). *See also Cash v. Wetzel*, 8 F. Supp. 3d 644, 664 (E.D. Pa. 2014). To state a claim for a "class-of-one" Equal Protection violation, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

### v.  Procedural Due Process – Review of Applicable Law

---

right of access to the courts, "it matters not, for purposes of § 1983, whether the right of access is catalogued under the First or Fourteenth Amendment").

This Court recognizes that "Section 1983 [. . .] has never been found by this Court to contain a state-of-mind requirement." *Parratt v. Taylor*, 451 U.S. 527, 534 (1981), *overruled on other grounds* by *Daniels v. Williams*, 474 U.S. 327 (1986). Considering this, the facts of the present case, and the fact that Miller's Petition Clause claim appears to overlap factually with his Free Speech Retaliation claim, this Court takes the position articulated in *Mirabella*, and will apply free speech precedent to Count III if it is determined that Miller has stated a deprivation of his right to petition under the First Amendment.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Property interests are not created by the Constitution. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Rather, "[c]ore to the existence of an individual property interest is the requirement that the plaintiff have 'a legitimate claim of entitlement to' the interest at issue that stems from 'an independent source such as state law' or 'rules or understandings that secure certain benefits.' " *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 415 (3d Cir. 2021) (quoting *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 960 (3d Cir. 2019) (quoting *Roth*, 408 U.S. at 577)). "The Supreme Court has made clear 'that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Geisenberger*, 17 F.4th at 415 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). By contrast, "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980)), or "it may arise from an expectation or interest created by state laws or policies," *see, id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974)).

### vi.  Section 1983 Conspiracy - Review of Applicable Law

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993) (citing *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  To assert a prima facie claim of conspiracy, a plaintiff must plausibly allege facts that show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Schlichter v. Limerick Twp.*, No. 04-CV-4229, 2005 U.S. WL 984197, at *10 (E.D. Pa. Apr. 26, 2005) (citing *General Refractories Company v. Fireman's Fund Insurance Company*, 337 F.3d 297, 313 (3d Cir. 2003)). "The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Hammond v. Creative Fin. Planning Org., Inc.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992).  A complaint must allege particular and exacting facts that demonstrate the "period of the conspiracy, object of the conspiracy, and certain other actions of the alleged conspirators to achieve the purpose." *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 660 (E.D. Pa. 2020) (quoting *Germantown Cab Co. v. Phila. Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *10 (E.D. Pa. Aug. 12, 2015) (quoting *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000))). *See also Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (holding that a plaintiff must allege facts that plausibly suggest a meeting of the minds).

### vii.  *Monell* Liability – Review of Applicable Law

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality can be sued under Section 1983 in two contexts: First, if the municipality is responsible for a failure or inadequacy that "reflects a deliberate or conscious choice," *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019), such as a failure to train or supervise which "amounts to

'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact" *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999))). To establish "deliberate indifference" on the part of the municipality a plaintiff must allege that " (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Carter*, 181 F.3d at 357).

Second, "[l]ocal governing bodies . . . may be sued where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lebie v. Borough*, No. 13-cv-6819, 2014 WL 2085518, at *2 (E.D. Pa. May 16, 2014) (quoting *Monell*, 436 U.S. at 690). "Liability is imposed when the policy or custom itself violates the Constitution, or where the policy or custom is the 'moving force' behind a constitutional violation by an employee of the local body." *Id.* (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

"A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A custom may exist when, 'though not authorized by law, such practices of state officials are so permanent and well settled that they operate as law.'" *Id.* (quoting *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 923 (3d Cir. 2010)). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *Robinson v. City of Philadelphia*, No. 15-1574, 2015 WL 5965003, at *7 (E.D. Pa. Oct. 13, 2015) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). "It is

incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Lebie*, No. 13-cv-6819, 2014 WL 2085518, at *2 (quoting *Andrews*, 895 F.2d at 1481); *see also id.* at *3 (concluding Third Circuit case law "unequivocally imposes on [p]laintiff an 'obligation to plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a *Monell* claim'") (cleaned up) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010)) (italics not in original).

### viii.    Abuse of Process – Review of Applicable Law

"The common law tort of abuse of process is defined as the perversion of legal process after it has begun 'primarily to accomplish a purpose for which it is not designed.'" *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 296 (E.D. Pa. 2009) (quoting *Werner v. Plater–Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)). To state a claim for abuse of process, a plaintiff must allege facts sufficient to show that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff.'" *EMC Outdoor, LLC v. Stuart*, Civ. A. No. 17-5712, 2018 WL 3208155, at *3 (E.D. Pa. June 28, 2018) (quoting *Naythons v. Stradley, Ronon, Stevens & Young, LLP*, No. 07-4489 (RMB), 2008 WL 1914750, at *3 (E.D. Pa. Apr. 30, 2008), *aff'd*, 339 F. App'x 165 (3d Cir. 2009).

The tort is designed to prevent the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *See Ciolli*, 625 F. Supp. 2d at 296 (quoting *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994)). A defendant's "bad or malicious intentions" are not enough; "[r]ather there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as

extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *See id.*
(quoting *Al Hamilton Contracting*, 644 A.2d at 192).

### D.   Supplemental Jurisdiction  - Review of Applicable Law

Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental
jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original
jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing
every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc.
v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental
jurisdiction, the district courts should consider factors such as judicial economy, convenience,
and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding
that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over
state claims, even though bound to apply state law to them"). The United States Supreme Court
has further advised that "if the federal claims are dismissed before trial, even though not
insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

## IV.   ANALYSIS

### A.   Subject Matter Jurisdiction

Defendants assert that Miller's suit, as a whole, is rooted in his dissatisfaction with the
outcome of the proceedings following his RTKL requests, and that since the RTKL does not give
rise to a federal cause of action, this Court should dismiss the Amended Complaint in its
entirety.[13] *See* Def. Brief 14-16, ECF No. 18. Generally, federal district courts are barred from

---

[13]   Defendants also assert that Miller's Amended Complaint is barred by the doctrine of *res
judicata* based on Miller's action in the Middle District of Pennsylvania, Civil No. 1:24-cv-
00014-JPW-MCC. Def. Brief at 11-14. The Court disagrees. "Claim preclusion—which some
courts and commentators also call *res judicata*—protects defendants from the risk of repetitious
suits involving the same cause of action once a court of competent jurisdiction has entered a final

considering claims under the Pennsylvania Right-to-Know Law. *See N'Jai v. Floyd*, 386 F. App'x 141, 143 (3d Cir. 2010) (referencing *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1176–77 (3d Cir. 1986)). "[T]he Right–to–Know Act prescribes that the appropriate remedy for denial of a request is to appeal that denial in state court. This statutory remedy is exclusive." *Ledcke v. Pennsylvania Dep't of Corrections*, No. 1:11-CV-2298, 2012 WL 716052, at *5 (M.D. Pa. Feb. 3, 2012) (citing *Proffitt v. Davis*, 707 F.Supp. 182, 188 (E.D. Pa. 1989)), *report and recommendation adopted*, No. 1:11-CV-2298, 2012 WL 718591 (M.D. Pa. Mar. 5, 2012). "Therefore, federal courts generally lack subject matter jurisdiction over such Pennsylvania Right–to–Know Act claims." *Id. See also Miller v. Nelling*, No. 22-cv-3329-KSM, 2023 WL 2743564, at *6 (E.D. Pa. Mar. 31, 2023) ("[T]o the extent Plaintiff challenges Moving Defendants' failure to provide public records requested pursuant to the RTKL, the Court lacks jurisdiction over this claim because state courts provide the exclusive forum for litigating under that statute.") (internal quotations omitted); *Breslin v. Duncannon Borough*, No. 12-cv-0360,

---

judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011)). The doctrine prevents parties "from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *See id.* (quoting *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 410-11 (2020)). Under Pennsylvania law, a defendant may invoke claim preclusion only where the prior action and current matter share four "identities":

> "(1) the thing sued upon or for;
> (2) the cause of action;
> (3) the persons and parties to the action; and
> (4) the capacity of the parties to sue or be sued."

*See Rosemont Taxicab Co. v. Phila. Parking Auth.*, 327 F. Supp. 3d 803, 815 (E.D. Pa. 2018) (quoting *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006)).

While Defendants are correct that the pleadings in both district cases arise from the same set of facts and grievances, Miller's complaint in the Middle District did not plead any of the individual causes of action before the Court here. There, Miller sought declaratory judgment in the form of written answers to several questions regarding the constitutionality of the County's acts. The Middle District court declined to grant such relief. As such, the Court here is unable to conclude that any cause of action in the prior case is identical to those currently being litigated here. Accordingly, the Amended Complaint is not barred on the grounds of *res judicata.*

2018 WL 4002855, at *3 (M.D. Pa. Aug. 22, 2018) (noting that "alleged violations of Pennsylvania's Right to Know Law do not give rise to a constitutional claim").

Miller has stated some twelve causes of action, not all of them predicated solely on his RTKL requests. However, Counts V and VI of the Amended Complaint are. Count VI is labeled as an Equal Protection violation and based on "Unequal Treatment Under RTKL," or "Disparate Access to Judicial Review under the Pennsylvania Right-To-Know Law." *See* Am. Compl. at 2, 51. In this count, Miller alleges that Defendants violated his Fourteenth Amendment right to equal protection by subjecting him to "a more burdensome judicial review process" than other RTKL requesters received. *Id.* at 51. This claim is based on Miller's concerns with the RTKL proceedings and how they were handled; it does not implicate a federal cause of action. The Court does not have jurisdiction over Count VI.

Count V is similarly labeled as an Equal Protection claim, but is based on "Disparate Action to Election Records." *Id.* at 46-47. Miller alleges that Defendants "provid[ed] other requesters with access to election records while denying Plaintiff access." *Id.* at 47. The Court finds these allegations notably similar to Count VI and finds that they too are based on Miller's discontent with how Defendants responded to his RTKL requests. These allegations do not give rise to federal jurisdiction. Thus, to the extent Miller attempts to bring a claim under the RTKL, no federal cause of action has been stated and Counts V and VI of the Amended Complaint must be dismissed for lack of subject matter jurisdiction. However, to the extent Miller pleads causes of action under the Equal Protection Clause of the Fourteenth Amendment, as the titles of Counts V and VI suggest, that argument is analyzed below. *See* section IV(C)(v), *infra*.

**B.    Timeliness**

Defendants further assert that Miller's claims should be dismissed as untimely because a two-year statute of limitations applies for 42 U.S.C. § 1983 claims, and a significant portion of the facts alleged in the Amended Complaint predate the two-year point before this case was filed. "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury," which in Pennsylvania is two years. *Sameric Corp.*, 142 F.3d at 599; *see* 42 Pa. C.S.A. § 5524. Miller initiated this action on October 5, 2024.[14] *See* Complaint. Any section 1983 claims arising before October 5, 2022, would therefore be time-barred under the statute.

The Court recognizes that Miller takes issue with the County's handling of its May 2022 primary election for state senate. This election, along with the filing of Miller's RTKL and cast vote records requests, occurred prior to October 5, 2022. Am. Compl. at ¶¶ 1, 13, 20. However, most of Miller's constitutional violation claims arise out of events that unfolded while his RTKL petitions and requests for election documents were on appeal and in the process of review. *See* Am. Compl. ¶¶ 31-37, 41-54. These events, while initiating prior to October 5, 2022, continued to develop after that date. The Court is therefore of the opinion that nearly all of Miller's claims were timely brought, having not fulling accrued before the October 5, 2022, date. *Sameric Corp.*, 142 F.3d at 599 ("A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based.").

Count X is the exception. In it, Miller alleges that Defendants violated the Help America Vote Act (HAVA) by mishandling ballots "in the 2021, 2022, and 2023 election cycles." *See*

---

[14]     Though the Court here considers the allegations in the Amended Complaint, filed October 12, 2024, the claims asserted therein arise out of the same "conduct, transaction, or occurrence set out—or attempted to be set out" in the original Complaint, filed October 5, 2024, Fed. R. Civ. P. 15(c)(1)(B), and so relate-back to the original. *Singletary v. Pa. Dep't of Corrections*, 266 F.3d 186, 193 (3d Cir. 2001) ("Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint.").

Am. Compl. at 66. Specifically, Miller alleges that with regard to the May 2022 election, Defendants "fail[ed] to provide voters with ballots containing Plaintiff's race, prevent[ed] voters from verifying their ballots, and den[ied] them the opportunity to correct any errors before the ballots were counted." *Id.* at 66-67. These events were alleged to have occurred on May 17, 2022, *id.* at ¶¶ 4, 6, and in the immediate days thereafter, *see id.* at 22. No factual allegations are made in regard to a 2021 or a 2023 election in Lancaster County. Thus, to the extent that Miller has alleged facts to support a HAVA violation, they all occur—and the claim accrues—prior to October 5, 2022. Count X is therefore dismissed without prejudice as untimely.[15]

### C.    Failure to State a Claim

Defendants lastly ask the Court to dismiss Miller's Amended Complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Miller's remaining federal claims are as follows: (I) First Amendment Prior Restraint; (II) First Amendment Retaliation; (III) First Amendment Right to Petition; (IV) Procedural Due Process; (V and VI) Equal Protection; (IX) Conspiracy; (XI) *Monell*; and (XII) Abuse of Process. This section will address each in turn.

### i.    First Amendment – Prior Restraint (Count I)

To establish the existence of a prior restraint, Miller must allege the existence of some administrative or judicial order that "forbid[s] certain communications when issued in advance of the time that such communications are to occur." *Alexander*, 509 U.S. at 550 (internal quotations

---

[15]    Leave to amend Count X is warranted because Miller may yet amend his complaint to allege that a mishandling of ballots occurred in a Lancaster County election in late 2022 or 2023. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Leave to amend Count X is granted to allow Miller to plead facts in support of ballot mishandling in an election occurring on or after October 5, 2022.

omitted). In Count I of his Amended Complaint, Miller alleges that Defendants imposed a prior restraint on his First Amendment rights by "restricting his access to election records, preventing him from inspecting and copying materials that were essential to his political advocacy." Am. Compl. at 28. He goes on to allege that these restrictions were "aimed at suppressing Plaintiff's speech," which is protected activity under the First Amendment. *Id.* Keeping in mind that "even informal procedures undertaken by officials and designed to chill expression can constitute a prior restraint," *O'Donnell*, 283 F. Supp. 3d at 305 (internal quotations omitted), the question under Rule 12(b)(6) becomes whether, by alleging that Defendants restricted his access to election records, Miller has also alleged (i) a procedure or order (ii) that was designed to restrict his speech. *See id.*

A final determination issued by OOR on October 5, 2022, ordered the County of Lancaster and Bender to release the mail-in ballots and envelopes to Miller "under specific conditions." Am. Compl. at ¶ 31. A letter from Bender and Pfursich shortly followed, outlining certain parameters within which Miller would be able to access the election materials. *Id.* at ¶ 34. These parameters included: limiting inspection to one person at a time, disallowing photography or video recording, allowing notes to be taken on the opposite side of the room so that writing implements are not near the records, and "reserv[ing] the right to have a Sheriff's deputy or its designee present" during the inspection.[16] *See* Complaint Ex. 6 ("Letter"), ECF No. 1-1. Miller

---

[16]    Although this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff," *Phillips*, 515 F.3d at 233 (quoting *Pinker*, 292 F.3d at 374 n.7) (internal quotation marks omitted), it notes the existence of nine specific exhibits referenced in the Amended Complaint (i.e., this Letter), which Miller identifies by title and number, but neglects to attach. *See* Am. Compl. at 18, 79. Coincidentally, several of these named exhibits are attached to the original Complaint, and can be identified by the references, dates, titles, and descriptions of them provided in the Amended Complaint. The Court is familiar with these formerly submitted exhibits and their contents. It observes that several allegations in the Amended Complaint attempt to summarize these exhibits where a direct quote would be

appears to allege that by sending him this letter, Bender and Pfursich "issued a policy prohibiting Plaintiff from copying or photographing the granted records." Am. Compl. at ¶¶ 34, 41. Though on October 12, 2022, a board meeting was held during which Parsons, D'Agostino, and Pfursich stated that these restrictions on document access had been part of an existing County policy in place since 2020. *Id.* at ¶¶ 35-36.

Even assuming that the parameters outlined in the letter constitute an administrative order or policy, there is no indication that such a policy restricted future first amendment activity. Miller does not clarify how the restrictions were "aimed at suppressing [his] speech," Am. Compl. at 28, nor does he clarify what "speech" he intended to engage in after reviewing the documents. The Amended Complaint does indicate, however, that having unfettered access to the election materials would have been "essential to [Miller's] political advocacy," *id.* at 28, and that, by restricting Miller's ability "to obtain and share information," Defendants "impaired his

---

undoubtedly more accurate. Some of the information relayed in the Amended Complaint does not comport with the contents of the exhibits to the Complaint. *Compare* Am. Compl. ¶¶ 13-30 (alleging that, prior to October 2022, Defendants denied Miller's initial records request and then attempted to influence the denial of his appeal) *with* Complaint Exhibit 30 ("Ex-hopeful Article"), ECF No. 1-1 (stating that county employees had spent weeks redacting and making available for Miller some 22,000 mail-in ballots from the May 2022 election in response to Miller's initial records request, but that as of August 9, 2022, Miller had not visited the county building to review them). The Court also finds that the references in the Amended Complaint serve to incorporate these exhibits into the pleadings under current review. For these reasons, the Court finds it in accordance with the standard of review under Fed. R. Civ. P. 12(b)(6) to consider the exhibits to the Complaint. The Court therefore may reference the Letter and other exhibits to the Complaint insofar as they are recognizable by details described the Amended Complaint, dated, and referenced clearly. *See, e.g.*, Letter, ECF No. 1-1.

Further, Defendants' Motion to Dismiss attaches as exhibits only the following documents, all from the Middle District action: Miller's complaint, the Report and Recommendation by Magistrate Judge Carlson, and the court's Order adopting the Report and Recommendation. *See* Civil No. 1:24-cv-00014-JPW-MCC, ECF Nos. 1, 59, 64. Since the Court has taken judicial notice of this docket and its contents, the Motion's exhibits, though incorporated into the relevant pleadings, may be cited to by the Middle District docket and electronic filing numbers.

capacity to inform the public, thereby suppressing his right to engage in political speech and advocacy." Am. Compl. at 25. This supposes that if Miller were allowed to copy and photograph the election records and ballots, he might have disseminated them to others in the community—perhaps intending to make a statement about the County's handling of the May 2022 election. *See id.* at 13, 25, 28. If so, Miller has failed to provide any support for the idea that such dissemination is protected activity under the First Amendment, and the Court is not prepared to find that a restriction thereof constitutes a prior restraint.

The OOR's final determination, issued October 5, 2022, clarified that OOR was "not examining the public nature of the records requested [. . .] but was "determining whether the requested records may be *accessed* under the RTKL." Civil No. 1:24-cv-00014-JPW-MCC, OOR Final Determination ("RTKL Determination"), ECF No. 1-2, 22-23.[17] The OOR further explained that "while the Election Code makes many records in the custody of the Election Board subject to public inspection by qualified electors, 25 P.S. § 2648, it does not make these records unconditionally available to the public." *Id.* at 8 (internal citations omitted). Pennsylvania courts and the OOR "have consistently held that voter registration information is governed by [the] Voter Registration Act, 25 Pa.C.S §§ 67.1101-1906, and associated regulations," which protect the rights of individual voters. *Id.* at 9. For example, "access to the signatures on the mail-in ballot envelopes is prohibited." *Id.* Although Miller alleges that the letter he received from Bender and Pfursich on October 5, 2022, imposed "additional restrictions

---

[17]      The Court notes that attached to the Middle District complaint, Civil No. 1:24-cv-00014-JPW-MCC (ECF No. 1), is a civil cover sheet (ECF No. 1-1), several exhibits (ECF No. 1-2), and a payment receipt (ECF No. 1-3). ECF No. 1-2 is 151 pages long and contains twenty-one numbered exhibits, each with their own page numbers beginning at 1. Thus, to the extent the Court cites herein to a named exhibit within ECF No. 1-2 in the Middle District action, it shall state the name of the exhibit (catalogued in the chart on page one of ECF No. 1-2) and then refer to the page numbering for that exhibit only.

not mentioned in the OOR order," Am. Compl. at ¶ 34, the OOR made clear in its determination

that "certain reasonable safeguards" would be put in place which "must be followed before

access [would] be granted." RTKL Determination at 8-9 (citing *Pennsylvanians for Union*

*Reform v. Pennsylvania Dep't of State*, 138 A.3d 727, 732-33 (Pa. Commw. Ct. 2016) (citing 4

Pa. Code § 183.14(a)-(b))).

Here, Miller was granted access to the documents and was allowed to take unlimited

notes during his review, which he could have shared with others to satisfy his need for

expression. *See* Am. Compl. at 31; Letter. To obtain unfettered access to election materials and

photocopy them, however, is *not* a right protected under the First Amendment. As such, no prior

restraint of First Amendment activity has occurred by the implementation of reasonable

restrictions, which allowed the County to comply with election laws without unfairly burdening

Miller's ability to review the materials. Count I is dismissed without prejudice for failure to state

a claim.[18]

### ii. First Amendment – Retaliation (Count II)

To set forth a cognizable First Amendment retaliation claim, Miller must allege that: "(1)

he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor,

adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional

rights; and (3) the protected activity was a substantial or motivating factor in the state actor's

decision to take adverse action." *Fantone*, 780 F.3d at 191 (citing *Rauser*, 241 F.3d at 333).

---

[18]    Since Miller has not provided support for the idea that he was to engage in protected First
Amendment activity, he has not stated a proper claim for prior restraint thereof. The Court
concludes that no prior restraint claim could exist based on these facts, but grants Miller leave to
amend Count I to plead facts in support of *protected* activity which was actually restrained. *See*
*Alston*, 363 F.3d at 235 (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a
District Court must permit a curative amendment, unless an amendment would be inequitable or
futile").

Here, Miller alleges that his protected activity includes "exercising[] his right to free speech and his right to petition the government for redress." Am. Compl. at 32. Yet it is unclear from the Amended Complaint to what specific instances of free speech and petition Miller refers. The "political speech" referred to in Count I had not yet occurred at the time of the Amended Complaint; most of Miller's allegations appear to assert that Defendants' refusal to provide Miller unlimited access to the documents prevented Miller's *future* speech. However, when viewing the factual allegations in a light most favorable to Miller, the Court acknowledges the chronicled filing of his RTKL requests, appeals, and earlier lawsuits. Third Circuit jurisprudence supports finding that these petitions constitute protected activity under the First Amendment. *See, e.g., Anderson*, 125 F.3d at 161-62 (advancing the idea that citizen access to the courts, generally, is protected activity under the First Amendment). As for the "adverse action" element, Miller alleges that Defendants' retaliatory conduct included "denials of public records requests," Am. Compl. at 33, "dismissals of Plaintiff's petitions," *id.*, the "filing of baseless sanctions motions," *id.,* and "the coordinated release" of a news article labeling Miller an "Ex-Hopeful," which he alleges was "meant to harm Plaintiff's public reputation," *id.* at 34.

The Amended Complaint describes only the following three "records requests" by Miller: his initial RTKL request, which resulted in a final determination dated October 5, 2022, *granting* him access to review the documents under certain conditions, *id.* at ¶ 31; his "cast vote records" request, which was denied by the OOR on August 26, 2022, as a request for non-public records, *id.* at ¶ 26; and his request for digital images, which was denied on November 2, 2022, because "the records did not exist in the requested format pursuant to 65 P.S. § 67.705," *id.* at 47. Even if two of Miller's requests were denied, the Court is still bereft of any indication that these denials were *retaliatory*, particularly where the protected activity alleged is Miller's initial filing of those

records requests. Simply put, a denial of a records request is not evidence of retaliation against the requestor. It indicates only that the request was not granted. Accordingly, Miller has failed to allege retaliation by the denials of his cast vote records and digital records requests.

Miller also references "dismissals of Plaintiff's petitions" as instances of retaliation, which could refer to any of the following events alleged: the Pennsylvania Department of State's dismissal of his HAVA complaint on January 23, 2023, *id.* at ¶ 64; the dismissal of his suits in the Lancaster County Court of Common Pleas on May 12, 2023, *id.* at ¶ 52; or the dismissal of the Middle District Action on September 30, 2024, *id.* at 7-8. Insofar as Miller intends to refer to any of these dismissals, he has not alleged retaliation by any of the named Defendants to this case. *See id.* at 1. Neither the Pennsylvania Department of State, the Lancaster County Court of Common Pleas, nor the District Court for the Middle District of Pennsylvania, is a named Defendant in this matter. *See id.* The County of Lancaster is a named Defendant but has not been shown to be responsible for any decision rendered by the Court of Common Pleas, and Miller has not causally linked any retaliation by the County of Lancaster to his filing of a complaint in the Court of Common Pleas. Similar to the context of records requests, an unfavorable decision by a judiciary is not evidence of retaliation against the petitioner for seeking judicial review in the first place.[19] *See Fantone*, 780 F.3d at 191 (explaining that an alleged "adverse action" in a

---

[19]    By alleging that the dismissals of his complaints in state court were the result of deliberate retaliation, Miller appears to contest the validity of these final state court decisions. To the extent that Miller seeks review of any decision rendered by a Pennsylvania state court, the *Rooker-Feldman* doctrine precludes such review. *Day v. Florida*, 563 F. App'x 878, 880 (3d Cir. 2014) ("The Rooker–Feldman doctrine provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions.") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Since the Amended Complaint frames the dismissal of Miller's state court actions as retaliation rather than appealable error, the Court declines to analyze the four requirements of *Rooker-Feldman* doctrine to determine whether Count II should be dismissed for lack of subject matter jurisdiction. *See id.* (describing the four

retaliation claim must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights"); *White*, 897 F.2d at 111–12 (defining "retaliation" under section 1983 as "a violation of rights secured by the Constitution"); *see also Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) ("The right to petition the government for redress of grievances[] does not guarantee a favorable response, or indeed any response, from state officials."). Having failed to allege responsibility by any Defendant for these dismissals, and having failed to allege a causal link between these dismissals and the filing of his petitions and grievances, Miller has failed to state a claim of retaliation on these facts.

As for the sanctions motion, Miller alleges that in the Middle District action, "Parsons, D'Agostino, and Pfursich, in their individual and official capacities, filed a motion for sanctions against Plaintiff, seeking $30,000 because [Miller] would not withdraw his lawsuit by May 7, 2024." Am. Compl. at 7. However, none of the individual Defendants in the instant action—i.e., neither Parsons, D'Agostino, nor Pfursich—were parties to the Middle District case. *See* Civil No. 1:24-cv-00014-JPW-MCC. Of the current Defendants, only the County of Lancaster was a party to the Middle District action. *Id.* Miller alleges that the County filed a sanctions motion in the Middle District case with the intent to "financially burden[] and intimidate[e] Plaintiff for exercising his right to petition." Am. Compl. at 34. Yet there are no facts from which to infer a causal link between Miller's petitions and the Middle District defendants' filing of a sanctions motion. *See DeFlaminis*, 480 F.3d at 267 ("To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the

---

requirements). It merely cautions against amending the complaint to include any cause of action which seeks federal appellate review of a state court action.

Moreover, to the extent any actions relevant to Miller's claims remain pending in state court, the abstention doctrine defined in *Younger v. Harris*, 401 U.S. 37, 43 (1971), applies.

protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."). No pattern of antagonism has been alleged, and the temporal proximity between Miller's filing of the Middle District action and the sanctions motion is not "unusually suggestive" of retaliatory motive. *See id.*; *see also* Def. Brief at 3 (explaining that the sanctions motion was filed, in part, due to the excessive nature of the "numerous lawsuits initiated regarding [Miller's] grievances"). Miller has failed to state a claim of retaliation on these facts.

Miller also mentions a news article, titled "Ex-hopeful fails to follow up on request," *See* Complaint Exhibit 30 ("Ex-hopeful Article"), ECF No. 1-1, as an example of retaliation by Defendants. This article was featured in a local newspaper, "LNP," and was written by one Carter Walker, who is not a party to this action. *See id.* No facts are alleged which link Defendants to the author, the newspaper, its editors, or its publisher, such that any Defendant could be deemed responsible for the "coordinated release" of this article. *See* Am. Compl. at 34. Thus, to the extent Miller alleges this article was retaliation, he has not stated such a claim against any known Defendant. Count II in its entirety is dismissed with prejudice for failure to state a claim.[20]

---

[20]     The Court dismisses Count II with prejudice because no retaliation claim could be formed on the facts as stated or as amended. Most of the retaliatory action alleged was not committed or caused by an existing Defendant to this action. The remaining allegations do not suggest retaliatory actions taken *in response to* Miller's filing of his RTKL requests, appeals, or earlier lawsuits. Amendment to allege any further adverse actions would be futile without also establishing that Miller's protected activity was a "substantial or motivating factor" for that action. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015). Neither the filing of a contentious motion by opposing counsel nor the rendering of an unfavorable decision by a tribunal, by itself, demonstrates retaliation against the petitioner for his decision to initiate the action. It is the nature of litigation to be adversarial and of its outcome to be uncertain. Thus, the Court finds that no set of facts could establish a retaliatory motive by the Defendants in response to Miller taking advantage of his right to petition. Further amendment

### iii. First Amendment – Right to Petition (Count III)

The Court has already found that Miller exercised his right to petition by filing his lawsuits and grievances, *see* section IV(C)(ii), *supra*, and so is left to decide whether Miller has alleged a *violation* of that right by Defendants. *See Mirabella*, 853 F.3d at 654 (When addressing a Petition Clause claim, courts ask "whether the government may 'nevertheless burden' the right to petition, given countervailing government interests.") (citing *BE & K Constr. Co.*, 536 U.S. at 535). In Count III, Miller alleges that Defendants violated his First Amendment right to petition the government for redress "by systematically denying his access to public records, dismissing his complaints and petitions on procedural grounds []such as 12(b)(6) and 12(b)(1)) without addressing their merits, and retaliating against his efforts to expose reported election results." Am. Compl. at 37.

As previously noted, the Amended Complaint describes three records requests by Miller, only two of which appear to have been denied. *Id.* at 26, 31, 47 (itemizing Miller's initial RTKL request, which was granted under certain conditions; his "cast vote records" request, which was denied on August 26, 2022; and his request for digital images, which was denied on November 2, 2022). Still, the Court cannot see how a denial of any such records request serves as a violation of Miller's right to petition. Prior to the denial of his request for "cast vote records," Miller took advantage of his right to petition by filing the same, along with his original RTKL request, and by filing petitions in the Lancaster County Court of Common Pleas. *Id.* at 5, 11. This denial of cast vote records in August 2022 did not dissuade Miller from later requesting digital images for mail-in ballots or from filing a HAVA complaint in October 2022. *Id.* at 5, 15.

---

would be futile. *See Lampon-Paz v. United States Dep't of Justice*, 793 F. App'x 137, 141 (3d Cir. 2019) (dismissing a claim with prejudice where amendment would have been futile).

Neither did the denial of his digital images request in November 2022 dissuade Miller from filing new petitions in the Lancaster County Court of Common Pleas in December 2022, *id.* at 6, 16, or from later filing a declaratory judgment petition in the Middle District, *id.* at 7-8. The facts alleged point to Miller's consistent ability to take advantage of his right to petition, in multiple administrative and judicial venues, for a redress of his grievances. This Court finds no evidence that Defendants caused a violation thereof.

As to the allegation that Defendants "dismiss[ed] his complaints and petitions on procedural grounds []such as 12(b)(6) and 12(b)(1)) without addressing their merits," *id.* at 37, or "delay[ed] rulings," the Court reiterates that the Defendants in this case have not been shown to be responsible for any decision rendered by a Pennsylvania state court, *see* section IV(C)(ii), *supra*, or by the Middle District. Likewise, Miller has failed to state a claim for retaliation by any current Defendant. *See id.* As such, the Amended Complaint does not sufficiently allege a violation of Miller's rights under the Petition Clause of the First Amendment. Accordingly, Miller has failed to state a claim for a violation of his right to petition, and Count III is dismissed with prejudice.[21]

### iv. Procedural Due Process (Count IV)

To state a viable claim for procedural due process, Miller must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's

---

[21]    The facts pled in the Amended Complaint show a fervent willingness by Miller to take advantage of his right to petition the government for a redress of his grievances. His ongoing proclivity to exercise his right of access to local, state, and federal tribunals is evident in the history of Miller's litigation attempts which arise out of the facts of this case. The Court is presented with nothing to suggest that this right was hampered by the denial or dismissal of any of Miller's records requests or petitions, and the available relief for either situation exists in Miller's right to appeal—of which he has already taken advantage. Leave to amend would not sufficiently alter the existing facts of this case so as to state a Petition Clause violation. Therefore, amendment would be futile.

protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 (citing *Alvin*, 227 F.3d at 116). Here, Miller repeatedly claims that Defendants denied him of his "procedural due process rights" but fails to clarify what those rights are under the Fourteenth Amendment. Am. Compl. at 42-45. The only individual interest Miller references in the Amended complaint is a "protected interest in acquiring public records he was granted." *Id.* at ¶ 12. Miller asserts that he has both a "property interest" and a "liberty interest" in accessing "the requested records pursuant to the Right-to-Know Law (RTKL) through the OOR's final determination on October 5, 2022." *Id.* at ¶¶ 32-33. Coincidentally, it is this very OOR determination that granted Miller access to the requested documents, but allowed the County to impose "certain reasonable safeguards" which "must be followed before access [would] be granted." RTKL Determination at 8-9 (internal citations omitted). Thus, to the extent Miller argues that he was denied his right to access to the documents generally, the facts as pled show this not to be true. To the extent Miller argues that he was denied a right to unrestricted access, the law on this is clear: "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Geisenberger*, 17 F.4th at 415 (quoting *Gonzales*, 545 U.S. at 756). Thus, any interest Miller had in gaining unfettered access to election documents is not an inviolable property right if the state or local government can impose reasonable restrictions on his access. *See id.* Neither is it a liberty interest, which also "may arise from an expectation or interest created by state laws or policies" absent a constitutional basis. *Wilkinson*, 545 U.S. at 221 (citing *Wolff*, 418 U.S. at 556–58). Miller has not pled an individual interest encompassed within the Fourteenth Amendment's

protections. As a result, Miller has failed to plead the first element of procedural due process and has failed to state such a claim.[22] Count IV is dismissed with prejudice.[23]

> ### v.  Equal Protection (Counts V and VI)

Since Counts V and VI of the Amended Complaint are pled as Equal Protection violations, the Court shall construe them as such and evaluate these claims under the Rule 12(b)(6) standard in addition to its subject matter jurisdiction analysis, above. *See* Section IV(A), *supra*. In doing so it finds that Miller has failed to state a claim for Equal Protection in each count. Here, Miller has not alleged that he is a member of any protected class, *see Green*, 89 F. Supp. 3d at 693 (citing *Oliveira*, 41 Fed.Appx. at 559), nor a member of a "class of one" compared to similarly situated individuals, *see Hill*, 455 F.3d at 239 (quoting *Village of Willowbrook*, 528 U.S. at 564). Count V does not mention any class to which Miller belongs. In Count VI, Miller alleges that "Defendants created two distinct classes of RTKL requestors:" those who petitioned under section 1301 of the RTKL versus those who petitioned under section 1302. Am. Compl. at 53. Miller alleges that 1301 requestors "received direct judicial review"

---

[22]    Here, the first element of a procedural due process claim was not properly pled, so the Court need not analyze whether the procedures available to Miller provided "due process of law." *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). To that end, however, it notes that Miller alleges several times that Defendants "disregard[ed]" or "obstruct[ed]" his "right to a fair hearing." Am. Compl. at 44. Without elaborating, Miller directs the Court's attention to paragraph 34 of his factual allegations, which merely describes the Letter received from Bender and Pfursich on October 5, 2022, outlining the parameters under which Miller could view the requested election documents in person. *See* Complaint Ex. 6 ("Letter"), ECF No. 1-1. Having no further explanation as to how this Letter could "obstruct" Miller from obtaining a fair hearing in any tribunal, the Court is compelled to find that Miller has not been deprived of "due process of law" and has failed to plead the second element of a procedural due process claim as well. *See Hill*, 455 F.3d at 233-34.

[23]    Without facts to support the existence of a liberty or property interest, the Court declines to address whether the opportunities available to Miller deprived him of due process of law. Finding no conceivable liberty or property interest, the Court finds that amendment of Count IV would be futile, *see Lampon-Paz*, 793 F. App'x at 141, and so dismisses without leave to amend.

while 1302 requestors were "subjected to the more burdensome process of mandamus actions." *Id.* Yet, a review of the RTKL reveals that both sections merely provide the means for obtaining further review of an RTKL request after an appeals officer has already rendered a final determination. 65 P.S. §§ 67.1301-1302. Section 1301, titled "Commonwealth agencies, legislative agencies and judicial agencies," allows "a requester or the agency [to] file a petition for review [. . .] with the Commonwealth Court" whereas section 1302, titled "Local agencies," allows "a requester or local agency [to] file a petition for review [. . .] with the court of common pleas for the county where the local agency is located." *Id.* The only meaningful difference between the two sections is the differentiation between final determinations relating to petitions of a local agency versus a Commonwealth agency. *See id.* The statutes themselves do not indicate that either type of requestor is to be "subjected" to any particular type of judicial review or mandamus action. Aside from suggesting that his RTKL appeal falls under section 1302, Am. Compl. at 51, Miller "makes no attempt to identify any similarly-situated individuals who were treated differently than he was," *Green*, 89 F. Supp. 3d at 693.

Even if Miller had alleged a "class-of-one," the Amended Complaint is "devoid of any allegation that Defendant[s] somehow treated him less favorably than [they] treated others," *id.*, or that they did so intentionally. *Hill*, 455 F.3d at 239 (quoting *Village of Willowbrook*, 528 U.S. at 564). In Count V, Miller states that Defendants "provid[ed] other requesters with access to election records while denying Plaintiff access," Am. Compl. at 47, but identifies no other individual requesters and no instances in which they were granted access to documents that were

denied him. Accordingly, to the extent Counts V and VI are pled as Equal Protection claims, they are both dismissed with prejudice for failure to state a claim.[24]

### vi. Conspiracy (Count IX)

In Count IX, Miller alleges that Defendants sought to deprive him of constitutional rights like "free speech, petition, due process, and equal protection." Am. Compl. at 63. Assuming this is Miller's allegation of a "common purpose" by Defendants, the Court must determine whether Miller has also alleged an "overt act" in furtherance of that common purpose, and "actual legal damage." *See Schlichter*, No. 04-CV-4229, 2005 U.S. WL 984197, at *10.  Miller points to "the October 12, 2022 Board Meeting and D'Agostino's October 18, 2022 letter" as evidence of Defendants' "coordinated efforts" to deprive him of his constitutional rights. Am. Compl. at 63. Importantly, there is no mention of any letter from D'Agostino, let alone one dated October 18, 2022, anywhere else in the Amended Complaint. The Court cannot consider as evidence of an "overt act" a letter which is not known to exist and of which the contents are unknown. The Court will therefore consider only the October 2022 board meeting.

Miller alleges that Parsons, D'Agostino, and Pfursich held a "board meeting" on October 12, 2022,[25] wherein they "declared that the Board had created regulations pursuant to 25 P.S. [§] 2648" and that the restrictions on viewing mail-in ballots were part of a County policy that

---

[24]    The Court declines to grant leave to amend Counts V and VI where amendment would be futile. *See Lampon-Paz*, 793 F. App'x at 141. The facts as pled give no indication that Miller is part of a protected class or a class-of-one, which would warrant equal protection consideration. The Court finds that no facts exist to suggest such a classification and that Miller, given an opportunity to amend, would be unable to prove the same, insofar as he attempts to plead an actual Equal Protection claim. Alternatively, to the extent these counts represent RTKL grievances, the Court has no jurisdiction to decide them. In either case, leave to amend would be futile and so the dismissal of Counts V and VI is with prejudice.
[25]    Context suggests this was a meeting of the members of the Lancaster County Board of Elections. *See* Am. Compl. at 3.

had been in place since the November 2020 general election. *Id.* at ¶¶ 35-37. Miller appears to disagree that these County restrictions on document access were longstanding, alleging that it was during this meeting that Bender and Pfursich "issued a policy prohibiting Plaintiff from copying or photographing the granted records." *Id.* at ¶ 41. Even if the Court assumes this to be true, the imposition of reasonable restrictions by the County Board of Elections on viewer access to election documents—particularly when done in compliance with the Voter Registration Act, 25 Pa.C.S §§ 67.1101-1906, and associated regulations, *see* RTKL Determination. at 9—is lawful regardless of when that policy is decreed. As such, the Court cannot view the regulation as an "overt act" by Bender and Pfursich in furtherance of a plan to deprive Miller of his constitutional rights. Moreover, it is unclear to the Court what deprivation Miller is alleging occurred as a result of this policy. As discussed above, Miller does not have a constitutional right to obtain unrestricted access to election documents on his own terms. *See* section IV(C)(iv), *supra*; *see also Wilkinson*, 545 U.S. at 221. Miller has also not alleged an actual deprivation of his rights to free speech, petition, due process, or equal protection, as alluded to in Count IX, *see* Am. Compl. at 63; sections IV(A),(C)(i)-(v), *supra,* nor of another right guaranteed under the U.S. Constitution. Having failed to allege a constitutional deprivation and an overt act, Miller has thus failed to state a claim for civil conspiracy under section 1983. Count IX is dismissed without prejudice.[26]

---

[26]    The Court grants leave to amend Count IX to state facts in support of a constitutional deprivation and an "overt act" done by defendants with malice, if such facts exist. *See Alston*, 363 F.3d at 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Any amendment to this count must make clear the factual allegations in support of a conspiracy claim; a mere recitation of the elements will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A formulaic recitation of the elements of a cause of action will not do [. . .] [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (internal citations omitted).

### vii. *Monell* Liability (Count XI)

Miller also asserts a *Monell* claim against the County of Lancaster, "because its official policies, customs, and failure to supervise employees led to the deprivation of Plaintiff's constitutional rights." Am. Compl. at 71. In so doing, Miller appears to sue the County under both section 1983 contexts: (i) that where a failure or inadequacy by the municipality "reflects a deliberate or conscious choice," *see Forrest*, 930 F.3d at 105, like a failure to train or supervise which "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact," *see Johnson*, 975 F.3d at 403; and (ii) that where an unconstitutional "policy statement, ordinance, regulation, or decision [is] officially adopted and promulgated by that body's officers,'" *see Lebie*, No. 13-cv-6819, 2014 WL 2085518, at *2 (quoting *Monell*, 436 U.S. at 690). In either case, however, Miller has failed to allege a deprivation of his constitutional rights.

In the first context, Miller alleges that the County's failure to adequately train and supervise its employees led to the "consistent deprivation of the rights of records requesters," Am. Compl. at 19, including Miller, who was "depriv[ed] of records," *id.* at ¶ 55; and deprived "of the ability to obtain and share information," *id.* at 25. In the second context, Miller argues that the County's policies "prevent[ed] Plaintiff from engaging in public advocacy and undermin[ed] his constitutional rights to free speech and petition." *Id.* at 72. Yet it remains true that neither the privilege to view election records, nor one's ability to publicly disseminate information found in those records, is absolute. *See* section IV(C)(i), *supra*. Reasonable restrictions may be put in place to protect voter rights and preserve citizens' confidential information. *See, e.g.*, 25 Pa.C.S §§ 67.1101-1906. Miller has also not shown how these restrictions on his access to election materials have hampered his right to petition. *See* section

IV(C)(iii), *supra*; Am. Compl. at 72. At base, no constitutional deprivation has been alleged. As

a result, Miller, having been granted access to available records under certain lawful conditions,

and having been able to continuously petition the government, has not stated a claim against the

County of Lancaster for section 1983 liability under *Monell*. Count XI is dismissed without

prejudice.[27]

### viii.    Abuse of Process (Count XII)

To state a claim for abuse of process, Miller must allege facts sufficient to show that

Defendants "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose

for which the process was not designed, and (3) harm has been caused to the plaintiff." *EMC

Outdoor, LLC*, Civ. A. No. 17-5712, 2018 WL 3208155, at *3 (internal quotations omitted).

Miller alleges that Defendants used the following legal processes against him: Defendants cited

"pretextual legal justifications," like 25 P.S. § 2648, as a basis for denying Miller access to

election records, Am. Compl. at 8, 74, and filed a sanctions motion against Miller in the Middle

District action, *id.* at 7, 74. Miller further alleges that these actions were done with the intent to

"intimidate and coerce Plaintiff into withdrawing his legal actions" and to "frustrate Plaintiff's

access to public information." *See id.* at 75. However, Miller does not allege that the sanctions

motion in the Middle District actually led him to withdraw any of his lawsuits,[28] and does not

---

[27]    To the extent that the Court granted leave to amend other counts in the Amended
Complaint, all of which were brought under 42 United States Code section 1983, it also grants
leave to amend Count XI, to allow Miller to allege facts in support of *Monell* liability by the
County, for those surviving causes of action. *See Alston*, 363 F.3d at 235 (holding that "if a
complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative
amendment, unless an amendment would be inequitable or futile").

[28]    To the Court's knowledge, Miller has been the plaintiff in every lawsuit to which he is a
party and which arise out of the facts of this case. The Court is apprised of all known resolutions
to Miller's prior and pending actions in state and federal courts, none of which were voluntarily
withdrawn by Miller. *See* Am Compl. at 5-7.

provide support for the allegation that he possesses an inherent right to the cast vote records which he was denied, *see id.* at ¶¶ 26, or to the digital records which he was denied, *see id.* at ¶ 47. Count XII, as pled, requires the Court to find that the OOR was unfounded in its decisions to deny him access to the cast vote records and digital images of mail-in ballots—a determination over which the Court lacks jurisdiction. *See N'Jai*, 386 F. App'x at 143 (explaining that generally, federal district courts are barred from considering claims under the Pennsylvania Right-to-Know Law); *Ledcke*, No. 1:11-CV-2298, 2012 WL 716052, at *5 ("[T]he Right–to–Know Act prescribes that the appropriate remedy for denial of a request is to appeal that denial in state court. This statutory remedy is exclusive.") (citing *Proffitt*, 707 F.Supp. at 188), *report and recommendation adopted*, No. 1:11-CV-2298, 2012 WL 718591 (M.D. Pa. Mar. 5, 2012). The Court also lacks the ability to review any decision rendered by the Lancaster County Court of Common Pleas regarding the legality of these requests, *see Day v. Florida*, 563 F. App'x 878, 880 (3d Cir. 2014) ("The Rooker–Feldman doctrine provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions.") (internal citations omitted), and lacks the ability to review the appeals of any such decisions pending in the Commonwealth Court, *see Younger v. Harris*, 401 U.S. 37, 43 (1971) (applying abstention doctrine). Therefore, because Miller has failed to allege a harm, and because the allegations regarding Defendants' abuse of process are premised on a legal determination which the Court has no jurisdiction to make, Count XII is dismissed with prejudice for failure to state a claim.[29]

### D.    Supplemental Jurisdiction

---

[29]    "[W]here the absence of subject matter jurisdiction is apparent from the face of a complaint, any amendment would be futile, and hence dismissal without leave to amend is proper." *Roberts v. Mayor & Burgesses of London Borough of Brent*, 70 Fed. Appx. 615, 619 (3d Cir. 2003).

Although this Court does not intend to exercise supplemental jurisdiction over the state law claims if no federal cause of action remains viable, the state law claims will not yet be dismissed because Miller is granted  leave to file a second amended complaint. If Miller chooses not to file a second amended complaint or is again unable to state a federal cause of action, this Court will decline supplemental jurisdiction and dismiss Counts VII and VIII at that time. Miller will then have thirty days to file the state law claims in state court. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) [providing for supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."). Miller is advised that if he files a second amended complaint, he must replead the state-law causes of action. He should review the motion to dismiss closely and should add, if necessary, any factual allegations to cure any identified deficiencies as he will not be given further leave to amend the state law claims if he is able to state a federal cause of action.

## V.    CONCLUSION

This Court dismisses Counts V and VI on the basis of lack of subject matter jurisdiction, to the extent they sound in state law as RTKL violations. It dismisses Miller's HAVA violation as untimely, having accrued outside the applicable statute of limitations under 42 U.S.C. § 1983. The remaining federal claims are dismissed as Miller has failed to state a plausible claim under Rule 12(b)(6), but he will be afforded an opportunity to file a second amended complaint as to some of these claims.  No action is therefore taken on the remaining state law claims, which this Court intends to dismiss for lack of supplemental jurisdiction in the event Miller fails to plead a federal claim. Since Miller fails to plausibly present a federal question, this Court also does not reach the issue of qualified immunity.

A separate Order follows.

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._
JOSEPH F. LEESON, JR.
United States District Judge